**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

# MEMO ENDORSED

101 PARK AVENUE

NEW YORK, NEW YORK 10178

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

HONG KONG

AFFILIATE OFFICES
BANGKOK, THAILAND
JAKARTA, INDONESIA
MUMBAI, INDIA
TOKYO, JAPAN

(212) 808-7800

(212) 808-7897

www.kelleydrye.com

JONATHAN K. COOPERMAN

DIRECT LINE: (212) 808-7534

EMAIL: jcooperman@kelleydrye.com

*[handwritten: I will take up the request at the January 19 conference which proposed intervenors are free to attend. SO ORDERED. USDJ 11-07]*

January 11, 2007

**BY HAND**

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007-1312

Re:   Intervention in *Riverkeeper, Inc., et al. v. U.S. Environmental Protection Agency*, Case No. 1:06-cv-12987-PKC

Dear Judge Castel:

Our firm is acting as local counsel for an unincorporated organization, the Cooling Water Intake Structure Coalition (the "Coalition"), which wishes to intervene as of right under Fed. R. Civ. P. 24(a)(2) in support of the defendants in the above-referenced action.[1] The complaint in that case was filed on November 7, 2006, and an initial pretrial conference is scheduled for January 19, 2007. This letter is to request a pre-motion conference as specified by 2.A.1. of your Individual Practices, or a determination that no pre-motion conference is needed in light of the upcoming pretrial conference on January 19th.

Background

In the instant case, the plaintiffs seek a determination that the U.S. Environmental Protection Agency ("EPA") has a duty under Clean Water Act ("CWA") section 316(b), 33 U.S.C. § 1326(b), to issue nationwide, categorical standards for the location, design, construction, and capacity of structures that withdraw surface waters for use in various cooling applications ("cooling water intake structures") at existing industrial, commercial, and smaller electric utility facilities. EPA refers to these as "Phase III" facilities, since EPA already promulgated such standards for new facilities of all types and for existing electric power generation facilities that withdraw 50 million gallons per day or more of cooling water (the Phase I and Phase II standards, respectively). EPA

---

[1]    For purposes of this litigation, the Coalition consists of the American Chemistry Council, the American Forest & Paper Association, the American Iron & Steel Institute, the American Petroleum Institute, General Electric Company, and the Utility Water Act Group.

## KELLEY DRYE & WARREN LLP

The Honorable P. Kevin Castel
January 11, 2007
Page Two

originally proposed to promulgate uniform national standards for certain Phase III facilities, as well.
But EPA ultimately decided for a number of reasons that cooling water intake structures at Phase III
facilities are better addressed by allowing permit-issuing authorities to determine on a case-by-case
basis what additional measures, if any, are necessary to implement CWA section 316(b). *See* 71 Fed.
Reg. at 35,009-35,011; 40 C.F.R. §§ 125.80(c), 125.90(b).

EPA announced that decision in the preamble to "National Pollutant Discharge
Elimination System – Final Regulations to Establish Requirements for Cooling Water Intake
Structures at Phase III Facilities," which was published at 71 Fed. Reg. 35,006 (June 16, 2006). The
plaintiffs in this case also filed a petition for review of that final action, pursuant to CWA section
509(b), in the Court of Appeals for the Second Circuit, which was consolidated with other petitions
for review and is now pending in the Fifth Circuit as *ConocoPhilips Co., et al. v. Environmental
Protection Agency*, No. 06-60662 (and consolidated cases). In the case before you now, the plaintiffs
seek essentially the same result: a determination that EPA does not have discretion to choose to
regulate cooling water intake structures at Phase III facilities on a case-by-case basis.

Grounds for Intervention

Intervention under Fed. R. Civ. P. 24(a)(2) should be granted when four requirements
are established: (1) the application for intervention is timely; (2) the applicant has an interest relating
to the property or transaction which is the subject of the action; (3) the applicant is so situated that
the disposition of the action may, as a practical matter, impair or impede its ability to protect that
interest; and (4) the applicant's interest would not be represented adequately by the existing parties to
the suit. *See, e.g., In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000). The
Coalition meets all of those criteria.

