UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
RIVERKEEPER, INC., et al.,                                   :
                                                             :
                        Plaintiffs,                          :
                                                             :
            v.                                               :
                                                             :    06 Civ. 12987 (PKC)
UNITED STATES ENVIRONMENTAL                                  :
PROTECTION AGENCY, et al.,                                   :
                                                             :
                        Defendants.                          :
                                                             :
------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for Defendants
                                    86 Chambers Street
                                    New York, NY 10007
                                    Tel.: (212) 637-2729
                                    Fax: (212) 637-2717

WENDY H. WASZMER (WW5069)
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Clean Water Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      Effluent Limitations Guidelines and New Source
                Performance Standards for Pollutant Discharge . . . . . . . . . . . . . . . . . . . . 3

        B.      Cooling Water Intake Structures ("CWISs") . . . . . . . . . . . . . . . . . . . . . . . 4

II.     Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Regulation of Cooling Water Intake Structures Prior
                to EPA's Phase I, II, and III Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.      EPA's Final Phase I, II, and III Rules Establishing
                Requirements for Cooling Water Intake Structures . . . . . . . . . . . . . . . . . 6

III.    Judicial Proceedings Regarding the Phase I, II, and III Rules . . . . . . . . . . . . . . . 7

IV.     The Present Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED
FOR LACK OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A.      LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B.      THE COURT LACKS SUBJECT MATTER JURISDICTION
        UNDER THE CLEAN WATER ACT TO HEAR
        PLAINTIFFS' CHALLENGE TO THE PHASE III RULE . . . . . . . . . . . . . . . . . 11

        1.      The Court of Appeals Has Exclusive Jurisdiction
                Over Plaintiffs' Challenge to the Phase III Rule . . . . . . . . . . . . . . . . . . 11

        2.      There is No Subject Matter Jurisdiction Under the
                Citizen Suit Provision of CWA Section 505(a)(2) . . . . . . . . . . . . . . . . 13

                a.      There is No Non-Discretionary Duty for EPA
                        to Promulgate National Categorical Standards
                        for Cooling Water Intake Structures . . . . . . . . . . . . . . . . . . . . . . 14

b.      EPA Did Not Fail to Act Because It Implemented Section 316(b)
                By Issuing the Phase III Rule .............................. 16

        C.      PLAINTIFFS' APA CLAIMS SHOULD ALSO BE DISMISSED .......... 19

CONCLUSION ............................................................. 20

Defendant United States Environmental Protection Agency and Stephen L. Johnson,

Administrator of the United States Environmental Protection Agency (collectively, "EPA"), by

and through its attorney, Michael J. Garcia, United States Attorney for the Southern District of

New York, respectfully submits this memorandum of law in support of its motion to dismiss the

Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.

## PRELIMINARY STATEMENT

This action concerns plaintiffs' disagreement with the regulatory approach adopted by

EPA in its June 16, 2006 Final Regulations to Establish Requirements for Cooling Water Intake

Structures at Phase III Facilities ("Phase III Rule"). The Phase III Rule constitutes the third of

three phases of regulation by EPA, each of which was designed to address the adverse

environmental impacts that may result from the use of cooling water intake structures, including

the mortality of aquatic organisms. In the Phase III Rule, EPA promulgated national categorical

standards for new offshore and coastal oil and gas extraction facilities. EPA also made the

determination that certain existing manufacturing facilities should have the substantive standard

of Section 316(b) of the Clean Water Act, 33 U.S.C. § 1326(b), imposed on a case-by-case, best-

professional-judgment ("BPJ") basis.

The alleged jurisdictional predicates for plaintiffs' challenge to the Phase III Rule are the

citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a), and the Administrative

Procedure Act, 5 U.S.C. § 706(2)(A), (C). Neither statute, however, provides a basis for subject

matter jurisdiction.

Plaintiffs cannot invoke the Clean Water Act's citizen suit provision because this is

precisely the type of legal challenge that the statute requires to be brought directly in the Court of

Appeals. Section 509 of the Clean Water Act vests exclusive jurisdiction in the federal Courts of Appeals to review "the Administrator's action...in approving or promulgating any effluent limitations or other limitations." 33 U.S.C. § 1369(b)(1)(E). The Phase III Rule is an "other limitation" within the meaning of Section 509, and therefore any challenge to the rule must be brought before a Court of Appeals. Indeed, plaintiffs have challenged previous Section 316(b) regulations in the Court of Appeals, and have currently pending in the Fifth Circuit a petition for review of the Phase III Rule, ConocoPhillips, et al. v. EPA, 06-60662 (L) (5th Cir.). Litigation in a federal district court is not only barred by the CWA, but is duplicative of the Fifth Circuit litigation. Plaintiffs' filing of multiple challenges to the Phase III Rule therefore runs counter to the presumption against simultaneous review in the district court and the Court of Appeals.

