UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RIVERKEEPER, INC., *et al*.

Plaintiffs,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et ano.*,

Defendants.

06 Civ. 12987 (PKC)
ECF case

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Charles C. Caldart (*pro hac vice*)
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, Washington 98102
Tel:  206-568-2853
Fax:  206-568-2858

Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, California  94133
Tel:  415-622-0086 x306
Fax:  415-622-0016

Counsel for Plaintiff Massachusetts Public
Interest Research Group, Inc.

Reed W. Super (RS 3615)
Edward Lloyd (*pro hac vice*)
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
Environmental Law Clinic
Columbia University School of Law
435 West 116th Street
New York, New York 10027
Tel:  212-854-3365
Fax:  212-854-3554

P. Kent Correll (PC 2609)
300 Park Avenue, 17th Floor
New York, New York 10022
Tel:  212-475-3070
Fax:  212-475-2378

Counsel for Plaintiffs Riverkeeper, Inc., Natural Resources
Defense Council, Waterkeeper Alliance, Inc.,
Soundkeeper, Inc., Delaware Riverkeeper Network,
American Littoral Society, Raritan Baykeeper, Inc., d/b/a
NY/NJ Baykeeper, Save the Bay—People for Narragansett
Bay, Friends of Casco Bay, Santa Monica Baykeeper, Inc.,
and Surfrider Foundation

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATMENT ............................................................................................ 1

STATUTORY, REGULATORY, AND PROCEDURAL BACKGROUND ................................ 3

    Clean Water Act Section 316(b) ............................................................................ 3

    EPA's Section 316(b) Rulemaking ........................................................................ 4

    This Action ............................................................................................................ 7

ARGUMENT ............................................................................................................... 8

I.    THE COURT OF APPEALS DOES NOT HAVE
    JURISDICTION OVER PLAINTIFFS' CLAIMS. ................................................. 8

    A.    CWA Section 509(b)(1)(E) Does Not Grant Jurisdiction to Review
        EPA's Decision *Not* to Promulgate Limitations. .................................... 8

    B.    EPA Has Not Promulgated a Limitation Under CWA Section
        316(b) for Existing Manufacturing Facilities. ...................................... 13

II.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS. ........................ 18

    A.    This Court Has Subject Matter Jurisdiction Regardless of the
        Ultimate Disposition of Plaintiffs' Claims. .......................................... 18

    B.    This Court Has Jurisdiction Over Plaintiffs' First Cause of Action
        Under Clean Water Act Section 505(a)(2) ............................................. 21

    C.    This Court Has Jurisdiction Over Plaintiffs' Second and Third
        Causes of Action Under 28 U.S.C. § 1331. .......................................... 24

CONCLUSION ............................................................................................................ 25

Plaintiffs[1] submit this memorandum of law in opposition to the Motion to Dismiss the

Amended Complaint and supporting memorandum ("EPA Memo") filed by defendants U.S.

Environmental Protection Agency and its Administrator Stephen L. Johnson (collectively,

"EPA") and joined by intervenor Cooling Water Intake Structure Coalition.

## PRELIMINARY STATMENT

This Court has subject matter jurisdiction over this case, and EPA's argument that this

case belongs in the court of appeals is without merit.  The amended complaint alleges that EPA

has failed to perform its nondiscretionary duty under section 316(b) of the Clean Water Act

("CWA"), 33 U.S.C. § 1326(b), to promulgate national technology-based requirements for

cooling water intake structures ("CWIS") at existing manufacturing plants.[2]  In the alternative,

the amended compliant alleges that EPA's June 2006 decision not to promulgate either the CWIS

regulations it proposed in 2004 or any other substantive regulations for such facilities was

unlawful because in making the decision, EPA relied on factors Congress did not intend the

agency to consider[3] and was arbitrary and capricious.[4]  As a result of EPA's continuing failure to

promulgate the subject regulations, the nature and scope of any CWIS permitting requirements

for these facilities will continue to be determined on an *ad hoc,* inconsistent, case-by-case basis,

according to the "best professional judgment" of individual permit writers.

---

[1]  Riverkeeper, Inc., Natural Resources Defense Council, Waterkeeper Alliance, Inc.,
Soundkeeper, Inc., Delaware Riverkeeper Network, American Littoral Society, Raritan
Baykeeper, Inc. d/b/a NY/NJ Baykeeper, Save the Bay—People for Narragansett Bay, Friends of
Casco Bay, Santa Monica Baykeeper, Inc., Surfrider Foundation, and Massachusetts Public
Interest Research Group, Inc.

[2]  First Claim for Relief, Am. Comp. ¶¶ 1, 4-5, 7, 9, 30-39, 54-56, 82, 88-91.

[3]  Second Claim for Relief, Am. Comp. ¶¶ 2, 9, 34-35, 84, 92-94.

[4]  Third Claim for Relief, Am. Comp. ¶¶ 2, 9, 79, 84, 95-97.

To defeat jurisdiction in this Court, EPA argues that the CWA vests exclusive jurisdiction over these claims in the court of appeals.  EPA contends, without supporting authority, that because it took "final action" with respect to the promulgation of regulations – *i.e.*, by deciding not to promulgate them – its decision must be reviewed in circuit court pursuant to CWA section 509(b)(1)(E), 33 U.S.C. § 1369(b)(1)(E).  EPA's argument is that only *passive* failures to act (what it refers to as alleged "nonfeasance") may be challenged in the district court, while *active*, explicated decisions not to issue regulations (what it terms alleged "misfeasance") must be challenged in the circuit court.  But that is not the law.  The courts have held that EPA's failures to promulgate CWA regulations, whether passive or active, are not reviewable in circuit courts under section 509(b)(1)(E) even where, as here, they flow from a deliberate decision that was based on an administrative record and published in the Federal Register.  *See* Section I.A., *infra*.

Moreover, EPA has not "promulgated" a "limitation" reviewable in the court of appeals under section 509(b)(1)(E) because EPA's 2006 decision on existing manufacturing facilities promulgated nothing.  It will not be codified and has no "independent legal effect."  Rather than issuing binding directions to permit writers, the agency simply opted to continue the permitting *status quo* that has long existed for CWIS at these facilities.  *See* Section I.B., *infra*.  In short, because section 509 does not apply, this Court has jurisdiction under CWA section 505(a)(2), 33 U.S.C. § 1365(a)(2) – to hear claims that EPA failed to perform a nondiscretionary duty – and under 28 U.S.C. § 1331 – to review EPA's decision under the Administrative Procedure Act ("APA").

EPA further argues that this Court lacks jurisdiction because, according to EPA, the agency has no mandatory duty to promulgate categorical CWIS regulations for existing manufacturing facilities.  The proper jurisdictional analysis, however, does not reach the merits.

Rather, it depends solely on upon whether the allegations set forth in the complaint are wholly insubstantial and frivolous. Because Plaintiffs' claims clearly are not wholly insubstantial and frivolous, jurisdiction under both section 505(a)(2) and 28 U.S.C. § 1331 must be found to exist here regardless of the ultimate disposition of those claims. *See* Section II, *infra*.

