UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RIVERKEEPER, INC., *et al..*,

        Plaintiffs,

          v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

        Defendants.

Case No. 06 Civ. 12987 (PKC)
ECF case


**INTERVENOR'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**


Russell S. Frye (RF8965) (*pro hac
vice*)
FryeLaw PLLC
3050 K Street, N.W.  Suite 400
Washington, DC  20007
Phone: (202) 572-8267
Fax: (866) 850-5198
*Attorney for Intervenor
Cooling Water Intake Structure
Coalition*

**TABLE OF CONTENTS**

**I.  INTRODUCTION** ..............................ERROR! BOOKMARK NOT DEFINED.

**II.  THE COURTS OF APPEALS HAVE JURISDICTION TO REVIEW EPA'S REGULATION OF INTAKE STRUCTURES UNDER CLEAN WATER ACT SECTION 316(B).** ............................................................2

**III.  EPA'S CASE-BY-CASE REGULATION OF CERTAIN INTAKE STRUCTURES IS CONSISTENT WITH THE STATUTE AND RELEVANT CASE LAW.** .........................................................4

**IV.  CONCLUSION** .......................................................................9

Intervenor the Cooling Water Intake Structure Coalition ("the Coalition") states as follows in reply to the Plaintiff's Memorandum in Opposition to Defendants' motion to dismiss the amended complaint for lack of subject-matter jurisdiction. The Coalition also supports for the most part the arguments in Defendants' ("EPA's") Reply Memorandum and EPA's Memorandum of Law in Support of its motion to dismiss.

## I.  INTRODUCTION

Regardless of the way they characterize the argument, Plaintiffs Riverkeeper, *et al*. ("Riverkeeper") are not actually arguing that EPA "failed to act" to regulate cooling water intake structures at industrial and smaller electric utility facilities; instead, they base their arguments for district court jurisdiction on an artificial distinction between the way they believe EPA should be regulating such cooling water intake structures (through issuance of detailed, nationally uniform regulations), and the way EPA has chosen to regulate them. It is only from the perspective of its own inaccurate interpretation of what the Clean Water Act requires that Riverkeeper claims that EPA has not taken action, and that its complaint is for failure to act rather than for review of limitations promulgated by EPA. But in fact, the Second Circuit has already rejected the narrow construction of the Clean Water Act Riverkeeper bases its arguments on, in an aspect of *Riverkeeper, Inc. v. EPA*, 358 F.3d 174 (2d Cir. 2004) ("*Riverkeeper I*").

If Riverkeeper's interpretation of CWA sections 505 and 509 were the law, then the courts of appeals would almost never have exclusive jurisdiction to review EPA's approval or promulgation of an effluent limitation or other limitation under section 509(b)(1(E), because the person challenging the limitation could bring an action in a district court to "compel the promulgation of regulations" that were more to its liking. *Cf*. Opp. Memo at 11. Where, as here, the plaintiffs believe EPA's regulation of cooling water intake structures under CWA sections

301 and 316(b) is inadequate, their sole remedy is to file a petition for review in one of the

circuit courts of appeals.[1]

## II.  THE COURTS OF APPEALS HAVE JURISDICTION TO REVIEW EPA'S REGULATION OF INTAKE STRUCTURES UNDER CLEAN WATER ACT SECTION 316(b).

Under CWA section 509(b)(1)(E), 33 U.S.C. § 1369(b)(1)(E), any challenge to an EPA

action "in approving or promulgating an effluent limitation or other limitation" for point sources

under CWA sections 301 or 306 can be brought solely in the courts of appeals and, generally,

only within 120 days after the action.  CWA section 509(b), 33 U.S.C. § 1369(b).  Because

CWA section 316(b) is to be implemented in conjunction with limitations imposed under

sections 301 and 306, Riverkeeper has previously challenged EPA regulations establishing

requirements for cooling water intake structures at new facilities (the "Phase I" regulations) and

at larger electric utility generating stations that account for over 90 percent of cooling water

withdrawals (the "Phase II" regulations) in the court of appeals, and indeed there was no dispute

that the court of appeals has exclusive jurisdiction over those challenges.[2]  *See Riverkeeper I*,

358 F.3d at 183-84; *Riverkeeper, Inc. v. EPA*, 475 F.3d 83, 95 (2d Cir. 2007) ("*Riverkeeper II*").

---

[1]  Riverkeeper refers frequently to limitations under CWA section 306.  Opp. Memo at 4, 9, 17.  To be clear, this case relates solely to implementation of section 316(b) in conjunction with existing source effluent limitations under section 301.  EPA promulgated regulations for all cooling water intake structures at new sources covered by section 306—including precisely the type of best professional judgment limitations for certain cooling water intake structures that Riverkeeper now claims are inadequate for regulation of existing facilities—in 2001, and those regulations were reviewed and largely upheld by the Second Circuit on petitions for review by Riverkeeper and others.  *See* 66 Fed. Reg. 65,255; 40 C.F.R. § 125.80(c); *Riverkeeper I*, 358 F.3d at 203; *see also* pp. 5-9, *supra*.

