UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIVERKEEPER, INC., *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et ano.*,<br><br>Defendants. | 06 Civ. 12987 (PKC)<br>ECF case |

### PLAINTIFFS' SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Reed W. Super (RS 3615)
Edward Lloyd (*pro hac vice*)
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
Environmental Law Clinic
Columbia University School of Law
435 West 116th Street
New York, New York 10027
Tel: 212-854-3365
Fax: 212-854-3554

Charles C. Caldart (*pro hac vice*)
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, Washington 98102
Tel: 206-568-2853
Fax: 206-568-2858

P. Kent Correll (PC 2609)
Law Office of P. Kent Correll
300 Park Avenue, 17th Floor
New York, New York 10022
Tel: 212-475-3070
Fax: 212-475-2378

Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, California 94133
Tel: 415-622-0086 x306
Fax: 415-622-0016

Counsel for Plaintiffs Riverkeeper, Inc., Natural Resources Defense Council, Waterkeeper Alliance, Inc., Soundkeeper, Inc., Delaware Riverkeeper Network, American Littoral Society, Raritan Baykeeper, Inc., d/b/a NY/NJ Baykeeper, Save the Bay–People for Narragansett Bay, Friends of Casco Bay, Santa Monica Baykeeper, Inc., and Surfrider Foundation

Counsel for Plaintiff Massachusetts Public Interest Research Group, Inc.

Pursuant to this Court's order of April 5, 2007, Plaintiffs submit this surreply memorandum of law to respond to a point raised for the first time in the reply briefs filed on March 28, 2007 by defendant United States Environmental Protection Agency ("EPA") and intervenor Cooling Water Intake Structure Coalition ("CWISC") in support of EPA's motion to dismiss the amended complaint for lack of jurisdiction.

**THIS COURT HAS JURISDICTION OVER PLAINTIFFS' SECOND AND THIRD CLAIMS FOR RELIEF UNDER 28 U.S.C. § 1331 AND THE APA**

In its reply brief, EPA argues that "Plaintiffs' APA [Administrative Procedure Act] claims are foreclosed *even if* their challenge ... is not subject to the exclusive jurisdiction of the Court of Appeals." Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, March 28, 2007 ("EPA Reply"), at 9-10 (emphasis added). EPA bases this assertion on the theory that if EPA's action is not a "limitation" under Clean Water Act ("CWA") section 509(b)(1)(E), 33 U.S.C. § 509(b)(1)(E), then it cannot be "final agency action" reviewable under the APA.[1] *Id.* This attempt to equate these two disparate jurisdictional tests has no basis in logic or the law, and EPA is simply wrong in suggesting that its actions under the CWA are not reviewable under the APA. This Court has jurisdiction over Plaintiffs' Second and Third Claims for Relief because: (1) district court jurisdiction to hear APA claims is distinct from, and substantially broader than, circuit court jurisdiction under CWA section 509(b)(1)(E); and (2) in this case, Plaintiffs are seeking review of an EPA action that meets the APA's "final agency action" test even though it is not "promulgat[ion] of [a] ... limitation" under section 509(b)(1)(E).[2]

---

[1] CWISC makes a similar argument. *See* Intervenor's Reply Memorandum in Support of Defendants' Motion to Dismiss, March 28, 2007 ("CWISC Reply"), at 8 n.8.

[2] The general federal question statute, 28 U.S.C. § 1331, provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

1

A. **Jurisdiction Under the APA Is Broader than Jurisdiction Under CWA Section 509(b)(1)(E), and Distinct from Jurisdiction Under CWA Section 505(a)(2).**

The APA, 5 U.S.C. §§ 701-706, provides a cause of action for judicial review of federal "agency action," which it explicitly defines to include both refusals to act and failures to act. *See* 5 U.S.C. § 551(13) ("agency action" includes "[1] the whole or a part of an agency rule, ... or [2] denial thereof, or [3] failure to act."). Under APA section 706(2)(A) & (C), courts "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations." *Id.* § 706(2)(A) & (C); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

As summarized by the Supreme Court in *Bennett v Spear*, 520 U.S. 154 (1997),

> The APA, by its terms, provides a right to judicial review of *all* "final agency action for which there is no other adequate remedy in a court," [5 U.S.C.] § 704, and *applies universally* "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," [5 U.S.C.] § 701(a).