The Coalition is proposing to intervene before any responsive pleading has been filed
and indeed before any substantive activity at all in the case other than the filing of the complaint. No
prejudice would occur to any party from the Coalition's intervention at this time. *See, e.g., United
States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

The members of the Coalition have a strong interest in the subject matter of this
litigation. They advocated to EPA, in comments on EPA's proposed rule to issue standards for
certain Phase III facilities, that the wide variety of circumstances presented by existing facilities of
all types makes it impracticable to issue uniform standards for cooling water intake structures at such
facilities. They also commented to EPA that attempting to do so would impose large costs on Phase
III facilities to address only a small portion of cooling water withdrawals (approximately 90 percent
of which occurs at Phase II facilities), resulting in costs far exceeding any benefits. If this Court
were to determine that EPA lacks discretion to choose to address Phase III facilities on a case-by-
case basis, members of the Coalition would be faced with such impracticable, costly requirements for
their cooling water intakes. This type of interest has repeatedly been held sufficient to warrant
intervention as of right. *See, e.g., N.Y. Pub. Interest Research Group, Inc. v. Regents of the Univ. of
the State of N.Y.*, 516 F.2d. 350, 351-52 (2d Cir. 1975) (pharmacists' financial stake in upholding a

**KELLEY DRYE & WARREN** LLP

The Honorable P. Kevin Castel
January 11, 2007
Page Three

regulation prohibiting advertisement of prescription drug prices was sufficient to support intervention
of pharmaceutical association in action challenging that regulation).

    The Coalition's interests are not adequately represented by any other party.   The
plaintiffs' claims are directly contrary to the Coalition's interests.  EPA does not have the direct
economic interest in the outcome of this litigation that the Coalition does, and therefore may not
present the same arguments as the Coalition would, or with the same vigor.  *See N.Y. Public Interest
Research Group*, 516 F.2d at 352; *Olympus Corp. v. United States*, 671 F. Supp. 911, 916 (E.D.N.Y.
1985), *aff'd*, 792 F.2d 315 (2nd Cir. 1986), *cert. denied*, 486 U.S. 1042 (1988).  Additionally, should
there be any settlement negotiations in this case, or other discussions of the appropriate remedy, the
Coalition could be affected by what type of rulemaking, or other remedy EPA agrees to carry out.
*See, e.g., Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir. 2001) (white male employees could
intervene to protect seniority rights that might be affected by implementation of settlement agreement
to reverse effects of racial and gender discrimination); *United States Postal Serv. v. Brennan*, 579
F.2d 188, 191 (1978).  The Coalition thus more than meets the "minimal" threshold for
demonstrating that an intervenor-applicant's interests may not be represented adequately.  *See United
States Postal Serv.*, 579 F.2d at 191.

    For these reasons, the Coalition believes it is entitled to intervene under Fed. R. Civ.
P. 24(a)(2).  Counsel for the Coalition has contacted counsel for the plaintiffs, who has indicated that
the plaintiffs intend to oppose the Coalition's intervention.  Counsel for the Coalition also has
contacted counsel for the defendants, who has indicated that the defendants neither consent to, nor
intend to oppose, the Coalition's intervention.  Under the circumstances, the Coalition suggests that
no pre-motion conference is necessary, or that the purpose of the pre-motion conference could be
served by directing counsel for the Coalition to attend the pretrial conference with the parties that the
Court has scheduled for January 19, 2007.

    The Coalition also intends to move for the admission *pro hac vice* of Russell S. Frye
of Washington, D.C., to act as counsel for the Coalition for the purposes of its motion to intervene,
and, if granted, all other matters in this action.  Counsel for the plaintiffs and the defendants have
advised that they will not object to the pro hac vice motion.

        Respectfully submitted,

        Jonathan K. Cooperman

cc: Edward Lloyd, Esq. (via e-mail and first class mail)
   Reed Super, Esq. (via e-mail and first class mail)
   Wendy H. Waszmer, Esq. (via e-mail and first class mail)