Plaintiffs may not circumvent the strictures of Section 509 by characterizing their action as a citizen suit brought pursuant to Section 505 of the Clean Water Act. The provision upon which plaintiffs rely, Section 505(a)(2), requires a plaintiff to establish that EPA (i) had a non-discretionary duty under the Clean Water Act to act by a date-certain deadline, and (ii) failed to perform its duty. Contrary to plaintiffs' assertion, EPA has no mandatory duty to promulgate national categorical standards to regulate cooling water intake structures. Indeed, the Second Circuit has squarely held that EPA has discretion in determining how to implement the substantive standard set forth in Section 316(b). See Riverkeeper v. EPA, 358 F.3d 174, 202-03 (2d Cir. 2004). Because plaintiffs challenge the manner in which EPA exercised its discretion, and not a failure on the part of EPA to act, review under the citizen suit provision is simply not available.

Finally, the Court should also dismiss plaintiffs' claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C). Review of agency action under the APA is

- 2 -

only available where there is "no adequate remedy in a court." 5 U.S.C. § 704. Here, however,

Section 509 of the Clean Water Act confers exclusive jurisdiction upon the Court of Appeals to

review plaintiffs' challenge to the Phase III Rule. Because Section 509 plainly provides an

"adequate remedy" under the Clean Water Act, any review under the APA is precluded. This

Court should therefore dismiss the Amended Complaint in its entirety.

## BACKGROUND

### I.     The Clean Water Act

The Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA" or

the "Act"), 33 U.S.C. § 1251 et seq., seeks to "restore and maintain the chemical, physical, and

biological integrity of the nation's waters." 33 U.S.C. § 1251(a). To accomplish these goals, the

CWA establishes a comprehensive regulatory program, of which the key elements are: (i) a

prohibition on the discharge of pollutants from point sources to waters of the United States,

except as authorized by statute; (ii) the authority of EPA or authorized States or Tribes to issue

National Pollutant Discharge Elimination System ("NPDES") permits that regulate the discharge

of pollutants; and (iii) the requirement of limitations on discharges in NPDES permits based on

effluent guidelines, new source performance standards, and water quality standards.

### A.     Effluent Limitations Guidelines and New Source Performance Standards for Pollutant Discharge

Many of the provisions of the CWA, such as Sections 301, 304, and 306, protect the

nation's waters by regulating the discharge of pollutants into the waters of the United States.

See, e.g., 33 U.S.C. § 1311(a). NPDES permits control the discharge of pollutants primarily by

requiring dischargers to meet effluent limitations and new source performance standards

- 3 -

established pursuant to Sections 301 and 306, respectively.[1] EPA has promulgated effluent limitations guidelines for over fifty industries. See 40 C.F.R. Parts 405 through 471; 71 Fed. Reg. 35,009 (June 16, 2006). In cases where there are no applicable effluent guidelines or new source performance standards, the NPDES permit-writer determines limitations on a case-by-case basis, in accordance with the statutory factors specified in Section 304(b) of the CWA, 33 U.S.C. § 1314(b). See 40 C.F.R. § 125.3(c).

B.    Cooling Water Intake Structures ("CWISs")

In contrast with Sections 301, 304, and 306 of the CWA, which address the *discharge* of pollutants into the waters of the United States, Section 316(b) – the statutory provision at issue in this case – addresses adverse environmental impacts caused by the *intake* of cooling water. See 33 U.S.C. § 1326(b). Its inclusion in the CWA "is something of an afterthought, having been added by the conference committee without substantive comment." Riverkeeper v. EPA, 358 F.3d 174, 186 n.12 (2d Cir. 2004) ("Riverkeeper I").

Section 316(b) of the CWA states, in full:

> Any standard established pursuant to section 301 [33 U.S.C. § 1311] or 306 [33 U.S.C. § 1316] and applicable to a point source shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact.

33 U.S.C. § 1326(b). Although Section 316(b) refers to Sections 301 and 306 of the CWA, "Congress did not . . . choose to include intake structures in those sections of the Act that deal specifically with effluents." Riverkeeper I, 358 F.3d at 186-87. "Instead, cooling water intake

---

[1] EPA promulgates effluent limitations for existing sources under Sections 301 and 304, 33 U.S.C. §§ 1311, 1314, and performance standards for new sources under Section 306, 33 U.S.C. § 1316. EPA issues these guidelines and new source performance standards for categories of industrial dischargers based various factors identified in Sections 304 and 306 of the CWA. See 33 U.S.C. §§ 1311(a), 1314, 1316.

- 4 -

structures are *suorum generum*, regulated pursuant to a separate – and terse – section concerned more generally with the uniqueness of heat as a pollutant." Id. at 186-87 (emphasis in original). Moreover, Section 316(b) sets forth a legal standard that differs from these other Sections. Compare 33 U.S.C. § 1326(b) ("best technology available for minimizing adverse environmental impact") with 33 U.S.C. § 1311 (establishment of effluent limitations for existing dischargers based on "the application of the best available technology economically achievable")[2] and 33 U.S.C. § 1316 (establishment of standards of performance for new sources based on effluent reduction that is "achievable through the application of best available demonstrated control technology").[3] See generally Riverkeeper I, 358 F.3d at 185.