Finally, since there is no dispute as to whether the federal courts have jurisdiction to hear the claims presented herein, s*ee* EPA Memo at 1-2 ("this is precisely the type of legal challenge that [belongs] … in the Court of Appeals"), the only question is whether it is the district court or the court of appeals. EPA's sovereign immunity arguments, *id*. at 10, 14, are thus beside the point, as Congress has already stated that EPA may be sued under the CWA and APA.

Accordingly, EPA's Rule 12(b)(1) motion should be denied in its entirety.[5]

## STATUTORY, REGULATORY, AND PROCEDURAL BACKGROUND

**Clean Water Act Section 316(b)**

Industrial facilities use cooling water intake structures ("CWIS") to withdraw water from natural waterbodies for cooling their processes. "The environmental impact of these systems is staggering. … Cognizant of this, when Congress amended the Clean Water Act in 1972, it directed the EPA to regulate such [CWIS] so as to 'minimize adverse environmental impact.'" *Riverkeeper, Inc. v. EPA*, 358 F.3d 174, 181 (2d Cir. 2004) ("*Riverkeeper I*") (footnote omitted).

---

[5]  In the January 12, 2007 pre-motion letter, EPA stated that it intended to file a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). The "Legal Standard" section of its memorandum references only Rule 12(b)(1), *see* EPA Memo at 10-11, and EPA's entire legal argument is premised in terms of jurisdiction; nowhere does it assert a failure to state a claim. Without explanation, however, EPA cites Rule 12(b)(6) in its Notice of Motion and on page 1 of its memorandum. These two undeveloped, unsupported, and unexpected citations to Rule 12(b)(6) should be ignored, and neither EPA nor the intervenor should be permitted to develop Rule 12(b)(6) arguments in the first instance in its reply brief. If the Court is inclined to consider any such arguments, Plaintiffs respectfully request the opportunity to further brief the issue, as the legal standard and scope of inquiry for, as well as the disposition of, such motion would be very different from those applicable to the instant Rule 12(b)(1) motion.

The 1972 CWA established a comprehensive scheme for controlling both the discharge of pollutants and the intake of cooling water, and established a strict timetable for achieving its objectives. As the Second Circuit has explained:

> interpretation of section 316(b) is informed by the two provisions it cross-references, CWA sections 301 and 306.  Section 301 sets forth a framework under which limitations on the discharge of pollutants would become more stringent over time [and] required the EPA, beginning in 1977, to set effluent limitations for existing sources …

*Riverkeeper, Inc. v. EPA*, 475 F.3d 83, 91 (2d Cir. 2007) ("*Riverkeeper II*") (internal citations omitted).[6]  Furthermore, "section 316(b) required the EPA to promulgate regulations for cooling water intake structures at the same time that it established pollution discharge standards pursuant to sections 301 and 306."  *Id*. at 90.

Because Congress recognized that EPA's promulgation of national requirements under sections 301, 306, and 316(b) would not be immediate, the CWA authorizes permit writers to develop permit conditions on a case-by-case basis, using their best professional judgment ("BPJ") under section 402(a)(1)(B), 33 U.S.C. § 1342(a)(1)(B), during this interim period.  *See Natural Resources Defense Council ("NRDC") v. EPA*, 863 F.2d 1420, 1425 (9th Cir. 1988).

**EPA's Section 316(b) Rulemaking**

EPA has promulgated effluent limitations under sections 301 for the existing manufacturing facilities at issue here.  Am. Comp. ¶¶ 46-47.  Because those regulations do not contain requirements relating to CWIS, *see, e.g.*, 40 C.F.R. §§ 414, 419, 430, 438, section 316(b) requirements have been imposed on these facilities on a case-by-case, BPJ basis pursuant to section 402(a)(1)(B), thereby perpetuating the *ad hoc* interim approach that Congress rejected in

---

[6]  Congress created this system of "nationally uniform standards" under sections 301, 306, and 316(b) as the centerpiece of the 1972 CWA.  *See Am. Frozen Food Inst. v. Train*, 539 F.2d 107, 121 (D.C. Cir. 1976); *see also Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1042 (D.C. Cir. 1978) ("Congress considered uniformity vital").

1972 and sought to replace with uniform national standards.  Am. Comp, ¶¶ 55, 56, 84, 88.

In 1976, EPA promulgated a national section 316(b) regulation, *see* EPA Memo at 5, that was codified at 40 C.F.R. §§ 402.10-402.12.  Industry challenged the regulation, and the Fourth Circuit remanded it because EPA had not complied with the notice and comment requirements of the APA.  *Appalachian Power Co. v. Train*, 566 F.2d 451, 457 (4th Cir. 1977).  EPA then withdrew the regulations, Am. Comp. ¶ 53, with the exception of one, apparently vestigial provision, 40 C.F.R. § 401.14, which repeats the statutory standard of CWA section 316(b), but refers to the now-withdrawn provisions of the prior regulation.

More than a decade passed, and EPA neither reissued this regulation nor issued any other section 316(b) regulations.  Am. Comp. ¶ 54.  In 1993, many of the Plaintiffs herein sued EPA in this Court and, in 1995, they won a consent decree ordering EPA to take final action with respect to section 316(b) regulations by 2001.  *Id.* ¶ 57; *see also Cronin v. Browner*, 898 F. Supp. 1052, 1064 (S.D.N.Y. 1995) (entering consent decree).  In 2000, after EPA reported it could not meet this deadline, the consent decree was amended to allow EPA to implement section 316(b) in three phases as follows:  Phase I – all new facilities; Phase II – large existing power plants; and Phase III – all other existing facilities, particularly manufacturing plants. Am. Comp. ¶ 58.

In 2001, EPA promulgated its Phase I Rule, establishing national BTA standards for CWIS at all new facilities except for offshore oil and gas extraction facilities.[7]  Am. Comp. ¶¶ 59-65.  The Second Circuit reviewed the Phase I Rule and remanded one provision as contradictory to congressional intent.  *Riverkeeper I*, 358 F.3d at 181, 191.

In 2004, EPA promulgated its Phase II Rule, establishing national BTA standards for

---

[7]  In promulgating the Phase I Rule, codified at 40 C.F.R. § 125.80 *et seq*., EPA conducted the regulatory reviews required by statute and executive order.  *See* 66 Fed. Reg. 65,256, 65,327-33 (Dec. 18, 2001); *see also id*. at 65,323-26 (analyzing costs and benefits).

CWIS at large existing power plants.[8]  Am. Comp. ¶¶ 67-69.  The Second Circuit reviewed the

Phase II Rule and on January 25, 2007 issued a decision remanding significant portions of the

rule.  *Riverkeeper II*, 475 F.3d at 130-31.[9]

On November 24, 2004, EPA proposed a Phase III Rule, consisting of two different sets

of regulations:  (1) regulations applicable to existing manufacturing facilities; and (2) regulations

applicable to new offshore and coastal oil and gas facilities, which EPA had deferred from Phase

I.  Am. Comp. ¶ 71.  Under EPA's proposal, "existing Phase III facilities would be subject to the

same national performance standards … through the same five compliance alternatives provided

in the Phase II rule."  69 Fed. Reg. 68,444, 68,466/1-2 (Nov. 24, 2004).[10]  EPA explicitly found

that the proposed national requirements for existing manufacturing facilities were "based on the

best technology available to minimize the adverse environmental impact associated with the use

of cooling water intake structures" and that such technology is both "technically available" and

"economically practicable."  *Id.* at 68,444, 68,449.