[2] Riverkeeper inaccurately implies that the environmental impact of cooling water intake structures at the industrial facilities grouped in "Phase III" is "staggering."  Opp. Memo at 3.  The passage from *Riverkeeper I* that Riverkeeper cites actually references impacts of withdrawals of large volumes of water at large power plants, rather than intake structures at other facilities, which collectively make only a small portion of cooling water withdrawals.  In fact, EPA has concluded that Phase III facilities account for only about 7 percent of existing cooling water withdrawals, and most of the benefits of regulating cooling water intake structures have already been obtained through promulgation of the Phase II rules covering large utilities.  *See* 71 Fed. Reg. 35,006, 35,017-18 (2006).

Indeed, Riverkeeper initially sought review of EPA's action with respect to cooling water intake structures at industrial facilities and smaller electric utility generating stations (the "Phase III" facilities) in the court of appeals as well, and only after its petitions for review were randomly assigned to the Fifth Circuit did Riverkeeper begin to claim that its critiques of EPA's regulation of cooling water intake structures at Phase III facilities were not subject to exclusive court of appeals jurisdiction under CWA section 509(b)(1)(E).[3]

Riverkeeper's theory is that its challenge to EPA's regulation of cooling water intake structures at Phase III facilities is different, because it is challenging EPA's failure to regulate Phase III facilities, rather than challenging regulations EPA has issued. Opp. Memo at 9-11. But that simply misstates the facts. Riverkeeper's challenge is to the form of EPA's regulation of Phase III facilities under CWA section 316(b). Riverkeeper's Memorandum in Opposition is filled with semantics intended to obfuscate the true nature of its claims. Thus, it speaks of EPA's decision not to promulgate "*substantive* regulations" and "EPA's continuing failure to promulgate *the subject* regulations," Opp. Memo at 1 (emphasis added), or EPA's failure to "perform the nondiscretionary duty *of promulgating national BTA regulations* for existing manufacturing facilities," Opp. Memo at 21 (emphasis added), and it objects to EPA's regulation

---

[3]  Riverkeeper's petition for review of the Phase III rulemaking filed in the Second Circuit recited CWA section 509(b)(1) as the basis for jurisdiction, as did its Agency Appeal Pre-Argument Statement filed with the Second Circuit. By order of the Judicial Panel on Multi-District Litigation dated August 7, 2006, Riverkeeper's petitions for review and others were consolidated in the Fifth Circuit, as *ConocoPhillips, et al. v. EPA*, No. 06-60662. Three days later, Riverkeeper sent EPA a 60-day notice of intent to sue, a prerequisite for bringing an action in district court under CWA section 505. Soundkeeper et al., represented by the same counsel as Riverkeeper was in its Second Circuit petition, subsequently filed an additional petition for review in the Fifth Circuit dated October 26, 2006, again listing CWA section 509(b)(1) as the basis for jurisdiction.  Although Riverkeeper, *et al.* filed a motion to transfer the Fifth Circuit consolidated petitions for review to the Second Circuit, they did so without arguing to the Fifth Circuit that the courts of appeals lack jurisdiction to hear their challenge to the Phase III rulemaking. *Cf. Pan American World Airways Inc. v. Civil Aeronautics Board*, 380 F.2d 770 (2d Cir. 1967) (one of the first things a court should consider in deciding a motion to transfer is whether the transferee court would have jurisdiction). By order dated March 22, 2007, the Fifth Circuit denied Riverkeeper's motion to transfer.

of Phase III facilities as "not…a *present* 'promulgation,'" Opp. Memo at 17 (emphasis added).

The translation is: Riverkeeper cannot deny that EPA is regulating cooling water intake

structures at Phase III facilities, it just thinks EPA should do so in a different manner.

### III.   EPA'S CASE-BY-CASE REGULATION OF CERTAIN INTAKE STRUCTURES IS CONSISTENT WITH THE STATUTE AND RELEVANT CASE LAW.