*Id.* at 175 (emphasis added); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 139-41 (1967) (agency decisions are presumed to be reviewable under the APA unless such review is specifically precluded by another law). "This principle applies to agency inaction as well as agency action." *Farmworker Justice Fund, Inc. v. Brock*, 811 F.2d 613, 622 (D.C. Cir. 1987), *vacated as moot*, 817 F.2d 890 (D.C. Cir. 1987).

---

of the United States," and thereby confers jurisdiction on federal courts to review federal agency action according to the provisions of the APA. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, March 9, 2007 ("Plaintiffs' Opp."), at 24 n.39 (citing *Califano v. Sanders*, 430 U.S. 99, 105 (1977) and *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002) ("In *Califano v. Sanders* ... the Supreme Court settled a long standing controversy by holding that 28 U.S.C. § 1331, rather than the APA, confers jurisdiction on federal courts to review agency action.")). For ease of reference, and consistent with the practice of many courts, Plaintiffs will simply refer to "APA" jurisdiction in this surreply.

2

The two jurisdictional provisions of the Clean Water Act at play in this case are substantially narrower. CWA section 509(b)(1)(E) confers jurisdiction on federal appellate courts to review EPA's "action ... in approving or promulgating any ... limitation under [specified CWA subsections]." 33 U.S.C. § 1369(b)(1)(E). The parameters of section 509 jurisdiction were discussed in Plaintiffs' opposition brief at pages 8-17 and need not be repeated here, except to emphasize that "the six categories of [section 509(b)(1)] do not cover all possible forms of agency action." *Central Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 555 (2d Cir. 1978). CWA section 505(a)(2) confers jurisdiction on federal district courts "where there is alleged a failure of [EPA] to perform act or duty under [the CWA] which is not discretionary." 33 U.S.C. § 1365(a)(2). If, when ultimately reaching the merits, this Court finds that Plaintiffs have an "adequate remedy" under either of these provisions – and, as discussed in their opposition brief, Plaintiffs believe that CWA section 505(a)(2) provides that remedy here – then the APA does not apply. If this Court finds that Plaintiffs have no adequate remedy under the CWA, however, they may seek relief in this Court under the APA unless relief under that statute is specifically disallowed by the CWA.[3]

There is nothing in the Clean Water Act that articulates a congressional intent to

---

[3] Plaintiffs agree with EPA that the first question for this Court is whether CWA section 509(b)(1)(E) applies to this case. Only after determining that section 509 does not apply should this Court proceed to examine the jurisdictional bases for Plaintiffs' First Claim for Relief under CWA section 505(a)(2) and their Second and Third Claims for Relief (the APA claims) under 28 U.S.C. § 1331. This Court's jurisdiction over the section 505(a)(2) claim and the APA claims is coextensive, but this Court would properly decide the merits of the section 505(a)(2) claim before deciding whether to proceed under the APA. If adequate relief is, as Plaintiffs believe, available under section 505, there will be no need to reach the APA claims. *See Natural Resources Defense Council, Inc. ("NRDC") v. Fox*, 93 F. Supp. 2d 531, 560 (S.D.N.Y. 2000) ("[The APA] claim must be dismissed as moot, as it duplicates a claim upon which Plaintiff has already been granted relief under the citizen suit provision of the CWA"), *rev'd in part on other grounds by NRDC v. Muszynski*, 268 F.3d 91 (2d Cir. 2001).

3

"preclude judicial review" in situations in which CWA sections 509 and 505(a)(2) do not apply.[4]

Thus, courts have routinely found jurisdiction under the APA in situations such as this one. For instance, in *Natural Resources Defense Council, Inc. v. Train*, the plaintiffs filed suit in district court to challenge EPA's publication of a list of toxic pollutants under CWA section 307 as well as the omission of certain substances from that list and the basis for that omission. 519 F.2d 287, 288-89 (D.C. Cir. 1975). The D.C. Circuit held that where CWA sections 509 and 505 do not apply, review is available in the district court under the APA:

> [I]f the decision not to list a substance [on a published a list of toxic substances] is within [EPA's] discretion then it is not subject to review under section 505. Absent a determination that listing is non-discretionary, an action like the present one, alleging that the failure of [EPA] to list certain substances is arbitrary, capricious and unlawful, would be consigned to jurisdictional limbo under [the CWA]. Such a determination is not necessary here, however, for we have held that section 505 is not an exclusive basis for jurisdiction in the District Court. *The District Court has jurisdiction under the Administrative Procedure Act to review administrative action not expressly made unreviewable to determine whether there has been an abuse of discretion.* We hold, therefore, that the District Court had jurisdiction in this case under 5 U.S.C. § 706(2)(A).

*Id.* at 290-91 (emphasis added; internal citations omitted); *see also Environmental Def. Fund v.*

---

[4] Neither EPA nor CWISC has suggested that regulation under CWA section 316(b) is "committed to agency discretion by law," and any such argument would conflict with the plain language of that provision. The use in section 316(b) of the term "shall" precludes any determination that the contemplated regulatory action has been left to EPA's unfettered discretion. *See Bennett*, 520 U.S. at 175 ("[A]ny contention that the relevant portion of [the Endangered Species Act] is discretionary would fly in the face of its text, which uses the imperative "shall."). Moreover, this exception to APA review has been construed narrowly, and applies only in those rare instances in which a matter is absolutely and unconditionally committed to an agency's discretion – *i.e.*, where there is truly no law for a reviewing court to apply. *See NRDC v. Fox*, 30 F. Supp. 2d 369, 378 (S.D.N.Y. 1998) (although "[t]he mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely nonreviewable," review of discretionary action under APA is disallowed where "no judicially manageable standards are available for judging how and when an agency should exercise its discretion") (quoting cases). CWA section 316(b) clearly *does* provide an applicable legal standard: "that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." 33 U.S.C. § 1326(b).

4

*EPA*, 598 F.2d 62, 91 (D.C. `Cir. 1978) ("Jurisdiction lies in a district court *whether EPA's alleged duty is mandatory or discretionary.* If the duty is mandatory, section 505 of the [CWA] expressly confers jurisdiction on the district court. If the duty is discretionary, jurisdiction over the claim that EPA abused its discretion lies in district court.") (emphasis added); *Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 266 (5th Cir. 1989) ("[F]ederal district courts, rather than the courts of appeals, have jurisdiction to hear claims that the Administrator has failed to fulfill a mandatory duty [under the CWA] to promulgate regulations *or that the Administrator has abused his discretion* by not promulgating regulations.") (emphasis added). Numerous district courts (including this one) have invoked the APA to review EPA's action or inaction under the CWA in situations in which CWA sections 509 and 505 did not apply.[5]

**B.    The EPA Action Challenged in Plaintiffs' Second and Third Claims for Relief Is "Final Agency Action" under the APA.**

EPA and CWISC assert that Plaintiffs cannot simultaneously argue that EPA took "final agency action" for APA purposes yet failed to promulgate any "limitation" within the meaning of CWA section 509. EPA Reply at 9-10; CWISC Reply at 8 n.8. In support of this proposition, they seize on the surface similarity of the phrase "independent legal effect" in *American Paper Institute v. EPA*, 882 F.2d 287, 289 (7th Cir. 1989) – interpreting CWA section 509(b)(1)(E) to

---

[5] *See, e.g., NRDC v. Fox*, 93 F. Supp. 2d at 537-38, 560 (EPA's "alleged failure to act" is reviewable under the APA unless relief is granted under parallel CWA claim); *Environmental Prot. Info. Ctr. v. Pac. Lumber Co.*, 266 F. Supp. 2d 1101, 1119-20 (N.D. Cal. 2003) (because claim against EPA "does not fall within [CWA] section 509(b)(1)(E) or 509(b)(1)(F) ... the 'no other adequate remedy' requirement of the APA is met, and [plaintiff] may bring its claim under the APA in this court."); *Northwest Envtl. Advocates v. EPA*, 2005 U.S. Dist. LEXIS 5373, *10-11 (N.D. Cal. 2005) ("Judicial review of the EPA's promulgation of 40 C.F.R. § 122.3(a) and the subsequent denial of plaintiffs' petition to repeal the regulation is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)."); *cf. NRDC v. Train*, 396 F. Supp. 1393, 1402 (D.D.C. 1975) (issuing declaratory judgment that EPA "cannot lawfully exempt point sources discharging pollutants from regulation."), *aff'd sub nom. NRDC v. Costle*, 568 F.2d 1369 (D.C. Cir. 1977).