## II.    Regulatory Background

### A.    Regulation of Cooling Water Intake Structures Prior to EPA's Phase I, II, and III Rules

In 1976, EPA promulgated regulations implementing Section 316(b) of the CWA. See 41 Fed. Reg. 17,387 (Apr. 26, 1976). Those regulations were the subject of petitions for review consolidated in the Fourth Circuit and were remanded to EPA for procedural reasons. See Appalachian Power Co. v. Train, 566 F.2d 451, 457-58 (4th Cir. 1977). EPA subsequently withdrew the remanded regulations, 44 Fed. Reg. 32,854, 32,956 (June 7, 1979), with the exception of one overarching Section 316(b)-implementing regulation that required the location, design, construction, and capacity of a CWIS of a point source to reflect the best technology available for minimizing adverse environmental impacts, 40 C.F.R. § 401.14.

_____

[2]  This standard is commonly referred to as "best available technology" or "BAT."

[3]  The resulting controls are commonly referred to as "new source performance standards" or "NSPS."

- 5 -

B.    EPA's Final Phase I, II, and III Rules Establishing Requirements for Cooling
      Water Intake Structures

EPA has issued three final Rules – known as Phase I, Phase II, and Phase III –

establishing requirements for CWISs under Section 316(b).  Each Rule addresses different

classes of facilities:

- ■    EPA's final Phase I Rule was published in the Federal Register on December 18,
       2001, and addresses new facilities, except for those new facilities that were to be
       addressed in the Phase III Rule.  66 Fed. Reg. 65,256; 40 C.F.R. § 125.80, et seq.

- ■    EPA's final Phase II Rule was published in the Federal Register on July 24, 2004,
       and addresses existing power plants that meet certain minimum flow threshold
       requirements.  See 69 Fed. Reg. 41,576; 40 C.F.R. § 125.90, et seq.

- ■    EPA's final Phase III Rule was published in the Federal Register on June 16,
       2006, and addresses new offshore and coastal oil and gas extraction facilities and
       certain existing facilities not addressed in the Phase II Rule.  See 71 Fed. Reg.
       35,006 (June 16, 2006).  A copy of the Phase III Rule is annexed as Exhibit A to
       the Declaration of Wendy H. Waszmer, dated February 7, 2007 ("Waszmer
       Decl.").

EPA determined in the Phase III Rule, upon its study of available data, analysis, and

public comments, that (i) new offshore and coastal oil and gas extraction facilities are

appropriately addressed by national categorical standards; and that (ii) existing Phase III facilities

should be regulated on a case-by-case, best professional judgment basis.  71 Fed. Reg. 35,006,

- 6 -

35,014-15; 40 C.F.R. § 125.130, et seq.; 40 C.F.R. § 125.90(b).[4] Thus, under the Phase III Rule, new offshore and coastal oil and gas extraction facilities are subject to uniform requirements to reduce the entrainment and/or impingement of aquatic organisms caused by CWISs.[5] Id. at 35,012-13, 35,016-17; 40 C.F.R. §§ 125.134-139. For existing Phase III facilities, the NPDES permit-writer (EPA, or an authorized State or Tribe) assesses each site individually. Id. at 35,017. Existing Phase III facilities are then subject to requirements, incorporated in each facility's NPDES permit, to ensure that the location, design, construction, and capacity of any CWIS reflect the best technology available for minimizing adverse environmental impacts. Id. at 35,015; see also 40 C.F.R. § 125.90(b) (existing facilities not subject to requirements under other subparts of 40 C.F.R. § 125 must meet requirements under Section 316(b) of the CWA determined by the permit-writer on a BPJ basis); 40 C.F.R. § 401.14.

## III. Judicial Proceedings Regarding the Phase I, II, and III Rules

Each of the three Rules has been challenged in petitions for review filed in the Courts of Appeals, pursuant to Section 509(b) of the CWA, 33 U.S.C. § 1369(b).

---

[4] The Phase III Rule is supported by a voluminous record, including three major detailed studies: (i) the Economic and Benefits Analysis, which presents the methodology employed to assess economic impacts of the options considered and the results of the analysis; (ii) the Regional Analysis, which examines CWIS impacts and the environmental benefits of the national categorical regulatory options considered at the regional level; and (iii) the Technical Development Document, which presents the technical information that formed the basis for EPA's decisions, including information on the costs and performance of the technologies EPA considered. See 71 Fed. Reg. at 35,007. In addition, the record includes EPA's response to comments it received regarding the proposed rule. Id. at 35,018-19.

[5] Impingement occurs when aquatic organisms become trapped against a CWIS, particularly screening mechanisms, by the force of the water being drawn through the intake structure. See 71 Fed. Reg. at 35,013. Entrainment occurs when organisms are drawn through a CWIS into a facility's cooling system. Id. Both impingement and entrainment may cause death or injury to aquatic organisms. Id.