On June 16, 2006, EPA published notice of its final action on Phase III regulations,

which consisted of two different decisions:  (1) the promulgation of regulations for new offshore

and coastal oil and gas extraction facilities, which are codified at 40 C.F.R. § 125, Subpart N;

and (2) a separate decision *not* to promulgate regulations for existing manufacturing facilities.

Am. Comp. ¶¶ 80-81, 83.  Thus, the "Phase III Rule" applies only to new oil and gas extraction

---

[8]  In promulgating the Phase II Rule, codified at 40 C.F.R. § 125.90 *et seq.*, EPA conducted the regulatory reviews required by statute and executive order.  *See* 69 Fed. Reg. 41,576, 41,664-69 (July 9, 2004); *see also id.* at 41,650-64 (analyzing costs and benefits).

[9]  The *Riverkeeper II* decision post-dates the filing of the Amended Complaint, which stated that the parties were awaiting a decision from the Second Circuit.  Am. Comp. ¶ 70.

[10]  In Federal Register cites herein, the number(s) following the "/" refer to the column(s).

facilities; there is no "Phase III Rule" for existing manufacturing facilities.[11]

 **This Action**

Plaintiffs filed suit in this Court under CWA section 505(a)(2) to compel EPA to perform its nondiscretionary duty to promulgate national "Best Technology Available" ("BTA") regulations for CWIS at existing manufacturing facilities, and, alternatively, under the APA to review EPA's decision not to promulgate BTA regulations for such facilities.  *Id*. ¶¶ 1-2. Plaintiffs have not challenged the "Phase III Rule," as EPA states, EPA Memo at 9, because, as discussed, that rule does not cover existing facilities.   Plaintiffs also filed petitions to review EPA's June 2006 decision in the Second Circuit and other circuit courts for the districts in which they reside or transact business.[12]  Such "dual filing" in circuit court and district court is prudent and commonplace where it is anticipated that jurisdiction will be disputed,[13] and is not, as EPA would have it, a "tacit acknowledgement of the jurisdiction of the Court of Appeals."  EPA Memo at 12.[14]

---

[11]  Consistent with that distinction, in promulgating the final Phase III Rule, EPA conducted the regulatory reviews required by statute and executive order only for the promulgated regulations for new oil rigs.  *See* 71 Fed. Reg. 35,006, 35,034-39 (June 16, 2006).

[12]  Pursuant to a random selection by the Judicial Panel on Multidistrict Litigation, Plaintiffs' petitions have been consolidated with one filed by industry in the Fifth Circuit to challenge the regulations EPA promulgated at the same time for new oil rigs.

[13]  *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 555 (2d Cir. 1978) (complaint filed in district court and petition filed in circuit court "as a precaution"); *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446, 448 (4th Cir. 1977) ("*VEPCO*") (challenges to EPA's first section 316(b) regulation filed in circuit court and then in district court when plaintiffs "became convinced that jurisdiction properly resided in the district court").  Because CWA section 509(b)(2) contains a 120-day statute of limitations, "careful lawyers must apply for judicial review [in the court of appeals] of anything even remotely resembling" an action reviewable under section 509(b)(1).  *Am. Paper Inst. v. EPA*, 882 F.2d 287, 288 (7th Cir. 1989).

[14]  Because Plaintiffs' precautionary filing does not seek simultaneous review of the merits in two different courts, EPA's arguments regarding the "presumption against simultaneous review," EPA Memo at 2, 14, 20, are inapposite.  In fact, Plaintiffs have attempted

## ARGUMENT

**I.    THE COURT OF APPEALS DOES NOT HAVE JURISDICTION OVER PLAINTIFFS' CLAIMS.**

EPA's argument that CWA section 509(b)(1)(E) vests exclusive jurisdiction over Plaintiffs' claims in the court of appeals, *see* EPA Memo at 1-2, 11-13, 19-20, is contradicted by the language of that provision and the case law interpreting it.  In fact, Plaintiffs are aware of no case holding what EPA argues here.

### A.    CWA Section 509(b)(1)(E) Does Not Grant Jurisdiction to Review EPA's Decision *Not* to Promulgate Limitations.

EPA argues that jurisdiction lies in the court of appeals because it "took final action" with regard to existing manufacturing facilities.  EPA Memo at 12.  However, Congress did not grant circuit courts jurisdiction to review all of EPA's final actions under the CWA.  Instead,

> [t]he complexity and specificity of section 509(b) in identifying what actions of EPA under the [CWA] would be reviewable in the courts of appeals suggests that not all such actions are so reviewable.  If Congress had so intended, it could have simply provided that all EPA action under the statute would be subject to review in the courts of appeals, rather than specifying particular actions and leaving out others.

*Bethlehem Steel Corp. v. EPA*, 538 F.2d 513, 517 (2d Cir. 1976).[15]  Therefore, jurisdiction in the

---

to stipulate with all parties to both cases on how to proceed with this dual litigation.  Plaintiffs suggested that this Court should determine its own jurisdiction in the first instance, so that any appeal from that jurisdictional decision and/or judgment on the merits would be resolved in the Second Circuit, which could then consider the merits, either on appeal or originally, depending on where jurisdiction is finally determined to lie.  *See* Nov. 14, 2006 letter at p. 3 (Exh. A to Declaration of Reed W. Super ("Super Decl.")).  Plaintiffs have moved the Fifth Circuit to transfer their petitions to the Second Circuit, which previously reviewed the Phase I and Phase II rules.  If the petitions are transferred, Plaintiffs intend to move the Second Circuit to stay their petitions pending adjudication by this Court.  *Id.*  Plaintiffs have also advised the Fifth Circuit of the existence of their complaint in this Court, and if their petitions are not transferred, they intend to present the same jurisdictional arguments they raise here to that court.  Super Decl. ¶ 3. Plaintiffs' dual filing has no bearing on the question presently before this Court – *i.e.*, the proper statutory interpretation and application of section 509(b)(1)(E) to the challenged EPA action.

[15]  *See also Cent. Hudson,* 587 F.2d at 555 ("It is ... clear ... that the six categories of §

court of appeals turns not on whether EPA has acted or failed to act, or on whether EPA has

issued a rule, but rather on whether the challenged action is covered by the specific jurisdictional

grant of section 509(b)(1)(E), which provides, in pertinent part, as follows:

> Review of the Administrator's action … in approving or promulgating any
> effluent limitation or other limitation under section 301 [or] 306 … may be had by
> any interested person in the Circuit Court of Appeals of the United States ....

33 U.S.C. § 1369(b)(1)(E).[16]

The courts have uniformly held that EPA's *failure* to promulgate a "limitation" required

by the CWA does not come within the ambit of section 509(b)(1)(E), even where it is expressed

as a deliberate decision, is based on an administrative record, and is published in the Federal

Register in the preamble to a separate but related regulation.  *See, e.g.*, *Pennsylvania Dep't of*

*Envtl. Res. v. EPA*, 618 F.2d 991, 994 (3d Cir. 1980) (rejecting claim that "section 509 review

was intended by Congress to encompass omissions from regulations or failure to promulgate

regulations."); *Envtl. Def. Fund ("EDF") v. EPA*, 598 F.2d 62, 87 (D.C. Cir. 1978) (arguments

that "EPA should promulgate additional regulations … may only be presented to a district

court").[17]  In rejecting claims that section 509 applies in such situations, courts have focused on

---

1369(b)(1) do not cover all possible forms of agency action."); *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992) ("The specificity and precision of section [509], and the sense of it, persuade us that it is designed to exclude" unlisted actions); *Friends of the Earth v. EPA*, 333 F.3d 184, 193 (D.C. Cir. 2003) ("Given the specificity of the CWA's judicial review provision, we join our sister circuits in holding that the courts of appeals have original jurisdiction to review only those EPA actions specifically enumerated in [509(b)(1)].").