As the Second Circuit noted in *Riverkeeper I,* EPA has long required that discharge

permits imposing effluent limitations on industrial sources under CWA section 301 include

requirements, imposed on a case-by-case, Best Professional Judgment ("BPJ") basis, that

associated cooling water intake structures use the best technology available for minimizing

adverse environmental impact.  358 F.3d at 181-82, 202-203.  EPA reinforced this in a

memorandum issued by Michael Cook on December 28, 2000 (annexed as Exhibit 1 to the

declaration of Russell S. Frye, dated March 28, 2007 ("Frye Decl.")).  This approach was further

memorialized in regulations EPA published in 2004, 69 Fed. Reg. 41,683.  Although described

as regulating "Phase II" facilities, i.e., electric generating stations that withdraw 50 million

gallons per day or more of cooling water (*see* 40 C.F.R. § 125.91 (defining Phase II facilities)),

that rulemaking also formalized EPA's regulation of cooling water intake structures at other

facilities subject to effluent limitations under CWA section 301:  It adopted 40 C.F.R. §

125.90(b), which provides that "[e]xisting facilities that are not subject to requirements under"

40 C.F.R. pt. 125 subpart J, Requirements Applicable to Cooling Water Intake Structures for

Phase II Existing Facilities Under Section 316(b) of the Act, or another subpart "must meet

requirements under section 316(b) of the CWA determined by the Director on a case-by-case,

best professional judgment (BPJ) basis."  In other words, "Phase III facilities," which are all

those not covered by the standards for large utilities in subpart J or the standards for new

facilities in 40 C.F.R. pt. 125 subpart I, are subject to BPJ limitations implementing the section

316(b) requirement to utilize the Best Technology Available for minimizing adverse

environmental impact.[4]  Riverkeeper did not challenge this regulation providing for BPJ

requirements for existing facilities. *See Riverkeeper II*, 475 F.3d 83.[5]

Nothing in section 316(b) compels its implementation through the kind of uniform

nationwide regulations Riverkeeper envisions.  Limitations implementing section 316(b) on a

case-by-case, BPJ basis are no less "effluent limitations or other limitations" reviewable under

CWA section 509(b)(1)(E) than are limitations imposed on a more uniform basis.[6]  The language

from *Riverkeeper II* cited in Riverkeeper's Memorandum in Opposition says nothing to the

contrary.  Cf. Opp. Memo at 4.  More importantly, the *Riverkeeper I* decision is directly contrary

to Riverkeeper's view of section 316(b).

In *Riverkeeper I*, industry groups challenged a provision of the Phase I rules that

explicitly required case-by-case, BPJ limitations for cooling water intake structures at those new

facilities that are not covered by uniform national requirements imposed in 40 C.F.R. pt. 125

subpt. I because they are below the size threshold for applicability of those requirements. *See* 40

C.F.R. § 125.80(c) ("New facilities that do not meet the threshold requirements regarding

---

[4]  Existing facilities subject to the subpart J regulations are essentially any facilities that do not constitute "new facilities" covered by the subpart I regulations.  *See* 40 C.F.R. § 125.91 and § 125.93 (definition of "existing facility").

[5] EPA has brought to the Court's attention a March 20, 2007 memorandum from the EPA Assistant Administrator for Water, indicating that, because numerous provisions of the Phase II regulations were remanded by the Second Circuit in *Riverkeeper II*, EPA intends to suspend the Phase II regulations pending further rulemaking.  EPA Reply Memo n.8; *see* Frye Decl. Exhibit 2.  This EPA memorandum does not specifically state that the portion of that rulemaking imposing BPJ requirements for facilities other than those covered by Phase I and Phase II requirements would be suspended, as well, and the Coalition has asked EPA to clarify that it does not intend to suspend 40 C.F.R. § 125.90(b).  *See* Frye Decl. Exhibit 3.  In any event, EPA has not yet promulgated a suspension of the Phase II rule, and, even if it had and if EPA had included 40 C.F.R. § 125.90(b) in the suspension, EPA has clearly stated in the preamble to the Phase II rule that it intends to continue to regulate Phase III facilities on a case-by-case, BPJ basis.

[6] Even effluent limitations under CWA section 301 need not be, and often are not, effectuated through uniform national effluent limitations guidelines.  *See*, *e.g*., *Waterkeeper Alliance, Inc. v. U.S. EPA*, 399 F.3d 486, 512-15 (2d Cir. 2005); *Consolidation Coal Co. v. Costle*, 604 F.2d 239 (4th Cir. 1979).

amount of water withdrawn or percentage of water withdrawn for cooling water purposes in Sec.

125.81(a) must meet requirements determined on a case-by-case, best professional judgement

(BPJ) basis"). The challenged provision used the same approach EPA had been following prior

to that time and the same approach that EPA codified for existing facilities in 40 C.F.R. §

125.90(b). The industry petitioners argued that 40 C.F.R. § 125.80(c) was inconsistent with

CWA section 316(b) because the requirements it imposed on cooling water intake structures at

smaller new facilities were not uniform nationwide standards. The Second Circuit squarely

rejected the notion that CWA section 316(b) has to be implemented through uniform national

standards:

> We see no textual bar in sections 306 or 316(b) to regulating below-
> threshold structures on a case-by-case basis. Section 316(b) merely directs the
> EPA to require every cooling water intake structure subject to regulation under
> section 306 (which below-threshold structures indisputably are) to reflect the
> "best technology available." It does not compel the EPA to regulate either by one
> overarching regulation, or based on categories of sources (as does section 306), or
> on a case-by-case basis (which, incidentally, was the tack the EPA took in its first
> crack at regulations pursuant to section 316(b), *see Appalachian Power Co. v.
> Train*, 566 F.2d 451, 454-55 & n. 4 (4th Cir. 1977))....
>
> Although we recognize that Congress envisioned uniform regulations
> when it amended the Clean Water Act, other courts have recognized, as Ralph
> Waldo Emerson did, that a foolish consistency is the hobgoblin of small minds.
> The Clean Water Act does not forbid the EPA from addressing certain
> environmental problems on a case-by-case basis where categorical regulation is
> not technologically feasible, *see National Wildlife Federation*, 286 F.3d at 566-67
> (upholding the EPA's decision to regulate color discharges on a case-by-case
> basis), or when it does not violate the statute's language and is otherwise
> consistent with Congress's overriding goal of improving the quality of the
> Nation's waters, *see Natural Res. Def. Counsel [sic] v. EPA*, 859 F.2d 156, 201-
> 02 (D.C. Cir. 1988) (upholding the continued enforcement of best professional
> judgment permit limits established prior to the promulgation of categorical
> effluent limitations).... [W]here the EPA is justified in not regulating uniformly,
> we see no reason why the EPA should have to avoid all regulation. Given a
> choice between not regulating below-threshold structures because of technical
> impracticalities and regulating them on a case-by-case basis, we think the EPA
> reasonably chose the latter course.

*Riverkeeper I*, 358 F.3d at 203.

This decision supports the granting of EPA's Motion to Dismiss in two ways:  First, it is contrary to Riverkeeper's insistence that only uniform national standards constitute the sort of "substantive regulations" under CWA section 316(b) that are reviewable in the courts of appeals under CWA section 509(b)(1)(E).  *Cf.* Opp. Memo at 14, 16-17.  Secondly, it rejects Riverkeeper's assertion that case-by-case determinations cannot be used to fulfill an EPA duty to implement CWA section 316(b).  *Cf.* Opp. Memo at 22-24.

First, since "Section 316(b) merely directs the EPA to require every cooling water intake structure subject to regulation under section 306…to reflect the 'best technology available'" and it "does not compel the EPA to regulate either by one overarching regulation, or based on categories of sources," *Riverkeeper I*, 358 F.3d at 203, court of appeals jurisdiction under CWA section 509(b)(1) applies because EPA has in fact regulated Phase III facilities under CWA section 316(b).  Riverkeeper's arguments that EPA should not have chosen to regulate Phase III facilities on a BPJ basis are therefore arguments about the form of effluent limitations or other limitations that EPA is imposing under section 316(b), not that EPA has failed to act under section 316(b).[7]

In that regard, it is also significant that the Second Circuit has already reviewed, under

---

[7]  Riverkeeper's response to the clear ramifications of *Riverkeeper I* is basically to ignore the parts of that decision inconsistent with its claims.  *Compare*, *e.g.*, *Riverkeeper I*, 358 F.3d at 203 (section 316(b) "does not compel the EPA to regulate either by one overarching regulation, or based on categories of sources (as does section 306), or on a case-by-case basis") *with* Opp. Memo at 22 ("EPA's contention that Section 316(b) neither mandates that EPA promulgate national categorical BTA standards nor directs EPA to take any other approach in implementing the BTA standard…is simply incorrect." (internal quotation marks omitted).  Riverkeeper also seizes on the *Riverkeeper I* Court's citation to *Nat'l Wildlife Federation v. EPA*, 286 F.3d 554 (D.C. Cir. 2002), which discusses case-by-case limitations where categorical regulation is not technically feasible, Opp. Memo at 23, as if the *Riverkeeper I* decision accepted case-by-case regulation to implement Section 316(b) only in cases of technological infeasibility.  Even a cursory review of the language of *Riverkeeper I* quoted in the text above shows that to be untrue.  (And in any event, even under that selective interpretation of *Riverkeeper I*, the question of whether uniform regulation of the vast variety of sources in the Phase III grouping was "technically feasible" would be for the court of appeals, not the district court, to decide.)

CWA section 509(b)(1), a very similar attack on EPA regulation of cooling water intake

structures through BPJ limitations, in *Riverkeeper I*.  If the court of appeals was the proper court

for review of industry's claim in the Phase I litigation that EPA's case-by-case approach for

small facilities was not authorized by section 316(b), then it should also be the proper court for

Riverkeeper's claim that EPA was obligated to issue uniform national regulations for Phase III

facilities rather than relying on case-by-case standards..

     The cases Riverkeeper cites where courts have held that the CWA section 509(b)(1) does

not give the courts of appeals jurisdiction to review EPA's failure to issue effluent limitations

were all in situations, unlike here, where EPA had not acted at all.[8]   *See* Opp. Memo at 9-10, 13.