5

require an alteration of the legal *status quo* – and certain language in *Bennett v. Spear* regarding the reviewability of agency action under APA section 706(2)(A). As a closer analysis reveals, however, there is no substantive merit to the attempted comparison.

*Bennett v. Spear* did not involve a challenge to an EPA decision not to promulgate CWA regulations, but rather a challenge to a biological opinion issued by the U.S. Fish and Wildlife Service ("FWS") under the Endangered Species Act. 520 U.S. at 160. The FWS's action in *Bennett* was indisputably an affirmative agency action; the only issue was the *finality* of that action. *See id.* at 177-78. The Court did not address the question of what may constitute "part of an agency rule," "denial thereof," or a "failure to act" under APA section 551(13), much less whether any of these "agency actions" would be reviewable under CWA section 509. In finding the FWS's action to be reviewable, the Court articulated a two-prong finality test: to be "final," an agency action (1) "must mark the 'consummation' of the agency's decisionmaking process [*i.e.*,] it must not be of a merely tentative or interlocutory nature"; and (2) "must be one by which 'rights or obligations have been determined,' *or* from which 'legal consequences will flow.'" 520 U.S. at 177-78 (emphasis added; citations omitted).

The second prong of the test thus has two disjunctive parts, and satisfaction of either part will suffice to allow APA review. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 482-83 (2004) (under second prong of *Bennett* test, action "must *either* determine 'rights or obligations' *or* occasion 'legal consequences'") (emphasis added). As the Ninth Circuit has explained:

> The [*Bennett*] Court did not ... hold that alteration of the federal agency's legal regime was the only way in which an agency action could satisfy the second finality requirement. Courts have consistently interpreted *Bennett* to provide several avenues for meeting the second finality requirement.

*Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 986 (9th Cir. 2006).

The *Bennett* test for finality, unlike section 509(b)(1)(E), does not require EPA to have promulgated requirements that limit permittees or permit writers in order to be reviewable, nor does it require that the regulatory *status quo* be altered by that decision. *Cf. NRDC v. EPA*, No. CV 04-8307-GHK(RCx) (C.D. Cal., Aug. 29, 2005), at 1, 3 (because EPA's decision to continue *status quo* BPJ permitting practices is not a "limitation," review is in district court under CWA or APA).[6] Thus, a finding that EPA has not "promulgated" a "limitation" under section 509(b)(1)(E) is fully consistent with a finding that EPA has taken final "agency action" under the APA.

EPA's June 2006 decision not to promulgate regulations for existing manufacturing facilities satisfies the two-prong *Bennett* test for finality. By proposing regulations, taking public comment on them, and then publishing a decision in the Federal Register with a statement of reasons based on an administrative record (Am. Compl. ¶¶ 7, 71-80, 83, 84), EPA's action meets the first prong because it "mark[s] the 'consummation' of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177-78. It also satisfies the second prong because "legal consequences will flow" from the decision; namely, permits will in fact be issued (and re-issued) to existing manufacturing facilities on a case-by-case basis according to the "best professional judgment" of permit writers, rather than pursuant to national technology-based standards, as they now are for cooling water intake structures at Phase I and Phase II facilities and wastewater discharges from existing manufacturing facilities, and as they would have been had EPA issued the proposed regulations or any other national, technology-based regulations for these facilities. Am. Compl. ¶¶ 46, 47, 55, 56, 62-65, 68. This means that the permits will have different (likely less restrictive, and certainly less uniform) terms than if EPA had promulgated a national categorical

---

[6] This opinion was attached as Exhibit B to the Declaration of Reed W. Super in Opposition to Defendants' Motion to Dismiss the Amended Complaint (March 9, 2007).