The Phase I Rule was challenged in petitions for review filed by several petitioners, many of whom are also plaintiffs in this case. The petitions were consolidated in the Second Circuit. See Riverkeeper v. EPA, 02-4002 (L) (2d. Cir.). The Second Circuit held that the Phase I Rule was based on a reasonable interpretation of the CWA and was supported by the administrative record, but remanded to EPA a provision addressing the use of restoration measures. See Riverkeeper I, 358 F.3d at 181, 189, 205.

The Phase II Rule was challenged in multiple petitions for review by several petitioners, many of whom are also plaintiffs in this case. The petitions were consolidated in the Ninth Circuit, and subsequently transferred to the Second Circuit upon the motion of plaintiff Riverkeeper, Inc., and other environmental petitioners. See Riverkeeper. v. EPA, 04-6692-ag (L) (2d Cir.). On January 25, 2007, the Second Circuit issued a decision upholding certain portions of the Phase II Rule and remanding other portions of the rule to EPA. See Riverkeeper v. EPA, __ F.3d __, 2007 WL 184658, at *1 (2d Cir. Jan. 25, 2007) ("Riverkeeper II").

On June 30, 2006, plaintiffs Riverkeeper, Inc., the National Resources Defense Council ("NRDC"), and Waterkeeper Alliance, Inc., filed a petition for review in the Second Circuit, challenging the Phase III Rule. See Riverkeeper v. EPA, 06-3059-ag (2d Cir.). Petitioners asserted, inter alia, that "[a]lthough EPA had proposed national categorical standards for existing Phase III facilities, the agency's final regulations failed to include any national categorical standards for such facilities, leaving regulation of such facilities to a case-by-case determination." Waszmer Decl., Ex. B (Petitioners' Pre-Argument Statement), at Addendum A.

Under the random selection procedures set forth in 28 U.S.C. § 2112(a), this petition for review was transferred to the Court of Appeals for the Fifth Circuit, and consolidated with related petitions for review challenging the Phase III Rule. See ConocoPhillips, et al. v. EPA,

06-60662 (L) (5th Cir.). The Fifth Circuit has issued a briefing schedule regarding these consolidated matters, and EPA has filed the index for the record of the agency's rule-making. Environmental petitioners in ConocoPhilips, including plaintiff Riverkeeper, Inc., have moved for a transfer of the petitions for review to the Second Circuit. The motion, which is opposed by other petitioners and EPA, is still pending before the Fifth Circuit.

## IV.    The Present Action

Plaintiffs' Amended Complaint, filed on January 19, 2007, challenges the Phase III Rule pursuant to the citizen suit provision of the CWA, Section 505(a)(2), 33 U.S.C. § 1365(a)(2), and under the APA, 5 U.S.C. § 706(2)(A), (2)(C). See Amend. Compl., at ¶¶ 1-2.

Plaintiffs' Amended Complaint alleges, inter alia, that Section 316(b) of the CWA "requires EPA to establish national categorical technology-based regulations for intake structures" that are "based on the best performing technology that is feasible and economically achievable for the industry category as a whole." Amend Compl., at ¶ 38. The Amended Complaint further alleges that although EPA "proposed national categorical BTA regulations for Phase III existing facilities," id., at ¶ 72, EPA thereafter "took final action by deciding not to promulgate the proposed Phase III standards or any other national BTA requirements under section 316(b) for existing Phase III facilities." Id., at ¶ 80.

Based on these allegations, plaintiffs claim that in promulgating the Phase III Rule, EPA "has failed to perform an act or duty under the [CWA] which is not discretionary." Id. at ¶¶ 89-91 (First Claim for Relief). Plaintiffs further assert, in the alternative, that the Phase III Rule constitutes "agency action in excess of statutory authority" under APA § 706(2)(C), id. at ¶¶ 92-94 (Second Claim for Relief), and "arbitrary and capricious agency action" under APA § 706(2)(A), id. at ¶¶ 95-97 (Third Claim for Relief).

- 9 -

For the reasons set forth below, the Court lacks subject matter jurisdiction over any of

plaintiffs' claims. Accordingly, the Amended Complaint should be dismissed in its entirety.

## ARGUMENT

## PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.    LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." Luckett v.

Bure, 290 F.3d 493 (2d Cir. 2002); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

In a suit where the United States or one of its agencies, such as EPA, is a defendant, a waiver of

sovereign immunity is a prerequisite to subject matter jurisdiction. United States v. Mitchell,

463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its

consent and that the existence of consent is a prerequisite for jurisdiction."). "The requirement

that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the

judicial power of the United States and is 'inflexible and without exception.'" See Steel Co. v.

Citizens for a Better Environment, 523 U.S. 83 (1998). Because the issue of the Court's

jurisdiction is "the first and fundamental question," id. at 94, a motion questioning the Court's

subject matter jurisdiction must be considered before all other challenges. See Bell v. Hood, 327

U.S. 678, 682 (1946).