[16]  EPA has not alleged that any other subsection of section 509(b)(1), or any other jurisdictional provision, applies to this case.

[17]  *See also Crown Simpson Pulp Co. v. Costle*, 599 F.2d 897, 902 (9th Cir. 1979) (section 509(b)(1)(E) does not apply where "the Administrator rejected the alleged effluent limitation"), *rev'd on other grounds*, 445 U.S. 193 (1980); *Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177, 266 (5th Cir. 1989) ("[F]ederal district courts, rather than the courts of appeals, have jurisdiction to hear claims that the Administrator has failed to fulfill a mandatory duty [under the CWA] to promulgate regulations or that the Administrator has abused his discretion by not promulgating

the nature of claims for relief:  jurisdiction lies in the district court where the plaintiffs or petitioners seek either to compel EPA to promulgate regulations or to review EPA's decision not to promulgate regulations.

A recent case, *NRDC v. EPA*, 437 F. Supp. 2d 1137 (C.D. Cal. 2006), is particularly instructive due to its factual similarity to the case at bar.  There, EPA "decided not to issue the proposed [effluent limitations]," and instead "elected to allow National Pollutant Discharge Elimination System ('NPDES') authorities in various states to continue issuing permits based on their 'best professional judgment,' exercised on a case-by-case basis."  *Id*. at 1144 (citing 69 Fed. Reg. 22,377, 22,472 (Apr. 26, 2004)).[18]  Plaintiffs challenged EPA's failure to promulgate the regulations in district court (while also filing a precautionary petition in the court of appeals). EPA filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, asserting that "that section 509(b)(1)(E) encompasses any final action by EPA, regardless of whether the end result is [effluent limitations], or a decision not to issue [them]."  *See NRDC v. EPA*, No. CV 04-8307-GHK(RCx) (C.D. Cal., Aug. 29, 2005) (order denying motion to dismiss) at 2.[19]  The court held that section 509(b)(1)(E) was "inapplicable" because "the statutory language itself

---

regulations."); *Trustees for Alaska v. EPA*, 749 F.2d 549, 558-59 (9th Cir. 1984) (Where "[petitioners'] argument is framed in terms of the EPA's failure to comply with a nondiscretionary duty to promulgate industry-wide rules … the Act confers jurisdiction on the federal district courts, not courts of appeal, [and] … [t]his grant of jurisdiction is exclusive."); *Armco, Inc. v. EPA*, 869 F.2d 975, 981 (6th Cir. 1989) ("We do not have jurisdiction for claims such as the one presented in this case to compel agency action under [the CWA].").

[18]  In so doing, EPA noted that the withdrawal of a proposed rule is not itself a rule, stating:  "Today's action does not constitute a rule under section 551 of the Administrative Procedure Act, 5 U.S.C. 551.  Hence, requirements of other regulatory statutes and Executive Orders that generally apply to rulemakings (*e.g.*, the Unfunded Mandates Reform Act) do not apply to this action."  69 Fed. Reg. at 22,483.

[19]  As the district court's decision on EPA's motion to dismiss was not published, a copy is attached as Exhibit B to the Super Declaration, submitted herewith.

suggests that EPA's decision not to issue [effluent limitations] does not constitute approval or promulgation." *Id.* Further, the court found that allegations framed in terms of a failure to comply with a nondiscretionary duty to promulgate industry-wide rules must be brought in the district court, "even where EPA's failure to approve or promulgate was a deliberate decision based on a record." *Id.* (citing *Pennsylvania*, 618 F.2d at 995). The court concluded that "despite the fact that EPA generated a full administrative record before deciding not to approve or promulgate [effluent limitations], EPA's failure to promulgate ... forecloses review pursuant to section 509(b)(1)(E)." *Id*. at 5.

In the instant case, Plaintiffs do not challenge the regulations EPA promulgated for new oil rigs, but rather seek to have the Court compel the promulgation of regulations for existing manufacturing facilities. *See* Am. Comp. ¶¶ 1, 9, 89-91 & Prayer for Relief. Accordingly, for the reasons set forth in the cases cited above, section 509 is inapplicable.

In support of its section 509(b)(1)(E) argument, EPA cites two cases, neither of which is apposite here. EPA's principal case, *Sun Enterprises Ltd. v. Train*, 532 F.2d 280, 285 (2d Cir. 1976), has nothing to do with section 509(b)(1)(E). It involved a challenge to the issuance by EPA of an NPDES permit under CWA section 402, 33 U.S.C. § 1342, which is addressed instead in *subsection F* of section 509(b)(1), vesting jurisdiction in the courts of appeal to review EPA's action "in issuing *or denying* any permit under section [402]." 33 U.S.C. § 1369(b)(1)(F) (emphasis added). The language of subsection F thus contrasts starkly to subsection E, which covers only the "promulgation or approval" of limitations under certain provisions,[20] and not the *rejection* thereof. (In any event, in *Sun Enterprises* EPA issued the permit, rather than denying it.) The acknowledgement in *Sun Enterprises* that challenges to the promulgation of effluent

---

[20] CWA §§ 301, 302, 306, 405; 33 U.S.C. §§ 1311, 1312, 1316, 1345.

limits must be brought in the court of appeals, 532 F.2d at 288, is consistent with the plain reading of the statute and with the interpretation of every other court. Nowhere does *Sun Enterprises* hold or even suggest that EPA's rejection of proposed limitations would be covered by any of the subsections of section 509(b)(1).

Nor does *Maier v. EPA*, 114 F.3d 1032 (10th Cir. 1997), support EPA's position. In *Maier*, EPA had promulgated and then later revised regulations establishing national technology-based effluent limitations for municipal wastewater treatment. *Id.* at 1035-36. The petitioner then requested that EPA further revise those regulations in light of recent developments in wastewater technology and, after EPA denied the request, filed a petition to review in the court of appeals. *Id.* at 1036. The court found it had jurisdiction pursuant to section 509 because "the refusal to revise a rule in the face of new information is more akin to a challenge to the existing rule than a challenge to the refusal to promulgate a new rule." *Id.* at 1038. In contrast to the present case, the petitioner in *Maier* did not contend that EPA had failed to comply with a nondiscretionary duty to promulgate national technology-based standards. *See id.* at 1039. The court thus noted that the case was "unlike others in which circuit courts have declined to find section [509] jurisdiction in the face of EPA's refusal to promulgate regulations at all, or its failure to do so by a date certain set in the law," *id.* at 1038-39 (citing *Trustees,* 749 F.2d at 558-59; *Armco*, 869 F.2d at 981-82; *Pennsylvania*, 618 F.2d at 995), and that section 509 "arguably does not apply to [EPA's] refusal to promulgate a rule in the first instance." *Id.* at 1037.[21]

---

[21] Although this Court need not take a position on the holding in *Maier* to resolve the jurisdictional issue presented here, it should be noted that the Tenth Circuit's view of circuit court jurisdiction there appears to have been based, at least in part, on its reading of cases interpreting the judicial review provision of the Clean Air Act ("CAA"), section 307(b), which in striking comparison to CWA section 509, vests circuit courts with jurisdiction to review "*any ... final action taken*" by the Administrator under the CAA. 42 U.S.C. § 7607(b)(emphasis added). 114 F.3d at 1037, citing *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C. Cir. 1975).