In contrast, in *Consolidation Coal Co. v. Costle*, 604 F.2d 239 (4th Cir. 1979) the court

reviewed, under CWA section 509(b)(1)(E), EPA's decision not to include a segment of coal

mines (those in western states) in nationwide effluent limitations guidelines for the discharge of

suspended solids from coal mines, choosing instead to impose effluent limitations on western

coal mines based on Best Practicable Control Technology established on a case-by-case basis.

Similar to Riverkeeper's claims here, Opp. Memo at 4, 22-24, the petitioners in *Consolidation*

*Coal* claimed that EPA's case-by-case approach to limitations for mines in western states was

contrary to the CWA "requirement of uniformity in effluent limitations," 604 F.2d at 246.  The

Fourth Circuit rejected that contention.

---

[8] Riverkeeper's reliance on *Am. Paper Inst. v. EPA*, 882 F.2d 287 (7th Cir. 1989) is a good example.  *Cf.*
Opp. Memo at 13, 17.  In that case, industry sought judicial review of a statement, issued by an EPA
regional office, about how certain permit limitations should be written.  That statement was not binding
on permit writers, not contained in any regulation, and not published in the Federal Register.  In fact, the
Seventh Circuit described the challenged policy statement as not being a final agency action at all (and
therefore not reviewable in any court).  882 F.2d at 289 ("Until the EPA puts polluters under the gun,
compelling them to do something they would rather not, the 'final' agency action lies ahead." *Id.*
(citations, holding various actions not to be "final agency action" under the Administrative Procedure Act,
omitted)).   Riverkeeper cannot simultaneously claim EPA has not acted to impose any limitations on
intake structures at Phase III facilities and also claim that EPA has taken binding final agency action that
triggers jurisdiction under the APA.

Secondly, *Riverkeeper I* clearly allowed EPA to make site-specific determinations of whether a facility has implemented effective measures for minimizing adverse environmental impact. *See Riverkeeper I,* 358 F.3d at 182-83. Riverkeeper claims that EPA's regulation of Phase III facilities on a BPJ basis cannot constitute an action promulgating an effluent limitation or other limitation under section 316(b) because Phase III facilities will not be subject to uniform national standards, but the *Riverkeeper I* rejected just such an assertion in approving "Track II" of the section 316(b) regulations for new facilities. Under the Track II portion of the Phase I rules, EPA does not impose any specific technology requirements, but rather relies on the permit writer's review of a facility's demonstration of the effectiveness of its measures for minimizing adverse environmental impact. *See Riverkeeper I*, 358 F.3d at 182-83. The Court rejected Riverkeeper's claim that Track II is inconsistent with section 316(b) because, Riverkeeper asserted, section 316(b) requires standards for cooling water intake structures that are more nationally uniform. *Id.* at 187, 191 (rejecting environmental petitioners' claim that, because the Track II approach "requires a demonstration study, Track II involves precisely the sort of site-specific, case-by-case determination that Congress moved away from in the 1972 amendments when it chose a national, technology-based standards regime." *Id.* at 187.).

## IV.  CONCLUSION

Thus, it should be clear from the discussion above that Riverkeeper's claims actually are objections to the way EPA is implementing CWA section 316(b) for facilities not covered by the Phase I or Phase II facility standards, not that EPA unlawfully failed to act. Riverkeeper's arguments against court of appeals jurisdiction (which is exclusive[9]) and in favor of district court

---

[9]  *See*, *e.g.*, *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446, 447 (4th Cir. 1977) (upholding district court's dismissal for lack of jurisdiction, because review of limitations under CWA section 316(b) lies in the courts of appeals).

jurisdiction are all based on Riverkeeper's inaccurate characterization of EPA's regulation of

cooling water intake structures at Phase III facilities as a failure to regulate.  That

characterization, in turn, is based on Riverkeeper's inaccurate assertion that CWA section 316(b)

mandates a certain kind of regulation that EPA has not issued, a uniform nationwide set of

requirements.  Nothing Riverkeeper cites in its opposition to EPA's motion to dismiss supports a

conclusion that this sort of dispute over whether EPA's regulation of point sources should have

been more explicitly prescribed should be heard in the district courts.  Accordingly,

Riverkeeper's claims should be dismissed for lack of jurisdiction.[10]

.