7

rule. Am. Compl. ¶¶ 8, 56, 85-88. Indeed, EPA acknowledged the finality of its action in its Federal Register notice: "This *final action* also announces EPA's decision not to promulgate a national rule for existing Phase III facilities." 71 Fed. Reg. 35,006, 35,014/1 (June 16, 2006) (emphasis added).

EPA's decision also represents "agency action" under the APA section 551(13), because it is "the whole or a part of an agency rule, ... or denial thereof, or failure to act." Despite a statutory deadline, EPA has failed for decades to issue section 316(b) regulations for existing manufacturing facilities and, with its June 2006 decision, has explicitly refused to promulgate such regulations despite Plaintiffs' 1993 suit seeking their issuance. Am. Compl. ¶¶ 5, 57-58, 75, 80; *see also Cronin v. Browner*, 898 F. Supp. 1052, 1064 (S.D.N.Y. 1995) (entering consent decree requiring EPA to propose section 316(b) regulations); *Riverkeeper v. Whitman*, 2001 U.S. Dist. LEXIS 21030, at *4 n.3 (explaining consent decree's three rulemaking phases).[7]

Plaintiffs' Second Claim for Relief alleges that EPA's June 2006 decision not to promulgate regulations for existing manufacturing facilities violated the CWA because it was explicitly based on cost-benefit considerations, which the Second Circuit has held to be impermissible in section 316(b) rulemaking. *Riverkeeper, Inc. v. EPA*, 475 F.3d 83, 100 (2d Cir. 2007) ("*Riverkeeper II*") ("Cost-benefit analysis ... is not permitted under the statute ..."); *see also id.* at 98-101, 114; Am. Compl. ¶¶ 2, 9, 34, 35, 84, 92-94. Plaintiffs' Third Claim for Relief

---

[7] In addition to refusals and failures to act, the APA also defines "agency action" to include "part of an agency rule." 5 U.S.C. § 551(13). Thus, even if EPA were correct in characterizing its decision not to promulgate regulations for existing manufacturing facilities as part of the Phase III rule (a point which Plaintiffs dispute, *see* Plaintiffs' Opp. at 6-7), this Court would still have APA jurisdiction, because the APA's definition of a "rule" is also broader than the term "limitation" under CWA section 509(b)(1)(E). *See* 5 U.S.C. § 551(4) (defining a "rule" to include "statement[s] of general or particular applicability and future effect" that merely "*implement*" or "*interpret*" law or policy or that "*describ[e]*" an agency's "practice requirements") (emphasis added).

alleges that EPA's cost-benefit analysis itself, even if it were permissible under section 316(b), was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law because EPA failed to monetize the benefits of the vast majority of the aquatic organisms that would be protected by the regulations it proposed but failed to adopt. Am. Compl. ¶¶ 2, 9, 79, 84, 95-97. These claims are "legally and analytically distinct from ... [Plaintiffs'] CWA claim, [even though] the underlying facts and [P]laintiffs' concerns remain the same." *NRDC v. Fox*, 93 F. Supp. 2d at 534.[8]

## CONCLUSION

EPA and CWISC have misstated the law. There is nothing in the Clean Water Act to indicate that Congress intended to insulate from review all EPA actions not otherwise reviewable under CWA sections 509 and 505, and there is no question that the APA remains a vehicle for review in such situations. There also is no question that EPA's June 2006 decision not to promulgate regulations under CWA section 316(b) for existing manufacturing facilities (and the failure to promulgate that flowed from that decision) represents "final agency action" reviewable under the APA, notwithstanding the absence of any "limitation" reviewable under section 509.

Dated: April 23, 2007

Respectfully submitted,

Reed W. Super (RS 3615)
Edward Lloyd (*pro hac vice*)
Morningside Heights Legal Services, Inc.
Environmental Law Clinic. Columbia Law School
435 West 116th Street
New York, New York 10027

Charles C. Caldart (*pro hac vice*)
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, Washington 98102

Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, California 94133

P. Kent Correll (PC 2609)
300 Park Avenue, 17th Floor
New York, New York 10022

---

[8] Plaintiffs have *not* asserted a claim under the APA's mandamus provision, 5 U.S.C. § 706(1), as this would have been duplicative of their CWA section 505(a)(2) claim.