The plaintiffs bear the burden of proving by a preponderance of the evidence that the

Court has subject matter jurisdiction over their claims. Makarova, 201 F.3d at 113 (citing Malik

v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)). In determining whether subject matter

jurisdiction exists, the Court may consider evidence outside of the pleadings in its determination

of whether its jurisdiction extends to a plaintiffs' claims. Makarova, 201 F.3d at 113.

## B. THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER THE CLEAN WATER ACT TO HEAR PLAINTIFFS' CHALLENGE TO THE PHASE III RULE

1. The Court of Appeals Has Exclusive Jurisdiction Over Plaintiffs' Challenge to the Phase III Rule

Plaintiffs' CWA claim should be dismissed for lack of jurisdiction because the statute vests exclusive jurisdiction in the Court of Appeals to review their challenge to the Phase III Rule.

Under Section 509 of the CWA, the Court of Appeals has exclusive jurisdiction to review "the Administrator's action...in approving or promulgating any effluent limitation or other limitation" under Sections 301, 302, 306, or 405 of the statute. 33 U.S.C. § 1369(b)(1)(E). Accordingly, as the Second Circuit has squarely held, where EPA has taken action to establish an effluent limitation or other limitation, and the plaintiffs "are challenging the promulgation of those limits, they are required to do so in the court of appeals." Sun Enterprises v. Train, 532 F.2d 280, 287-88 (2d Cir. 1976). Section 509 therefore vests jurisdiction with the Court of Appeals over actions challenging the "manner in which [EPA's] duties were performed." Id. at 288; see also Maier v. EPA, 114 F.3d 1032, 1038 (10th Cir. 1997) (where petitioner's challenge is to "the substance of a regulation that the agency has already promulgated," exclusive jurisdiction lies with a Court of Appeals).

Like the Phase I and Phase II Rules, EPA's Phase III Rule is an "other limitation" within the meaning of Section 509(b)(1)(E) of the CWA. See Riverkeeper II, __ F.3d __, 2007 WL 184658, at *6 (jurisdiction to review Phase II Rule under Section 509(b)(1)); Riverkeeper I, 358 F.3d at 183-84 (Phase I Rule is an "'other limitation' that we have jurisdiction to review pursuant

- 11 -

to CWA § 509(b)(1)"); Virginia Electric and Power Co. v. Costle, 566 F.2d 446, 450 (4th Cir.

1977) ("VEPCO") (prior Section 316(b) regulations relating to CWISs constitute an "other

limitation" within the meaning of Section 509(b)(1)(E)).[6] The Phase III Rule, like the CWIS

regulations promulgated by EPA in 1976, see supra at 5-6, "refer[s] to information that must be

considered in determining the type of intake structures that individual point sources may

employ," and accordingly is a "limitation" within the meaning of Section 509(b)(1)(E).

See VEPCO, 566 F.2d at 450. Indeed, in tacit acknowledgment of the jurisdiction of the Court

of Appeals to review the Phase III Rule pursuant to Section 509, plaintiffs have already filed a

petition for review of the Phase III Rule, which is now pending in the Fifth Circuit.

ConocoPhillips, et al. v. EPA, 06-60662 (L) (5th Cir.); see supra at 8-9.

Moreover, like the petitions for review of the Phase I and II Rules,[7] plaintiffs' Amended

Complaint challenges the sufficiency of EPA's final action. See Amend. Compl., at ¶¶ 80-84. In

this case, plaintiffs do not dispute that EPA took final action with regard to existing Phase III

facilities and new offshore oil and gas extraction facilities. See Amend. Compl. ¶¶ 7, 80.

Instead, plaintiffs disagree with the outcome of that action, i.e., EPA's determination that a case-

by-case approach, see 71 Fed. Reg. 35,017, rather than a national categorical standard, is an

appropriate means for regulating the adverse impacts of CWISs used by Phase III existing

---

[6] During the pendency of the petitions challenging the 1976 regulations, the petitioners
filed a motion asking the Fourth Circuit to determine whether their claims properly resided
before a federal district court. VEPCO, 566 F.2d at 449. At the same time, the petitioners filed
actions challenging the regulations with the United States District Court for the Eastern District
of Virginia. See id. The district court dismissed the actions for lack of subject matter
jurisdiction, and the Fourth Circuit later held that a federal Court of Appeals, rather than a district
court, had jurisdiction over claims challenging the regulations promulgated under Section 316(b).
Id. at 449-51.

[7] See Riverkeeper I, 358 F.3d 174 (2d Cir. 2004) (Phase I challenge); Riverkeeper II,
__ F.3d __, 2007 WL 184658, at *1 (2d Cir. Jan. 25, 2007) (Phase II challenge).

facilities, see Amend. Compl. ¶¶ 80-85. Because plaintiffs challenge the sufficiency of the Phase III Rule, jurisdiction over their claims resides exclusively in the Court of Appeals pursuant to Section 509. Maier, 114 F.3d at 1038; Sun Enterprises, 532 F.3d at 288.