**B.    EPA Has Not Promulgated a Limitation Under CWA Section 316(b) for Existing Manufacturing Facilities.**

EPA also argues that its June 2006 final action with respect to CWIS at existing manufacturing facilities is, "[l]ike the Phase I and Phase II rules," an "other limitation" within the meaning of section 509(b)(1)(E).  EPA Memo at 11-12; *see also id.* at 17-18 (making similar argument in the context of CWA section 505).  To have "promulgated" a "limitation" reviewable in appellate court under section 509(b)(1)(E), however, EPA must have published a rule with "independent legal effect" that meaningfully constrains permit writers or permittees.  *Am. Paper Inst. v. EPA*, 882 F.2d 287, 289 (7th Cir. 1989) (EPA's published "approach to regulation" was not covered by section 509(b)(1)(E)).[22]  Strikingly *unlike* the Phase I and Phase II rules, EPA's 2006 decision that Phase III existing facilities will continue to be regulated on an *ad hoc* basis is nothing more than a policy statement:  it will not be codified and does not change the longstanding *status quo*.

During Phases I and II of the CWIS rulemaking, EPA established mandatory national standards based on its assessment of the best technology available for minimizing adverse environmental impact.  These standards were codified at 40 C.F.R. §§ 125.80 *et seq.* and 125.90 *et seq.*, respectively, and for the first time subjected CWIS facilities across the nation to uniform

---

[22]    *See also Am. Paper Inst. v. EPA*, 890 F.2d 869, 877 (7th Cir. 1989) (regulation "provid[ing] a general outline of EPA's policy for maintaining existing water quality" was not section 509(b)(1)(E) limitation); *Am. Iron & Steel Inst. v. EPA*, 543 F.2d 521, 527 (3d Cir. 1976) (regulations that "neither prescribe[d] specific number limitations for any pollutant, nor ... list[ed] the factors which must be considered in determining the control measures which individual point sources must employ" were not section 509(b)(1)(E) limitations); *South Holland Metal Finishing Co. v. Browner*, 97 F.3d 932, 936 (7th Cir. 1996) ("interpretive ruling" was not section 509(b)(1)(E) limitation); *NRDC v. EPA*, No. CV 04-8307-GHK(RCx) (C.D. Cal. Aug. 29, 2005) (EPA's published decision to rely on existing regulatory programs rather than promulgate national categorical discharge standards was not "promulgation" within meaning of section 509(b)(1)(E)), attached as Exh. B to Super Decl.; *cf. Northwest Envtl. Advocates v. EPA*, 2005 U.S. Dist. LEXIS 5373, at *13-17 (N.D. Cal. March 30, 2005) (regulation *exempting* class of facilities from NPDES program was not section 509(b)(1)(E) limitation).

permit requirements.  Because both sets of rules had "independent legal effect," original jurisdiction to review them lay unquestionably in the circuit court, and no party contested jurisdiction.[23]  Similarly, in the Phase III rule, EPA promulgated mandatory BTA standards for new facilities in the offshore and coastal oil and gas extraction categories, and, as with the Phase I and Phase II rules, there is no dispute that review of those limitations lies in the circuit court.

For the Phase III existing facilities, however, EPA "decided *not to promulgate* a national categorical rule."  71 Fed. Reg. at 35,016/3 (emphasis added).  Instead, EPA declared that "section 316(b) requirements for Phase III existing facilities will *continue to be imposed* on a case-by-case, best professional judgment basis."  *Id.* at 35,016/3 to 35,017/1 (emphasis added).  As discussed above, the case-by-case system to which EPA refers was established by Congress in 1972 in CWA section 402(a)(1)(B), codified in 40 C.F.R. § 125.3(c) in the 1970s, and was intended to serve as an interim mechanism until the required national limitations were established.  *See supra* at p. 4.   EPA's determination that this system should be left undisturbed is not the "promulgation" of a "limitation" as contemplated by section 509, for this decision does not, in and of itself, constrain permit holders or permittees in any way.  *Am. Paper Inst.*, 882 F.2d at 288 ("Promulgation means issuing a document with legal effect.").  EPA tacitly acknowledged this in the Phase III preamble by stating that "there are no benefits or compliance costs for existing facilities from this action," 71 Fed. Reg. at 35,034/1, and by noting that its requisite "Statutory and Executive Order Reviews"[24] covered only the promulgation of the Phase III standards governing new oil and gas facilities, and *not* its decision "not to promulgate

---

[23]  *See Riverkeeper I*, 358 F.3d at 183; *Riverkeeper II*, 475 F.3d at 95.

[24]  This includes, among others, EPA's analysis of promulgated regulations pursuant to Executive Order 12866 (Regulatory Planning and Review), the Paperwork Reduction Act, the Regulatory Flexibility Act, the Unfunded Mandates Reform Act, and Executive Order 13132 (Federalism).

national categorical standards for Phase III existing facilities." *Id.* at 35,034-39.

Nonetheless, EPA argues that its Phase III determination on the continued use of BPJ is "like the CWIS regulation promulgated by EPA in 1976," because it "'refer[s] to information that must be considered in determining the type of intake structures that individual point sources may employ.'" EPA Memo at 12 (quoting *Virginia Elec. & Power Co. ("VEPCO") v. Costle*, 566 F.2d 446, 450 (4th Cir. 1977)). A closer look at the 1976 regulation and the Fourth Circuit's *VEPCO* case, however, wholly belies the attempted comparison. In 1976, EPA promulgated a regulation, then codified at 40 C.F.R. § 402.12, explicitly *mandating* permit writers, in determining BTA permit requirements under section 316(b), to consider the technical information contained in an EPA-authored "Development Document." 566 F.2d at 448 & n.8 ("40 C.F.R. § 402.12 provides [that] '(t)he information contained in the Development Document *shall be considered …*'") (emphasis added). Before setting aside this regulation on procedural grounds, the Fourth Circuit held that it was a "limitation" within the meaning of section 509(b)(1)(E), because it was "mandatory in terms that it requires certain information to be considered in determining the best available technology for intake structures." *Id.* at 450.

EPA's pronouncement on existing manufacturing facilities contains no comparable mandate. Rather, it states:

> … EPA believes that the rulemaking record contains important factual data that can help permit writers when reissuing NPDES permits for the Phase III existing facilities. The numeric performance standards that EPA had proposed, for example, reflect EPA's judgment regarding the level of reduction in impingement mortality and entrainment that available technologies can achieve. Similarly, the regulatory support documents describe a variety of control devices, analyze their effectiveness and present their costs. The record also contains information regarding environmental impacts associated with cooling water intake structures. *EPA expects permit writers and permittees to fully consider this information and other useful guidance contained in the record* as they develop site specific section 316(b) requirements.