Dated: March 28, 2007                                    Respectfully submitted,


                                                         _____/s/_____
                                                         Russell S. Frye (RF8965) (*pro hac vice*)
                                                         FryeLaw PLLC
                                                         3050 K Street, N.W.  Suite 400
                                                         Washington, DC  20007
                                                         Phone: (202) 572-8267
                                                         Fax: (866) 850-5198
                                                         *Attorney for Intervenor*
                                                         *Cooling Water Intake Structure Coalition*

---

[10]  Should the Court decide that it has jurisdiction to consider Riverkeeper's claims under CWA section 505, however, the Cooling Water Intake Structure Coalition wishes to make one observation now in that regard.  During the January 19, 2007 pretrial conference, in response to a question from the Court, Riverkeeper took the position that a decision that the Court has jurisdiction to hear Riverkeeper's claim that EPA failed to complete a non-discretionary duty would effectively resolve that claim in Riverkeeper's favor, as well.  Riverkeeper now apparently has abandoned that position, arguing in its Memorandum in Opposition to EPA's motion to dismiss that a decision that the district courts have subject-matter jurisdiction over its claims does not require resolving any of its claims, but only determining that its claims are not frivolous.  *See*, *e.g*., Opp. Memo at 19-20.  Although the Coalition agrees with EPA that, in assessing whether the specific language of CWA sections 505 or 509 applies to Riverkeeper's claims, the Court needs to determine whether those claims meet the criteria of those CWA sections, rather than just determining whether the claims are frivolous, Riverkeeper should now be estopped from asserting that a decision in its favor on jurisdiction also resolves any of its claims on the merits.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RIVERKEEPER, INC., *et al..*,

        Plaintiffs,

        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

        Defendants.

---

Case No. 06 Civ. 12987 (PKC)
ECF case

## DECLARATION OF RUSSELL S. FRYE

RUSSELL S. FRYE, pursuant to 28 U.S.C. § 1746, declares the following:

1.    I am in an attorney, admitted *pro hac vice*, representing the Cooling Water Intake Structure Coalition as an intervenor in the above-captioned action. I have advised some members of the Cooling Water Intake Structure Coalition about matters related to the Environmental Protection Agency's (EPA's) regulation of cooling water intake structures under section 316(b) of the Clean Water Act for almost 10 years. I make this declaration in support of Intervenors' Reply Memorandum in Support of Defendants' Motion to Dismiss.

2.    Attached hereto as Exhibit 1 is a true and correct copy of a December 28, 2000 memorandum from Michael B. Cook, then Director of EPA's Office of Wastewater Management, discussing imposition of requirements under Clean Water Act section 316(b) on a case-by-case, best professional judgment basis. This memorandum was distributed to me and other members of the public by EPA officials soon after it was issued.

3.   Attached hereto as Exhibit 2 is a true and correct copy of a March 20, 2007 memorandum from Benjamin Grumbles, EPA Assistant Administrator for Water, discussing EPA's response to the Second Circuit's remand earlier this year of portions of EPA regulations for cooling water intake structures at large existing electric generating stations ("Phase II facilities"). EPA makes reference to the substance of this memorandum in EPA's Reply Memorandum in Support of its Motion to Dismiss, at note 8.  This memorandum was distributed to some members of the Cooling Water Intake Structure Coalition by EPA representatives last week.

4.   Attached hereto as Exhibit 3 is a true and correct copy of a letter from me, on behalf of the Cooling Water Intake Structure Coalition, that was delivered to Assistant Administrator Grumbles today, March 28, 2007.  That letter asks Assistant Administrator Grumbles to clarify that his March 20, 2007 memorandum (Exhibit 2 to my declaration) was not intended to indicate an intention to suspend 40 C.F.R. § 125.90(c), which is contained in a subpart of EPA permitting regulations that addresses Phase II facilities, but which itself concerns permitting of cooling water intake structures at facilities not covered by EPA regulations for new sources (Phase I facilities) or for large utility facilities (Phase II facilities).  EPA has not yet responded to this letter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 28, 2007
McLean, Virginia

Russell S. Frye
Phone: (202) 572-8267
Fax: (866) 850-5198
*Attorney for Intervenor*
*Cooling Water Intake Structure Coalition*



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

DEC 28 2000

OFFICE OF
WATER

## MEMORANDUM

SUBJECT:     Implementation of Section 316(b) in National Pollutant Discharge Elimination
System Permits

FROM:         Michael B. Cook, Director
Office of Wastewater Management

TO:             Water Division Directors, Regions I - X
State NPDES Directors


       The purpose of this memorandum is to identify as a priority for the National Pollutant
Discharge Elimination System (NPDES) program the issuance of permits to new or existing major
point sources subject to the requirements of section 316 of the Clean Water Act, and to remind
you of existing guidance applicable to the development of permits for these dischargers. Section
316(b) of the Clean Water Act requires that any standard established pursuant to section 301 or
section 306 of the Act and applicable to a point source "shall require that the location, design,
construction, and capacity of cooling water intake structures reflect the best technology available
for minimizing adverse environmental impact."