2.    There is No Subject Matter Jurisdiction Under the Citizen Suit Provision of CWA Section 505(a)(2)

Plaintiffs cannot circumvent the strictures of Section 509 by characterizing their claims as a citizen suit brought pursuant to Section 505(a)(2) of the CWA, which provides for jurisdiction in federal district court where EPA has failed to take action that is non-discretionary under the statute. In contrast to Section 509, which provides for review of EPA action in issuing effluent and other limitations, Section 505(a)(2) provides that an action may be maintained in district court:

> [W]here there is an alleged failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a)(2); see NRDC v. Fox, 30 F. Supp. 2d 369, 375 (S.D.N.Y. 1998) ("The Act grants [the district court] subject matter jurisdiction over such a claim only to the extent there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator."). Accordingly, a citizen suit under Section 505(a)(2) must allege nonfeasance by the EPA where action was *required* by the statute, rather than malfeasance in making an incorrect decision. See Sun Enterprises, 532 F.2d at 288; see also Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers, 404 F. Supp. 2d 1015 (D. Ariz. 2005) ("Although a court may have the ability under the CWA to hold a defendant responsible for *nonfeasance*...the Act does not allow for a judgment of *malfeasance*") (emphasis in original) (citing Sun Enterprises, Inc., 532 F.2d at 288).

Proper application of Section 505(a)(2) requires recognition of two controlling rules of

- 13 -

construction. First, because the citizen suit provision of Section 505(a)(2) is a limited waiver of sovereign immunity, its reach must be "construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 613 (1992) (citations omitted). Second, "there is a strong presumption against the availability of simultaneous review in both the district court and the court of appeals" under the CWA, as the Second Circuit has held. See Sun Enterprises, 532 F.2d at 287 (citing Oljato Chapter of Navajo Tribe v. Train, 515 F.2d 654 (D.C. Cir. 1975)); accord Crown Simpson Pulp Co. v. Costle, 445 U.S. 193, 196-97 (1980) ("[W]e are unwilling to read the CWA as creating such a seemingly irrational bifurcated system.").

There is no subject matter jurisdiction under Section 505(a)(2) here because (1) plaintiffs fail to allege any clearly mandated duty under CWA Section 316(b), and (2) EPA did not fail to take action when it implemented Section 316(b) by issuing the Phase III Rule. Instead, plaintiffs take issue with the substance of EPA's action. Such a claim does not fall within this Court's Section 505(a)(2) jurisdiction.

        a.    There is No Non-Discretionary Duty for EPA to Promulgate National Categorical Standards for Cooling Water Intake Structures

Section 505(a)(2) of the CWA "grants the Court subject matter jurisdiction over [] a claim only to the extent that there is an alleged failure of the Administrator to perform any duty or action which is not discretionary." NRDC v. Fox, 30 F. Supp. 2d at 375. "A *clearly mandated*, nondiscretionary duty imposed on the Administrator is a prerequisite for federal jurisdiction under the CWA citizen suit provision." Micosukee Tribe of Indians v. EPA, 105 F.3d 599, 602 (11th Cir. 1997) (emphasis added); Dubois v. Thomas, 820 F.2d 943, 946 (8th Cir. 1987); Sierra Club v. Train, 557 F.2d 485, 491 (5th Cir. 1977); see Sierra Club v. Thomas, 828 F.2d 783, 791 (D.C. Cir. 1987) (nondiscretionary duty a prerequisite for citizen suit jurisdiction

- 14 -

under similar provision of the Clean Air Act ("CAA")). Accordingly, citizen suits may be brought only to enforce "'clear cut' non-discretionary duties," NRDC v. Thomas, 689 F. Supp. 246, 254 (S.D.N.Y. 1988), aff'd, 885 F.2d 1067 (2d Cir. 1989), not duties that "have to be inferred from the statute," NRDC v. Fox, 30 F. Supp. 2d at 376.

Plaintiffs cannot meet their jurisdictional burden because the CWA provision upon which plaintiffs' Amended Complaint relies, Section 316(b), sets forth no requirement that EPA "promulgate national categorical BTA standards for existing Phase III facilities," as plaintiffs allege here. See Amend. Compl., at ¶ 80. Indeed, Section 316(b) neither mandates that EPA promulgate "national categorical BTA standards" nor directs EPA to take any other approach in implementing the BTA standard. Rather, Section 316(b) provides that "any standard established pursuant to section 301 or 306 and applicable to a point source shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." 33 U.S.C. § 1326(b). By its plain language, Section 316(b) merely provides a substantive standard – best technology available for minimizing adverse environmental impact – that should be applied in the regulation of CWISs; the statutory provision does not mandate that EPA impose national categorical standards or adopt any other approach to implement that substantive standard. Nor does the legislative history of Section 316(b) provide any support for plaintiffs' allegation that the provision requires EPA to promulgate national categorical standards. See 118 Cong. Rec. 33,762 (1972); S. Conf. Rep. No. 92-1236, 1237 (1972); see also Riverkeeper I, 358 F.3d at 186 n. 12 (noting the "paucity of legislative history" related to Section 316(b), and "hesitat[ing] to draw the negative inference that the brevity of section 316(b) reflects an intention to limit EPA's authority rather than a desire to delegate significant rulemaking authority to the Agency.").