15

71 Fed. Reg. at 35,018/3 (emphasis added). This is a far cry from the 1976 CWIS regulation considered in *VEPCO*, for several reasons. First, EPA's "expectation" that permit writers will consider certain information is not a mandate or a directive, in contrast with the use of the mandatory term "shall" in the 1976 regulation. Second, this expectation appears only in the preamble to the Phase III rule, and not in the Code of Federal Regulations, and thus has no binding legal effect.[25] *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. 1986) (Scalia, J.). Third, the information and other "useful guidance" which EPA expects permit writers to consider is not specifically collected and identified, as was the 263-page development document in 1976. Rather, each permit writer would have to sift through an administrative record consisting of thousands of documents comprising hundreds of thousands of pages and attempt to identify which information and guidance EPA may have expected it would consider.[26] Thus, EPA's instant action is not a "limitation" under section 509(b)(1)(E).

EPA suggests later in its motion that it has *already* promulgated two CWIS regulations regulating existing Phase III CWIS facilities, namely, 40 C.F.R. § 125.90(b) (issued in 2004 during the Phase II rulemaking) and 40 C.F.R. § 401.14 (the remaining portion of the 1976 regulation discussed above). EPA Memo at 18.[27] The mere reference to these historical

---

[25] EPA not only codified its 1976 regulation in the C.F.R. but also subjected it to the economic and regulatory oversight analyses required at that time. *See* 41 Fed. Reg. 17,367, 17,389/3 (Apr. 26, 1976) ("An analysis of the projected economic effects of the regulation … has been prepared … in compliance with Executive Order No. 11821 and OMB Circular A-107."). As noted, the agency did no such analysis for its final action on Phase III existing facilities.

[26] The Phase I docket contains nearly 1,000 documents consisting of approximately 47,000 pages, the Phase II docket contains over 2,600 additional documents comprising approximately 125,000 pages of supporting material, 69 Fed. Reg. at 68,459/2, and the Phase III administrative record "includes all materials from the Phase I, Phase II, and Phase III section 316(b) rule dockets." 71 Fed. Reg. at 35,012/3.

[27] The former provides: "Existing facilities that are not subject to requirements under this or another subpart of this part must meet requirements under section 316(b) of the CWA

regulations is not, however, a present "promulgation." *See NRDC v. EPA*, No. CV 04-8307-GHK(RCx) (C.D. Cal., Aug. 29, 2005), attached as Exh. B to Super Decl., at 3 (EPA's decision to continue *status quo* BPJ permitting practices has no "legal effect").[28]

Further, these regulations lack the requisite "bite" to constitute "limitations" under section 509(b)(1)(E). *Am. Paper Inst.*, 882 F.2d at 289. Section 125.90(b) fails to "list the factors which must be considered in determining the control measures which individual point sources must employ," and thus fails the test applied by the Fourth Circuit, which found that the 1976 CWIS provisions "*do* refer to information that *must be considered* in determining the type of intake structures that individual point sources may employ, and, *by that token*, they are limitations." *VEPCO*, 566 F.2d at 450 (emphasis added). Section 401.14, the remnant of the 1976 regulation, is outright nonsensical in its present form. It directs the permit writer to comport with 40 C.F.R. Part 402, but that provision was stricken by EPA in response to the Fourth Circuit's 1977 remand and *was never re-promulgated*. 44 Fed. Reg. 32,956 (June 7, 1979); *see also* Am. Comp. ¶¶ 53-54. As it was this provision that specified the information to be considered by permit writers, the remaining portion of the 1976 regulation is not a "limitation" without it. *VEPCO*, 566 F.2d at 450 ("*by that token*, they are limitations") (emphasis added).

---

determined by the Director on a case-by-case, best professional judgment (BPJ) basis." 40 C.F.R. § 125.90(b). The latter provides: "The location, design, construction and capacity of cooling water intake structures of any point source for which a standard is established pursuant to section 301 or 306 of the Act shall reflect the best technology available for minimizing adverse environmental impact, in accordance with the provisions of Part 402 of this chapter." 40 C.F.R. § 401.14.

[28] Nor is this an "approval" of the earlier regulations, as that term is used in section 509(b)(1). Courts have interpreted that term to apply solely to instances in which EPA ratifies an action taken by *another entity*, and not to instances in which EPA acts alone. *See Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1431-32 (9th Cir. 1991).

## II.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS.

Because CWA section 509 does not apply, this Court has jurisdiction to hear Plaintiffs'

claims.  As the D.C. Circuit has explained:

> Jurisdiction lies in a district court *whether EPA's alleged duty is mandatory or discretionary.*  If the duty is mandatory, section 505 of the [CWA] expressly confers jurisdiction on the district court.  If the duty is discretionary, jurisdiction over the claim that EPA abused its discretion lies in district court.

*EDF v. EPA*, 598 F.2d at 91 (emphasis added; citations omitted).[29]  CWA section

505(a)(2) and the general federal question statute, 28 U.S.C. § 1331, provide this Court

with subject matter jurisdiction to hear Plaintiffs' claims that EPA:  (1) failed to perform

a nondiscretionary duty; and (2) abused its discretion or otherwise failed to proceed in

accordance with law.  Because these claims are not wholly insubstantial or frivolous, they

meet the threshold jurisdictional test, and EPA's Rule 12(b)(1) motion should be denied.

### A.    This Court Has Subject Matter Jurisdiction Regardless of the Ultimate Disposition of Plaintiffs' Claims.

In the January 12, 2007 joint pre-motion and status conference letter to the Court, EPA

stated that "the court need not reach the merits of the plaintiffs' claims under the CWA and APA

because neither statute provides a basis for subject matter jurisdiction."  (p.7).  Accordingly,

EPA has styled its motion as a challenge to subject matter jurisdiction, and all parties have

agreed that the threshold jurisdictional analysis should be determined here in advance of any

briefing on the merits.

This is consistent with prevailing law.  It is well settled that a court takes its subject

matter jurisdiction from the face of the complaint and need not decide the merits of a case in

---

[29]  *See also Chem. Mfrs,* 870 F.2d at 266 ("federal district courts … have jurisdiction to hear claims that the Administrator has failed to fulfill a mandatory duty to promulgate regulations or … has abused his discretion by not promulgating regulations.").

order to satisfy itself that it has subject matter jurisdiction. In *Bell v. Hood*, the Supreme Court

stated:

> Before deciding that there is no jurisdiction [under 28 U.S.C. § 1331(a)], the
> District Court must look to the way the complaint is drawn to see if it is drawn so
> as to claim a right to recover under the Constitution and the laws of the United
> States. For to that extent "the party who brings a suit is master to decide what law
> he will rely upon and … does determine whether he will bring a 'suit arising
> under' the … Constitution or laws of the United States by his declaration or bill."
>
> Jurisdiction, therefore, is not defeated … by the possibility that the averments
> might fail to state a cause of action on which petitioners could actually recover.
> … [T]he failure to state a proper cause of action calls for a judgment on the merits
> and not for a dismissal for want of jurisdiction. Whether the complaint states a
> cause of action on which relief could be granted is a question of law and … must
> be decided after and not before the court has assumed jurisdiction over the
> controversy. If the court does later exercise its jurisdiction to determine that the
> allegations in the complaint do not state a ground for relief, then dismissal of the
> case would be on the merits, not for want of jurisdiction.