       At this time, the U.S. Environmental Protection Agency (EPA) is developing national
regulations to implement section 316(b) of the Clean Water Act. While these regulations are
being developed, we would like to ensure that EPA and State permitting authorities are using
existing guidance and information to inform their best professional judgment in issuing/reissuing
major permits to facilities subject to the requirements of section 316(b). Guidance for Evaluating
the Adverse Impact of Cooling Water Intake Structures on the Aquatic Environment: Section
316(b) (May 1, 1977), a copy of which is attached to this memorandum, continues to be
applicable pending EPA's issuance of final regulations under section 316(b). Two background
papers that EPA prepared in 1994 and 1996 to describe cooling water intake technologies being
used or tested for minimizing adverse environmental impact also contain information that could be
useful to permit writers. (See *Preliminary Regulatory Development, Section 316(b) of the Clean
Water Act, Background Paper Number 3: Cooling Water Intake Technologies* (1994) and *Draft
Supplement to Background Paper Number 3: Cooling Water Intake Technologies* (1996), copies
of which also are attached to this memorandum). Fact sheets from recent 316(b) State and
Regional permits are another source of potentially relevant information.

2

As EPA and States issue new permits or reissue existing NPDES permits to major point sources subject to section 316(b), they should consider the draft 1977 guidance for evaluating adverse impact, the 1994/1996 papers on technologies available for minimizing adverse environmental impact, other relevant information, and apply best professional judgment to determine appropriate section 316(b) requirements. As Regions perform NPDES permit oversight responsibilities of State-issued permits in accordance with NPDES program authorization or State/EPA grant agreements, Regions should ensure that States are using their best professional judgment to properly implement the requirements of 316(b). Regions should encourage States to consult the guidance and technology-evaluations mentioned above when developing section 316(b) permit requirements based on section 316(b). Regions also should ensure that permit fact sheets for EPA- or State-issued major permits document the Region's or State's determination that the location, design, construction and capacity of a facility's cooling water intake structure(s) reflect the best technology available for minimizing adverse environmental impact.

Please note that the draft 1977 guidance and the two background papers do not impose legally binding requirements on EPA, the States, or the regulated community, and may not apply to a particular situation based on the circumstances. EPA and State decision-makers retain the discretion to adopt approaches on a case-by-case basis that differ from applicable guidance where appropriate. Any decisions on a particular facility should be based on the requirements of section 316(b).

In addition, please note that EPA's proposed regulations addressing cooling water intake structures for new facilities (65 FR 4060, August 10, 2000) are "not intended as guidance for determining the best technology available to minimize the adverse environmental impact of cooling water intake structures at new facilities before the Agency promulgates final regulations" based on that proposal. 65 FR at 49064. In the interim, EPA and State permitting authorities should continue to make section 316(b) determinations for new facilities, which may be more or less stringent than the proposal, on a case-by-case basis applying best professional judgment. Id. The August 10, 2000 proposal does not apply at all to existing facilities. Id. Therefore, the proposal is not intended as guidance for making 316(b) determinations for existing facilities.

If you have any questions, please call me at (202) 564-0748, Charles Sutfin, Permits Division Director, at (202) 564-0641, or you may have your staff contact Benita Best-Wong, Chief of the Permits Division's Industrial Branch, at (202) 564-0612. If you have any questions concerning the proposed regulations for cooling water intake structures for new facilities, please contact Tom Wall, Director of the Cooling Water Intake Structure Task Force, at (202) 260-1489.

Attachments

cc:    Regional Permits Branch Chiefs (w/o attachments)
       Geoffrey H. Grubbs, OST (w/o attachments)
       Robbie Savage, ASIWPCA (w/ attachments)

EXHIBIT 2



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460

MAR 20 2007

MEMORANDUM

OFFICE OF
WATER

SUBJECT:   Implementation of the Decision in *Riverkeeper, Inc. v. EPA*, Remanding
the Cooling Water Intake Structures Phase II Regulation

FROM:      Benjamin Grumbles, Assistant Administrator

TO:        Regional Administrators

The purpose of this memorandum is to provide guidance on the status of the
Cooling Water Intake Structures Phase II regulation under section 316(b) of the Clean
Water Act ("Phase II rule" or "Rule"). The Phase II rule set national standards for
cooling water withdrawals by large, existing power producing facilities ("Phase II
facilities"). See 40 C.F.R. Part 125 Subpart J; 69 Fed. Reg. 41576 (July 6, 2004).The
Second U.S. Circuit Court of Appeals recently issued its decision in the litigation over the
Phase II regulation.  See Riverkeeper, Inc., v. EPA, No. 04-6692, (2d Cir. Jan. 25, 2007).

The court's decision remanded several provisions of the Rule on various grounds.
The provisions remanded include:

- EPA's determination of the Best Technology Available under section 316(b);
- The Rule's performance standard ranges;
- The cost-cost and cost-benefit compliance alternatives;
- The Technology Installation and Operation Plan provision;
- The restoration provisions; and
- The "independent supplier" provision.