- 15 -

Contrary to plaintiffs' allegations, Section 316(b) leaves it to EPA's discretion to

determine how to implement the substantive requirements' application to CWISs. Indeed, the

Second Circuit has expressly acknowledged this principle in connection with the Phase I Rule:

> Section 316(b) merely directs the EPA to require every cooling water structure
> subject to regulation under section 306 . . . to reflect the "best technology
> available." *It does not compel the EPA to regulate either by one overarching
> regulation, or based on categories of sources (as does section 306), or on a case-
> by-case basis[.]*

Id. at 203 (emphasis added); cf. Nat'l Wildlife Fed'n v. EPA, 286 F.3d 554, 566-67 (D.C. Cir.

2002) (upholding EPA's determination to regulate discharges of color pollutants on a case-by-

case basis).[8]  Discretionary duties are not enforceable through a Section 505(a)(2) citizen suit.

NRDC v. Fox, 30 F. Supp. 2d at 382-83.  Accordingly, because Section 316(b) of the CWA does

not require EPA to promulgate national categorical standards relating to CWISs, but rather leaves

to EPA's discretion the manner in which it implements the substantive standard, Section

505(a)(2) does not provide jurisdiction over plaintiffs' claims.

        b.      EPA Did Not Fail to Take Action Because It Implemented Section 316(b)
              By Issuing the Phase III Rule

The Court also lacks Section 505(a)(2) citizen suit jurisdiction because plaintiffs cannot

establish that EPA failed to act. See NRDC v. Fox, 30 F. Supp. 2d at 375 (district court

---

[8] Judge Schwartz's decision in Cronin v. Browner is not to the contrary.  In Cronin, the district court, in denying a motion for intervention by several electric utility companies and finding subject matter jurisdiction to approve the consent decree proposed by the plaintiffs and EPA, ruled that plaintiffs' complaint was neither "insubstantial" nor "frivolous" in its allegation that EPA had failed to promulgate regulations pursuant to CWA Sections 301 and 306 relating to cooling water intake structures.  898 F. Supp. 1052, 1059 (S.D.N.Y. 1995).  Although the court engaged in a threshold examination of its jurisdiction under Section 505, it reiterated that its holding "does not reach the merits of plaintiff's claims but rather determines only whether the allegations set forth in the complaint are not insubstantial or frivolous."  Id.  The court had no occasion to pass upon the argument presented here, that is, whether EPA has a nondiscretionary duty to promulgate national categorical standards.  Nor did the court examine whether EPA had satisfied any nondiscretionary duty that may exist under the CWA.  Id. at 1061.

jurisdiction "only to the extent there is alleged a *failure of the Administrator to perform any act or duty* under this Act which is not discretionary") (emphasis added).

Plaintiffs do not dispute that EPA took final action with regard to existing Phase III facilities in the Phase III Rule. Amend. Compl., at ¶¶ 7, 80, 83. Instead, plaintiffs challenge the substance of that final action. See, e.g., Amend. Compl., at ¶¶ 83-88 (challenging EPA's "rationale" for the Phase III Rule and supporting analysis). In such circumstances, Section 505(a)(2) does not apply, and the grant of exclusive jurisdiction to the Court of Appeals may not be evaded by styling the claim as one for failure to take action. Sun Enterprises, 532 F.2d at 288; accord Maier, 114 F.3d at 1038; City of Las Vegas v. Clark County, 755 F.2d 697, 704 (9th Cir. 1985) (finding plaintiff's "quarrel is with the content of the State water quality standard, which is not the proper subject of a suit under CWA § 505(a)(2)"); Scott v. City of Hammond, 741 F.2d 992, 995-96 (7th Cir. 1984) (Section 505(a)(2) citizen suit "cannot be employed to challenge the substance or content of an agency action.") (citations omitted); Cascade Conservation League v. M.A. Seagale, Inc., 921 F. Supp. 692, 698 (W.D. Wash. 1996) (no jurisdiction under Section 505(a)(2) where plaintiff's claim was "not properly characterized as a failure to perform a nondiscretionary duty," rather was instead an assertion that the agency "performed its duty erroneously").

Moreover, plaintiffs are mistaken in their allegation that "EPA has not promulgated Section 316(b) regulations for any existing facilities other than power plants covered by the Phase II regulations." See Amend. Compl., at ¶ 82. As threshold matter, the implicit assumption in this allegation – that EPA is required to regulate CWISs through the promulgation of an "overarching" regulation – misreads the statute. Section 316(b) contains no language requiring

EPA to promulgate such a regulation. See supra at 13-15; Riverkeeper I, 358 F.3d at 203.[9] In any event, in addition to the Phase III Rule, EPA previously promulgated a regulation that expressly addresses facilities that are not subject to national categorical standards. See 40 C.F.R. § 125.90(b) (for existing facilities not subject to requirements under other subparts of 40 C.F.R. § 125, Section 316(b) requirements determined by the permit-writer on a case-by-case, best professional judgment ("BPJ") basis); see also 40 C.F.R. § 401.14. Plaintiffs' allegation that there is no regulation with regard to existing facilities is thus unfounded.