327 U.S. 678, 681-82 (1946) (citations omitted). Thus, the test for determining whether

jurisdiction exists at the threshold is a lenient one: a district court must entertain the suit unless

the alleged claim appears to be "wholly insubstantial and frivolous." *Id*. at 682-83.[30]

This principle is reaffirmed in the language of CWA section 505(a)(2), under which

Plaintiffs bring their primary claim for relief. That section provides that any citizen may

commence a civil action "where there is *alleged* a failure of the [EPA] to perform any act or duty

under this chapter which is not discretionary," and further provides that "*the district court shall

have jurisdiction* … to order [EPA] to perform such act or duty." 33 U.S.C. § 1365(a)(2)

---

[30] EPA's contention that "[t]he plaintiffs bear the burden of proving by a preponderance
of the evidence that the Court has subject matter jurisdiction over their claims," EPA Memo at
10, is thus incorrect at this stage of the case. *See Oneida Indian Nation v. County of Oneida*, 414
U.S. 661, 666 (1974) (proper jurisdictional test is whether right claimed is "so insubstantial,
implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit
as not to involve a federal controversy"); *see also Duke Power Co. v. Carolina Envtl. Study
Group*, 438 U.S. 59, 70-71 (1978); *Fogel v. Chestnutt*, 668 F.2d 100, 105-107 (2d Cir. 1981);
*Goldman v. Gallant Securities, Inc.*, 878 F.2d 71, 73 (2d Cir. 1989).

(emphasis added); *see also Gwaltney of Smithfield v. Cheaspeake Bay Found.*, 484 U.S. 49, 65 (1987) ("Congress intended a good-faith allegation to suffice for jurisdictional purposes" under the companion prong of the CWA citizen suit provision, section 505(a)(1), which grants district court jurisdiction over claims of "alleged" violations of the CWA); *Hudson Riverkeeper Fund v. Orange and Rockland Utils.,* 835 F. Supp. 160, 165 (S.D.N.Y. 1993) (refusing to dismiss a CWA section 505(a)(1) suit for lack of jurisdiction because, "just as in *Bell v. Hood* … the papers submitted in support of this motion do not show that the claim is *insubstantial or frivolous*," and noting that issues related to the sufficiency of the claim can be resolved "only *after* [the court] has assumed subject matter jurisdiction over the controversy") (emphasis added).

In *Cronin v. Browner*, this Court decided the precise issue presented here:  whether CWA section 505(a)(2) provides subject matter jurisdiction to hear allegations that EPA has failed to perform its nondiscretionary duty to issue regulations pursuant to section 316(b).  In that case, after EPA had agreed to the initial consent decree commanding the issuance of section 316(b) regulations,[31] a host of industry groups sought to intervene, *inter alia*, to argue that jurisdiction to enter the decree was lacking because the Court had never reached the merits of the plaintiffs' claims.  898 F. Supp. at 1055, 1057.  Recognizing that a federal court is "obligated at all times to satisfy [itself] of [its] subject matter jurisdiction," this Court rejected the contention that it must reach the merits to do so:

> [The Court] need not – and in fact should not – determine the merits of plaintiffs' allegations … in order to resolve the threshold jurisdictional issue.  Rather, [the Court] must determine that the claim is "neither immaterial nor insubstantial."

*Id*. at 1058 (quoting *Goldman v. Gallant Secs., Inc.*, 878 F.2d 71, 73 (2d Cir. 1989)).

---

[31]  The actions taken by EPA under that consent decree ultimately gave rise to *Riverkeeper I*, *Riverkeeper II*, and this case.

### B. This Court Has Jurisdiction Over Plaintiffs' First Cause of Action Under Clean Water Act Section 505(a)(2).

Plaintiffs' allegations that EPA has failed to perform the nondiscretionary duty of promulgating national BTA regulations for existing manufacturing facilities pursuant to CWA section 316(b), Am. Comp. ¶¶ 1, 5, 7, 9, 80, 90, are not wholly insubstantial or frivolous. EPA's contention that "section 316(b) merely provides a substantive standard … [and] leaves it to EPA's discretion to determine how to implement the substantive requirements," EPA Memo at 15, is flatly contradicted by the statutory text, legislative history, and judicial decisions. In fact, the construction of section 316(b) that EPA urges here has already been rejected by the Second Circuit and this Court.

In determining whether a duty is discretionary or nondiscretionary, courts have applied two different standards. Some have looked solely for a statutory mandate.[32] Others have looked for mandatory language plus a statutory deadline.[33] Plaintiffs meet both tests. The language of section 316(b) is mandatory; it requires EPA to regulate CWIS as part of the standards it establishes for new and existing sources of pollution under sections 301 and 306. Accordingly, the limitations required by section 316(b) are promulgated under section 301 and 306.[34] The

---

[32] *See, e.g.. E.I. Du Pont De Nemours & Co. v. Train*, 430 U.S. 112, 133 n.24 (1977); *NRDC v. Train*, 545 F.2d 320, 327 (2d Cir. 1976); *NRDC v. Train*, 510 F.2d 692, 704-14 (D.C. Cir. 1975); *NRDC v. NYS DEC*, 700 F. Supp. 173, 181 (S.D.N.Y. 1988);; *EDF v. Costle*, 439 F. Supp. 980, 999-1005 (E.D.N.Y. 1977). *See also Scott v. City of Hammond*, 741 F.2d 992, 997 (7th Cir. 1984) (inferring mandate from CWA's "stautory scheme").

[33] *See American Lung Ass'n v. Reilly*, 962 F.2d 258, 262-63 (2d Cir. 1992); *NRDC v. Thomas*, 885 F.2d 1067, 1075 (2d Cir. 1989); *EDF v. Thomas*, 870 F.2d 892, 898 (2d Cir. 1989); *Sierra Club v. Thomas*, 828 F.2d 783, 787-92 (D.C. Cir. 1987).

[34] *VEPCO*, 566 F.2d at 450 ("[Section] 316(b) … requires § 301 and § 306 standards to deal with cooling water intake structures.").

terms "shall" and "require" in section 316(b) are mandatory terms.[35]

Moreover, sections 301 and 306 contain "bright-line deadlines" which apply to the establishment of requirements under section 316(b).  As the Second Circuit explained in *Riverkeeper I*, "[w]hen the EPA established new source performance discharge standards pursuant to section … 306, it ought *then* to have regulated new intake structures, because, by virtue of section 316(b), section 306's standards shall require that … cooling water intake structures reflect the best technology available."  358 F.3d at 186 (citing *Cronin*, 898 F. Supp. at 1059) (emphasis in original; internal quotation marks omitted); *see also Riverkeeper II*, 475 F.3d at 90 ("[S]ection 316(b) required the EPA to promulgate regulations for cooling water intake structures *at the same time* that it established pollution discharge standards pursuant to sections 301 and 306.") (emphasis added); *Cronin,* 898 F. Supp. at 1059 ("[S]ection 316(b), as enacted, created a mandatory duty enforceable in the district court, because the time limits in sections 301 and 306 govern EPA's duty to take action under section 316(b).").[36]

EPA's contention that "Section 316(b) neither mandates that EPA 'promulgate national categorical BTA standards' nor directs EPA to take any other approach in implementing the BTA standard," EPA Memo at 15, is simply incorrect.[37]  The Supreme Court rejected a similar

---

[35]    As the Supreme Court stated in *Escoe v. Zerbst*, "'shall' … is the language of command."  295 U.S. 490, 493 (1935).