With so many provisions of the Phase II rule affected by the decision, the rule
should be considered suspended.  I anticipate issuing a Federal Register notice formally
suspending the Rule in the near future.[1]  In the meantime, all permits for Phase II
facilities should include  conditions under section 316(b) of the Clean Water Act
developed on a Best Professional Judgment basis. See 40 C.F.R. § 401.14.

If you have questions regarding the application of section 316(b) at Phase II
facilities, please contact either Janet Goodwin with the Office of Science and Technology
at 202-566-1060 (goodwin.janet@epa.gov) or Deborah Nagle with the Office of
Wastewater Management at 202-564-1185 (nagle.deborah@epa.gov).

---

[1] In the event that the court's decision is overturned prior to publication of the Federal Register notice, then
I will not proceed to effect the suspension; if the court's decision is overturned after publication of the
notice, the Agency will take appropriate action in response.

# FryeLaw PLLC

The Virtual EHS Law Firm™

3050 K St., N.W.
Suite 400
Washington, DC 20007-5108
Phone: 202.572.8267
Fax: 866.850.5198
rfrye@fryelaw.com
www.FryeLaw.com

March 27, 2007                                    By Overnight Delivery

Benjamin Grumbles
Assistant Administrator for Water
U.S. Environmental Protection Agency
Ariel Rios Building
*Mail Code:* 4101M
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

**Re:**    ***Suspension of Phase II Cooling Water Intake Structure Standards***

Dear Mr. Grumbles:

I represent the Cooling Water Intake Structure Coalition (the "Coalition"), an informal group interested in the regulation of cooling water intake structures under Clean Water Act section 316(b).  Coalition members include the American Chemistry Council, the American Forest & Paper Association, the American Iron & Steel Institute, the American Petroleum Institute, General Electric, and the Utility Water Act Group.

I write on behalf of the Coalition to ask you to clarify your March 20, 2007 memorandum on "Implementation of the Decision in *Riverkeeper, Inc. v. EPA*, Remanding the Cooling Water Intake Structures Phase II Regulation."  That memorandum indicates that EPA intends to suspend the "Phase II rule" because numerous provisions of the Phase II rule were remanded by the Second Circuit Court of Appeals in *Riverkeeper, Inc. v. EPA*, No. 04-6692 (Jan. 25, 2007).

Your memorandum describes the "Phase II rule" as setting "national standards for cooling water withdrawals by large, existing power producing facilities ("Phase II facilities")."  The potential confusion comes because your memorandum also refers to 40 C.F.R. Part 125 Subpart J, and there is a portion of 40 C.F.R. Part 125 Subpart J that does not address Phase II facilities and that was

not at issue in nor addressed by the *Riverkeeper, Inc. v. EPA* decision:  40 C.F.R. §
125.90(b).

That section provides that "[e]xisting facilities that are not subject to
requirements under" 40 C.F.R. Part 125 Subpart J or another subpart of Part 125
(such as Subpart I, which covers requirements for intake structures at new ("Phase
I") facilities) "must meet requirements under section 316(b) of the CWA determined
by the Director on a case-by-case, best professional judgment (BPJ) basis." This
provision on its face does not apply to Phase II facilities, and so the Coalition's
understanding of your March 20, 2007 memorandum is that it does not indicate an
intention to suspend 40 C.F.R. § 125.90(b).

Our understanding is also based on the fact that the recent Second Circuit
*Riverkeeper* decision did not address 40 C.F.R. § 125.90(b), and indeed the Second
Circuit specifically approved a similarly worded provision for new sources, 40
C.F.R. § 125.80(c), in *Riverkeeper, Inc. v. EPA*, 358 F.3d 174, 203 (2d Cir. 2004).
Also, suspending the directive in 40 C.F.R. § 125.90(b)—to regulate cooling water
intake structures at facilities other than Phase I and Phase II facilities on a case-by-
case, Best Professional Judgment basis—would be conceptually inconsistent with
EPA's intention, as reflected in your March 20, 2007 memorandum, that Phase II
facilities should be regulated on a case-by-case, Best Professional Judgment basis
while the standards EPA promulgated for Phase II facilities are suspended.

Nevertheless, because your March 20, 2007 memorandum references  40
C.F.R. Part 125 Subpart J generally, in addition to referring to the regulations
affecting Phase II facilities, the Coalition is concerned that your memorandum may
be misinterpreted to indicate an intention to suspend 40 C.F.R. § 125.90(b).  We
urge you to clarify that this is not EPA's intention.

Thank you for your consideration of this request.  If there are any questions,
please contact me at the phone number or email address listed above.

Sincerely,

Russell S. Frye
Counsel for the Cooling Water Intake
Structure Coalition

cc: Jessica O'Donnell, DOJ-ENRD

2