Accordingly, because EPA did not fail to take action with regard to existing Phase III facilities, this Court's jurisdiction to review citizen suits concerning "alleged failure[s] of the Administrator to perform any act or duty . . . which is not mandatory," 33 U.S.C. § 1365(a)(2), is not triggered. Compare Sun Enterprises, 532 F.2d at 288 (jurisdiction for citizen suits not triggered where EPA issued effluent limitations); Scott, 741 F.2d at 995-96 (content of water quality standards submitted to EPA cannot be challenged through citizen suit); and City of Las Vegas, 755 F.2d at 704 (same), with ARMCO, Inc. v. EPA, 869 F.2d 975, 981-82 (6th Cir. 1989) (citizen suit jurisdiction where EPA had taken no action with regard to sludge removal credits); Chemical Mfgs. Ass'n v. EPA, 870 F.2d 177, 265-66 (5th Cir. 1977) (citizen suit jurisdiction where EPA reserved for future rule-making the promulgation of effluent limitations); Trustees for Alaska v. EPA, 749 F.2d 549, 558-59 (9th Cir. 1984) (citizen suit jurisdiction where EPA had yet to promulgate effluent guidelines governing the placer mining industry).

---

[9] Indeed, in contrast to other sections of the CWA, Section 316(b) contains no statutory directive to promulgate regulations at all. Compare 33 U.S.C. § 1326(b) with 33 U.S.C. § 1313(b)-(c) (requiring Administrator to "publish proposed regulations setting forth water quality standards for a State in accordance with the applicable requirements of this Act") and 33 U.S.C. § 1342(p)(4) ("the Administrator shall establish regulations setting forth the permit application requirements for stormwater discharges").

As in Sun Enterprises, City of Las Vegas, and Scott, EPA has indeed taken final action here, and this Court's jurisdiction under Section 505(a)(2) to review citizen suits cannot be invoked. As the Second Circuit held in Sun Enterprises, in affirming the dismissal of a similar CWA citizen suit: "[i]t is not the failure of the Administrator to perform a non-discretionary duty which is at issue; rather it is the manner in which those duties were performed which appellants are challenging." 532 F.2d at 288. Plaintiffs' challenge to the Phase III Rule should therefore be dismissed for lack of subject matter jurisdiction.

## C.    PLAINTIFFS' APA CLAIMS SHOULD ALSO BE DISMISSED

The Court should also dismiss plaintiffs' challenge to the Phase III Rule under the APA, see Amend. Compl., at ¶¶ 92-94, 95-97, because the Court of Appeals has exclusive jurisdiction to review such claims.

As a threshold matter, the APA applies "by its own terms, only where 'there is no other adequate remedy in a court.'" Sun Enterprises, 532 F.2d at 288 (citing 5 U.S.C. § 704). Accordingly, as the Second Circuit squarely held in Sun Enterprises, where review in the Court of Appeals is available under CWA Section 509, review of claims under the APA is "preclude[d]." Id.; accord Oljato Chapter of Navajo Tribe v. Train, 515 F.2d 654, 664 (D.C. Cir. 1975) (because the Clean Air Act "provides an adequate remedy, although exclusively in this court, APA jurisdiction remains dormant"); cf. Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001) ("Because review of Plaintiffs' [citizen suit] is available under the Clean Water Act, it is not subject to review under the APA"); Allegheny County Sanitary Auth. v. EPA, 732 F.2d 1167, 1177 (3d Cir. 1984) (citizen suit under the CWA alleging failure to perform nondiscretionary duty precludes remedy under the APA).

As set forth in above, see supra at 11-13, the Court of Appeals has exclusive jurisdiction

over plaintiffs' challenge to the Phase III Rule pursuant to Section 509 of the CWA.  33 U.S.C. §

1369(b)(1)(E).  Indeed, plaintiffs are already pursuing review of the Phase III Rule in the Fifth

Circuit, see supra at 8-9, and review of the same claims in district court would be duplicative.

The Second Circuit has counseled against any statutory interpretation that would result in such

simultaneous review.  Sun Enterprises, 532 F.2d at 287 ("[T]here is a strong presumption against

the availability of simultaneous review in both the district court and the court of appeals" under

the CWA).  Moreover, the availability of Court of Appeals review under Section 509 means that

plaintiffs have an "adequate remedy" under the CWA, therefore precluding review under the

APA in this Court.  Id.  Plaintiffs' APA claims should therefore be dismissed.


## CONCLUSION

For the reasons set forth above, the Amended Complaint should be dismissed in its

entirety.

Dated: New York, New York
      February 7, 2007

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants

By:    

WENDY H. WASZMER
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-2729
Fax:  (212) 637-2717

-20-