[36]    *See also id*. at 1060 ("[W]e find ... that the mandatory deadlines in sections 301 and 306 [] are properly applied to regulations issued pursuant to section 316(b)."); see also *Cronin v. Browner*, 90 F. Supp. 2d 364, 375 (S.D.N.Y. 2000) ("[T]he agency has thus far failed to comply with the congressional mandate under the Clean Water Act to promulgate rules for cooling water intake structures, a mandate issued more than a quarter century ago.").

[37]    Although EPA attempts to limit Plaintiffs to a claim that "categorical" limitations must be promulgated, *see id.* at 9, 15 (citing Am. Comp. ¶¶ 38, 72, 80), the claim actually is that the agency must promulgate national BTA regulations, whether categorical or otherwise.  *See, e.g.*, Am. Comp. ¶¶ 1, 4-5, 9, 54-56, 82, 88, 90, 93.

argument with respect to section 301 in *E.I. Du Pont De Nemours & Co. v. Train*.  In *Du Pont*,

the chemical industry argued that section 301 did not authorize EPA to promulgate regulations

establishing effluent limitations, but rather that permit writers were to establish such limitations

on a case-by-case basis.  The Supreme Court rejected this argument:

> The statutory language concerning the 1983 limitation … leaves no doubt that these limitations are to be set by regulation … Thus, *we find that § 301 unambiguously provides for the use of regulations to establish the 1983 effluent limitations* …. [T]he language of the statute supports the view that § 301 limitations are to be adopted by the Administrator … and that they are to take the form of regulations.

430 U.S. 112, 126-29 (1977) (emphasis added).

Despite this longstanding authority, EPA argues that the Second Circuit has

acknowledged EPA's discretion to continue case-by-case permitting.  EPA Memo at 2, 16, 18

(citing *Riverkeeper I*, 358 F.3d at 202-03).  In fact, the *Riverkeeper I* court relied on *National

Wildlife Federation v. EPA*, 286 F.3d 554, 566-67 (D.C. Cir. 2002), which EPA also cites, EPA

Memo at 16, for the principle that the CWA allows permitting to continue on "case-by-case basis

*where categorical regulation is not technologically feasible*."  358 F.3d at 203 (emphasis

added).[38]  In the Phase I Rule, EPA established national categorical CWIS standards for the vast

majority of new facilities, based on its finding that "technologies … are commercially available

for the industries affected as a whole."  66 Fed. Reg. at 65,273/1; *see also id.* at 65,275/2

("technically available").  But EPA also found that new smaller facilities (what it referred to as

"below-threshold facilities") were "uniquely situated" and could not meet those categorical

standards due to "technical impracticalities."  358 F.3d at 202, 203.  The Second Circuit rejected

---

[38]    *Riverkeeper I* also cited *NRDC v. EPA*, 859 F.2d 156, 201-02 (D.C. Cir. 1988), which upheld a provision of EPA's "antibacksliding" regulations that prohibits permit writers from weakening BPJ-derived permit conditions if a later-issued national categorical standard turns out to be less stringent.  That case has no bearing on whether EPA must promulgate categorical standards where technologically feasible.

the manufacturers' challenge to case-by-case permitting of below-threshold facilities, and concluded that case-by-case regulation was appropriate for that subcategory *because of* those "technical impracticalities." *Id.* at 203. In contrast, here Plaintiffs allege that EPA lacks discretion to decide not to promulgate the national categorical regulations it has already explicitly found were based on technology that is "available" to those facilities. Am. Compl. ¶¶ 75, 76, 80. Thus, Plaintiffs seek to compel EPA to meet its obligation under section 316(b), which, as the Second Circuit affirmed in *Riverkeeper II*, is a "statutory directive to set national standards" for existing facilities. 475 F.3d at 116.

### C. This Court Has Jurisdiction Over Plaintiffs' Second and Third Causes of Action Under 28 U.S.C. § 1331.

EPA's final argument, that Plaintiffs' APA claims should be dismissed because the court of appeals has exclusive jurisdiction pursuant to CWA section 509(b)(1)(E), simply repeats its first argument, *see* EPA Memo at 19-20 (citing *id.* at 11-13), and fails because section 509 does not apply to this case. *See* Section I, *supra*, at pp. 8-17.[39]

Furthermore, Plaintiffs' APA claims are not frivolous. Even if the regulation of CWIS had been left to EPA's discretion, this Court would nevertheless have jurisdiction to determine whether "the agency [violated the APA because it] has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

---

[39] EPA also fails to recognize that this Court's jurisdiction to review agency action comes not from the APA (which provides the standard of review) but from 28 U.S.C. § 1331. *See* Am. Comp. ¶ 11; *Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("The obvious effect of this modification [to 28 U.S.C. § 1331], subject only to preclusion-of-review statutes created or retained by Congress, is to confer jurisdiction on federal courts to review agency action."); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002) ("In *Califano v. Sanders* … the Supreme Court settled a long standing controversy by holding that 28 U.S.C. § 1331, rather than the APA, confers jurisdiction on federal courts to review agency action").

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Waterkeeper Alliance, Inc. v. EPA*, 399 F.3d 486, 498 (2d Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)). Plaintiffs' second and third claims for relief allege, *inter alia*, that EPA's decision not to promulgate regulations for CWIS at existing manufacturing facilities violates the CWA because it was based on cost-benefit considerations, which the Second Circuit has held to be impermissible in section 316(b) rulemaking,[40] and that EPA's cost-benefit analysis itself was arbitrary, because EPA failed to monetize the benefits of the vast majority of the aquatic organisms that would be protected by the regulations it proposed but failed to adopt. Am. Comp. ¶¶ 2, 9, 34, 35, 79, 84, 92-94, 95-97 (citing 5 U.S.C. § 706(2)(C), (A)). These allegations are not frivolous and should not be dismissed on jurisdictional grounds.

## CONCLUSION

EPA's argument that this case belongs in the court of appeals has no support in the law. For the foregoing reasons, EPA's motion to dismiss should be denied it its entirety.

Dated: March 9, 2007                          Respectfully submitted,

_____

Charles C. Caldart (*pro hac vice*)          Reed W. Super (RS 3615)
National Environmental Law Center            Edward Lloyd (*pro hac vice*)
3240 Eastlake Ave East, Suite 100            Morningside Heights Legal Services, Inc.
Seattle, Washington 98102                    Environmental Law Clinic, Columbia Univ. School of Law
                                             435 West 116th Street
                                             New York, New York 10027
Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200               P. Kent Correll (PC 2609)
San Francisco, California  94133             300 Park Avenue, 17th Floor
                                             New York, New York 10022

---

[40] *Riverkeeper II*, 475 F.3d at 100 ("Cost-benefit analysis ... is not permitted under the statute ..."); *see also id.* at 98-101, 114.

25