UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RIVERKEEPER, INC., *et al.*

Plaintiffs,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et ano.*,

Defendants.

06 Civ. 12987 (PKC)
ECF case

## DECLARATION OF REED W. SUPER IN OPPOSITION
## TO DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS

I, Reed W. Super, do hereby declare:

1.      I am a Senior Clinical Staff Attorney for Morningside Heights Legal Services,
Inc. and the lead attorney for the plaintiffs[1] in this case. I make this declaration in opposition to
the motion of defendants U.S. Environmental Protection Agency and its Administrator Stephen
L. Johnson (collectively, "EPA") for a Stay of Proceedings.

2.      On October 31, 2007, Plaintiffs in this case filed a Motion of Riverkeeper, et al.,
for a Partial Stay Of Proceedings, in the case of *Conoco Phillips Co. et al. v. U.S.E.P.A.*, United
States Circuit Court of Appeals for the Fifth Circuit, Dkt. No. 06-60662. A true and correct copy
of said motion is attached hereto as Exhibit A.

---

[1]  Riverkeeper, Inc., Natural Resources Defense Council, Waterkeeper Alliance, Inc.,
Soundkeeper, Inc., Delaware Riverkeeper Network, American Littoral Society, Raritan
Baykeeper, Inc., d/b/a NY/NJ Baykeeper, Save the Bay—People for Narragansett Bay, Friends
of Casco Bay, Santa Monica Baykeeper, Inc., Surfrider Foundation, and Environment
Massachusetts.

1

3.      On July 9, 2004, EPA promulgated its Phase II rule as the second phase of its three-part rulemaking to implement CWA section 316(b).  Twenty-three environmental and industrial parties challenged the Phase II rule in seven different circuits.  The Judicial Panel initially consolidated the petitions in the U.S. Court of Appeals for the Ninth Circuit, which it had selected at random.  Riverkeeper and the other environmental group petitioners in that case filed a motion to transfer the consolidated Phase II petitions to the U.S. Court of Appeals for the Second Circuit under 28 U.S.C. 2112(a).  On December 14, 2004, the Ninth Circuit granted the motion and transferred the consolidated petitions to the Second Circuit "[i]n the interest of justice" pursuant to 28 U.S.C. § 2112(a)(5).  A true and correct copy of the Ninth Circuit's transfer order in the Phase II litigation is attached hereto as Exhibit B.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed this 31st day of October, 2007, in New York, New York.

_____
REED W. SUPER



A

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

CONOCOPHILLIPS COMPANY and
ANADARKO PETROLEUM
CORPORATION,

       *Petitioners*,

   v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

       *Respondent*.

Docket No. 06-60662
(and consolidated cases)

## MOTION OF RIVERKEEPER, *ET AL.*, FOR A
## PARTIAL STAY OF PROCEEDINGS

## CERTIFICATE OF INTERESTED PERSONS

ConocoPhillips Company and Anadarko Petroleum Corporation, *Petitioners,*
v. United States Environmental Protection Agency, *Respondent,*  No. 06-60662
(and consolidated cases)

The undersigned counsel of record certifies that the following listed private (non-governmental persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### Environmental Petitioners
Riverkeeper, Inc.
Natural Resources Defense Council
Waterkeeper Alliance, Inc.
Soundkeeper, Inc.
Delaware Riverkeeper Network
American Littoral Society
Raritan Baykeeper, Inc. d/b/a NY/NJ Baykeeper
Save the Bay—People for Narragansett Bay
Friends of Casco Bay
Santa Monica Baykeeper, Inc.
Surfrider Foundation
Environment Massachusetts

### Counsel for Environmental Petitioners
Reed W. Super, Morningside Heights Legal Services, Inc.
Edward Lloyd Morningside Heights Legal Services, Inc.
P. Kent Correll, Law Office of P. Kent Correll
Charles C. Caldart, National Environmental Law Center

### Industry Petitioners
ConocoPhillips Company
Anadarko Petroleum Corporation

### Counsel for Industry Petitioners

Jackson Battle, Brown McCarroll, LLP
Kurt Howard Kuhn Brown McCarroll, LLP

i

**Intervenors**
American Petroleum Institute
Cooling Water Intake Structure Coalition
American Chemistry Council
American Forest & Paper Association
American Iron & Steel Institute
Utility Water Act Group
General Electric Company

**Counsel for Intervenors**
David Ballard, Barnes & Thornburg LLP
Fredric P. Andes, Barnes & Thornburg LLP
Russell S. Frye, Fryelaw, PLLC

***Amicus Curiae***
Entergy Corporation

**Counsel for *Amicus Curiae***
Chuck D. Barlow, Entergy Services Inc.
Elise N. Zoli, Goodwin Procter LLP
Kevin P. Martin, Goodwin Procter LLP
William J. Trach, Goodwin Procter LLP

Pursuant to Fed. R. App. Proc. 26.1(a), the undersigned counsel states that the
Environmental Petitioners (see list above) are all not-for-profit corporations that do
not have parent corporations and have not issued any stock.

Dated: October 31, 2007

Reed W. Super
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
Environmental Law Clinic
Columbia University School of Law
435 West 116th Street
New York, New York  10027
212.854.3365
212.854.3554 (fax)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 2

    District Court Enters Consent Decree Requiring Three-Phase
    Rulemaking ................................................................................................ 2

    Judicial Review of the Phase I Regulations in Circuit Court ........................ 3

    Judicial Review of the Phase II Regulations in Circuit Court ...................... 3

    EPA Decides Not to Issue Regulations for Phase III Existing
    Facilities .................................................................................................... 4

    Environmental Petitioners File Suit in Circuit Court and District
    Court.......................................................................................................... 4

    On EPA's Motion, the District Court Finds it Has Jurisdiction ................... 7

ARGUMENT .................................................................................................... 9

I.    THIS COURT SHOULD GRANT A STAY IN LIGHT OF
    THE JURISDICTIONAL DECISION OF THE DISTRICT
    COURT, WHICH IS NOW THE LAW OF THE CASE. .......................... 10

II.    IN THE ALTERNATIVE, THIS COURT SHOULD STAY
    PROCEEDINGS RELATING TO MOVANTS' PETITIONS
    IN ITS EQUITABLE DISCRETION. ....................................................... 14

III.    THERE IS NO "FIRST-FILED" RULE WHERE
    JURISDICTION IS EXCLUSIVE............................................................ 17

CONCLUSION ................................................................................................ 20

## INTRODUCTION

Riverkeeper, Inc. and all of the other petitioners in docket nos. 06-60772, 06-60819, 06-60942, and 06-61033 (collectively, "Environmental Petitioners" or "Movants")[1] hereby move this Court to stay their four petitions pending appeal of a recent jurisdictional ruling by the U.S. District Court for the Southern District of New York ("the District Court") in a companion case involving the same issues – advanced by the same plaintiffs against the same agency respondent – that are before this Court. Ruling on a motion filed by the respondent, U.S. Environmental Protection Agency ("EPA"), the District Court found that it had jurisdiction over Environmental Petitioners' claims, and certified the jurisdictional question for interlocutory appeal to the U.S. Court of Appeals for the Second Circuit. Movants respectfully submit that staying their petitions in this Court until there is a final jurisdictional ruling in the companion case is appropriate in order to eliminate the possibility of two federal courts issuing conflicting jurisdictional decisions wherein *both* courts find they have *exclusive* jurisdiction over the same claims.

Movants' petitions are presently consolidated with a petition filed by ConocoPhillips Company and Anadarko Petroleum Corporation (collectively, "Conoco") in docket no. 06-60662. The District Court's jurisdictional analysis and ruling do *not* apply to the claims raised in Conoco's petition. Accordingly, Movants do not ask this Court to stay proceedings relating to that petition.[2]

---

[1] The Environmental Petitioners are listed in the certificate of interested persons.

[2] Movants have contacted the other parties, EPA, Conoco, and the Intervenors. All of them stated that they will file opposition to this motion.

1

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The five petitions consolidated in this Court challenge EPA's regulation of cooling water intake structures ("CWIS") under section 316(b) of the federal Clean Water Act ("CWA").[3]  While the instant case concerns EPA's actions with respect to "Phase III" facilities, a brief recount of the history of CWIS regulation will help to elucidate the jurisdictional issues presently at play.

### District Court Enters Consent Decree Requiring Three-Phase Rulemaking

In 1972, Congress directed EPA to promulgate regulations requiring that CWIS employ the "best technology available" to minimize environmental harm.[4] In 1993, after prolonged regulatory inaction, Riverkeeper, Inc. and others sued EPA in the U.S. District Court for the Southern District of New York to compel issuance of such regulations.[5]  That case was brought under CWA section 505(a)(2), 33 U.S.C. § 1365(a)(2), which vests district courts with exclusive jurisdiction "where there is alleged a failure of [EPA] to perform any act or duty under [the CWA] which is not discretionary."  In 1995, the district court entered a consent decree requiring EPA to take final regulatory action by August 13, 2001.[6]

---

[3] *See* 33 U.S.C. § 1326(b).  CWIS are structures used by industrial facilities to withdraw water from natural waterbodies for the cooling of industrial processes.

[4] *Id.*  CWIS "have enormous environmental impacts:  the withdrawal of large volumes of water to cool power plant turbines kills billions of fish and destabilizes wildlife populations." *Riverkeeper, Inc. v. EPA*, 358 F.3d 174, 181 (2d Cir. 2004).

[5] EPA did issue a CWIS regulation in 1976, but it was remanded on procedural grounds, subsequently withdrawn, and never re-promulgated. *See Appalachian Power Co. v. Train,* 566 F.2d 451, 458-59 (4th Cir. 1977); 44 Fed. Reg. 32,956 (June 7, 1979).

[6] *See Cronin v. Browner,* 898 F. Supp. 1052, 1061 (S.D.N.Y. 1995); Declaration of Reed W. Super in Support of Motion for a Partial Stay of Proceedings ("Super Decl.") at ¶ 2.

In 2000, after EPA notified the district court that it could not complete the rulemaking on time, the court allowed EPA to issue the regulation in three phases.[7]

***Judicial Review of the Phase I Regulations in Circuit Court***

On December 18, 2001, pursuant to the amended consent decree, EPA promulgated its "Phase I" regulations, which established nationwide categorical standards applicable to CWIS at all new facilities except for offshore and coastal oil and gas facilities.  66 Fed. Reg. 65,256 (Dec. 18, 2001); 40 C.F.R. §§ 125.80 *et seq.*  Review of EPA's "promulgation" of a "limitation" under the CWA may be had *exclusively* in the courts of appeal pursuant to section 509(b)(1)(E), 33 U.S.C. § 1369(b)(1)(E), albeit only in any such court embracing a federal judicial district in which any affected person resides or transacts business.  Accordingly, twenty-one environmental and industrial parties filed petitions in six different circuits.  To avoid conflict among courts of *concurrent* jurisdiction, the Judicial Panel on Multidistrict Litigation ("Judicial Panel") consolidated these petitions in the Second Circuit pursuant to the random venue selection process set forth in 28 U.S.C. § 2112(a).  In *Riverkeeper, Inc. v. EPA* ("*Riverkeeper I*"), the Second Circuit upheld the majority of the Phase I Rule, while remanding one aspect as contradictory to congressional intent.  358 F.3d 174, 181 (2d Cir. 2004).

***Judicial Review of the Phase II Regulations in Circuit Court***

On July 9, 2004, EPA promulgated its "Phase II" rule, which established nationwide categorical standards applicable to CWIS at large existing power

---

[7]  *See Cronin v. Browner*, 90 F. Supp. 2d 364, 375 (S.D.N.Y. 2000); *Riverkeeper v. Whitman,* 2001 U.S. Dist. LEXIS 21030, at *4 n.3 (explaining phases); Super Decl., ¶ 3.

plants. 69 Fed. Reg. 41,576 (July 9, 2004); 40 C.F.R. § 125.90 *et seq*. Twenty-three environmental and industrial parties filed petitions in seven different circuits to review this rule, again under the exclusive jurisdictional grant of CWA section 509(b)(1)(E). Although the Judicial Panel initially consolidated these petitions in the Ninth Circuit – again, through random selection process – that court transferred them to the Second Circuit pursuant to 28 U.S.C. § 2112(a)(5). *See* Super Decl., ¶ 4, Exh. A. In *Riverkeeper, Inc. v. EPA* ("*Riverkeeper II*"), the court remanded several fundamental aspects of the rule to EPA, which subsequently suspended the rule. 475 F.3d 83, 130-31 (2d Cir. 2007); 72 Fed. Reg. 37,107 (July 9, 2007).

***EPA Decides Not to Issue Regulations for Phase III Existing Facilities***

On June 16, 2006, EPA took final action with respect to Phase III regulations, in which it made two distinct decisions:  (1) a decision to establish nationwide categorical performance standards for new offshore and coastal oil and gas facilities, for which the agency had deferred consideration from Phase I; and (2) a decision *not* to promulgate regulations for existing manufacturing facilities. 71 Fed. Reg. 35,006 (June 16, 2006). EPA published its decision not to promulgate regulations for manufacturing facilities in the preamble to the regulations it *did* promulgate for new oil and gas facilities, and cited 40 C.F.R § 23.2 (which establishes the date of promulgation for judicial review purposes under CWA section 509) in its Federal Register notice. *Id*. at 35,006.

***Environmental Petitioners File Suit in Circuit Court and District Court***

In late June and early July 2006, within the 10-day period provided by 28 U.S.C. § 2112(a)(1) and 40 C.F.R. § 23.2, Environmental Petitioners filed petitions

4

to review EPA's final Phase III action in the federal appellate courts for their districts. At the same time, Conoco filed a petition in this Court challenging the regulations EPA promulgated for new oil and gas facilities. All these petitions were consolidated in this Court, which the Judicial Panel selected pursuant to section 2112(a)'s random venue selection process.

After filing their petitions, Environmental Petitioners recognized that, because their challenge is to EPA's *failure to promulgate* regulations for existing manufacturing facilities, rather than the *promulgation of limitations* governing those facilities, jurisdiction over their claims may lie in the district courts pursuant to section CWA 505(a)(2) (as was the case with their 1993 suit) and not in the circuit courts under CWA section 509(b)(1)(E) (as was the case with their petitions to review the Phase I and Phase II regulations). Accordingly, on August 10, 2006, Riverkeeper and others notified EPA of their intention to file suit under CWA section 505(a)(2) and the Administrative Procedure Act ("APA") in the Southern District of New York, and on November 7, 2006, they filed their complaint.[8] Such "dual filing" is commonplace where there is any uncertainty as to whether jurisdiction lies under CWA section 505 or CWA section 509; otherwise, a plaintiff risks being left without a judicial forum.[9] The complaint alleged that EPA

---

[8] Notice of Intent to Sue Concerning EPA's Failure to Promulgate National Categorical BTA Standards for Cooling Water Intake Structures at Existing Phase III Facilities, Aug. 10, 2006. 60-day notice letters are required by CWA section 505(b)(2), 33 U.S.C. § 1365(b)(2), as a prerequisite to filing a complaint.

[9] *See, e.g., Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 265 (5th Cir. 1989) ("Petitioner brings this complaint, however, before the wrong forum."). Indeed, in the challenge to EPA's first section 316(b) regulations in 1976, a group of electric utility companies first filed a petition in the Fourth Circuit and later filed suit in district court when they "became convinced that

5

had failed to perform the mandatory duty of promulgating regulations under CWA

section 316(b) for existing manufacturing facilities, and that EPA's decision not to

promulgate such regulations contravened statutory authority and was arbitrary and

capricious. *See* Super Decl., ¶ 5, Exh. B.[10]

On November 14, 2006, one week after Environmental Petitioners filed their

District Court complaint, they wrote to the other parties to suggest a method for

proceeding with the dual litigation. In that letter (which they subsequently

provided to this Court[11]), the Environmental Petitioners explained their belief that

that the District Court has jurisdiction, and that "given the potential jurisdictional

dispute with regard to Environmental Petitioners' claims, [they] believe the proper

course is for the SDNY to determine its own jurisdiction in the first instance."

Nov. 14, 2006 letter at 2-3 (Super Decl., ¶ 6, Exh. C).

The November 14 letter also stated that "assuming *arguendo* that the circuit

courts have original jurisdiction, Environmental Petitioners believe that venue lies

in the Second Circuit under 28 U.S.C. § 2112(a)," and that transferring the Phase

---

jurisdiction properly resided in the district court." *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446, 448 (4th Cir. 1977). Environmental Petitioners apprised this Court of the notice letter, and that "there may be a dispute between the adverse parties as to jurisdiction" on October 26, 2006. Petition for Review of Soundkeeper, Inc., *et al.*, No. 06-61033, Oct. 26, 2006, at ¶ 5.

[10] On January 17, 2007, the complaint was amended to add the remainder of the Environmental Petitioners, who had notified EPA on October 26, 2007 of their intent to sue. Super Decl., ¶ 5, Exh. C. On January 19, 2007, a group of affected Phase III facility operators styling themselves the "Cooling Water Intake Structure Coalition" (hereinafter, the "Industry Coalition"), who had previously intervened in this case on EPA's side, were likewise granted leave to intervene in the District Court action.

[11] *See* Supplemental Declaration of Reed W. Super in Support of Motion to Transfer, February 15, 2007, Exh. F.

6

III petitions to the Second Circuit, as had occurred during the Phase II litigation would be appropriate. *Id.* at 2. On December 21, 2006, Environmental Petitioners filed a motion with this Court to transfer venue on their petitions to the Second Circuit, which this Court denied on March 22, 2007.[12]

### On EPA's Motion, the District Court Finds it Has Jurisdiction

On February 7, 2007, EPA filed with the District Court a motion to dismiss under Fed. R. Civ. Proc. 12(b)(1), arguing that this Court has exclusive jurisdiction over Environmental Petitioners' claims under CWA section 509, and that the District Court lacked jurisdiction under either CWA section 505 or the APA. Over the next two months, the parties submitted extensive briefing regarding the jurisdictional issue raised by EPA's motion, culminating with reply briefs from EPA and the Industry Coalition filed on March 28, 2007.[13]

Two days later, on March 30, 2007, Environmental Petitioners and Conoco filed their opening briefs with this Court. Because the jurisdictional question remained open, Environmental Petitioners included with their brief an argument that this Court lacks jurisdiction. The briefing in this Court has continued, and on October 29, 2007, the petitioners submitted their reply briefs. To the best of Movants' knowledge, no judge of this Court (or its staff) has yet reviewed these briefs to consider either jurisdiction or the merits, nor will the matter be sent to a

---

[12] In that motion, Environmental Petitioners again reminded this Court of the unresolved jurisdictional question. *See* Motion to Transfer, Dec. 21, 2006, at 7 n.9, 9 n.10.

[13] Due to new arguments raised for the first time by EPA and the Industry Coalition in their reply briefs, the District Court permitted Environmental Petitioners to submit a 10-page surreply, which was filed on April 23, 2007.

screening panel until after "final form" briefs are submitted on or about December 3, 2007.[14]

On September 24, 2007, the District Court issued an order denying EPA's motion to dismiss, finding that EPA's June 2006 decision not to promulgate regulations of Phase III existing facilities is not covered by CWA section 509(b)(1)(E), and that jurisdiction properly rests with the District Court to decide the claims under CWA section 505 and the APA.[15] The District Court noted that although "there is a strong presumption against the availability of simultaneous review in both the district court and the court of appeals" under the CWA, "the presumption does not relieve this Court of its obligation to determine its own jurisdiction."[16] On September 28, 2007, the District Court – acting on its own initiative – issued an order certifying its jurisdictional ruling for immediate interlocutory appeal to the Second Circuit.[17] Neither EPA nor the Industry Coalition has taken up the District Court's offer of interlocutory appeal, nor has either asked the District Court to reconsider its jurisdictional order, although EPA

---

[14] *See* September 12, 2007 Memorandum from Clerk's Office, stating that the deferred joint appendix will be due 21 days after the filing of reply briefs (which occurred on October 29, 2007) and that final form briefs will be due 14 days after that.

[15] *Riverkeeper, Inc. v. EPA*, 2007 U.S. Dist. LEXIS 70375, at *2-6 (S.D.N.Y. Sept. 24, 2007). *See* Super Decl., ¶ 7, Exh. D (attaching docketed copy of order).

[16] *Id.* at *3.

[17] *See Riverkeeper, Inc. v. EPA*, 2007 U.S. Dist. LEXIS 72511 (S.D.N.Y. Sept 28, 2007) (citing 28 U.S.C. § 1292(b)). The District Court found that the jurisdictional question is "controlling," and that its resolution by the Second Circuit would "materially advance the ultimate termination of the litigation." *Id.* at *2-3. Super Decl., ¶ 7, Exh. D (attaching docketed copy of certification).

has stated that it may "request that the Court re-certify the jurisdictional issue at a later time."[18]

Instead, on October 10, 2007, EPA filed a motion with the District Court asking it to stay all proceedings there until such a time as *this* Court can decide the same jurisdictional question already decided by the District Court.[19]  Neither EPA nor the Industry Coalition asked the District Court to stay its proceedings *prior* to that Court's jurisdictional order, which was precipitated by EPA's decision to file a motion to dismiss raising the jurisdictional issue.  Environmental Petitioners and the Industry Coalition are due to submit briefs in response to the stay motion by October 31, 2007, with any reply by EPA to be filed by November 9, 2007.

**ARGUMENT**

Environmental Petitioners seek a partial stay of proceedings before this Court, relating only to their petitions and not to Conoco's, so that they may proceed with their claims before the District Court and/or the Second Circuit (on interlocutory appeal or following judgment).  If the Second Circuit upholds the District Court's jurisdictional ruling, then Environmental Petitioners will ask this Court to lift the stay and dismiss their petitions, as the relief they seek indisputably will lie elsewhere.  If the Second Circuit rejects the District Court's ruling, however, then Environmental Petitioners will ask this Court to lift the stay so that they can proceed to prosecute their petitions on the merits here.

---

[18]  Oct. 12, 2007 letter from counsel for EPA to District Court (Super Decl., Exh. F).

[19]  EPA's Motion to Stay (Super Decl., Exh. E).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[20] The paradigm case for granting a stay is where essentially the same action has been filed in two federal courts: in such situations, "the general principle is to avoid duplicative litigation."[21] As this Court has noted: "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[22] All of these concerns would be resolved by a stay in this case.

## I.    THIS COURT SHOULD GRANT A STAY IN LIGHT OF THE JURISDICTIONAL DECISION OF THE DISTRICT COURT, WHICH IS NOW THE LAW OF THE CASE.

Now that a jurisdictional decision has been rendered, that decision should govern related proceedings – such as those regarding Movants' petitions in this Court – under the "law of the case" doctrine. This doctrine serves to "maintain consistency and avoid needless reconsideration of matters once decided during the course of a single continuing lawsuit."[23] The doctrine applies equally to later

---

[20] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

[21] *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).

[22] *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997) (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985)). This principle applies equally to duplicative litigation involving a district court and a circuit court as to litigation involving multiple district courts. *See Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001).

[23] *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993) (citation omitted). Although the law of the case doctrine is not "an inexorable command," it limits discretion in similar fashion to the doctrine of *stare decisis. Loumar, Inc. v. Smith*, 698

10

decisions of a single court in a single lawsuit as to later decisions of a different court in a related lawsuit.[24]  The doctrine also applies as readily to jurisdictional determinations as to other issues.[25]  Here, as EPA itself argues, the claims before the District Court are identical to the claims before this Court, and the jurisdictional question posed to both courts is the same.[26]

As this Court has stated, an earlier decision will be respected as law of the case unless "(i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work manifest injustice."[27]  Respecting the first prong, there is no pertinent "evidence" before this Court that was not before the District Court – both sides have alleged roughly the same, undisputed facts going to jurisdiction.[28]  Respecting the second prong,

---

F.2d 759, 762 (5th Cir. 1983).

[24]  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).  An exception to this rule is when the other court sits in direct review of the first court, *see Christianson*, 486 U.S. at 817, but that is not the case here, *see* 28 U.S.C. § 1294(1).

[25]  *See Christianson*, 486 U.S. at 816 n.5; *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272-73 (5th Cir. 1999); *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

[26]  EPA Motion to Stay at 12 (Super Decl., Exh. E).

[27]  *North Miss. Communications v. Jones*, 951 F.2d 652, 656 (5th Cir. 1992)).  It is not enough that the later tribunal merely "might have decided matters differently" had it considered the issue in the first instance.  *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997).

[28]  Order Certifying Appeal at 2 ("There are no facts in dispute, only the legal conclusions to be drawn from the facts.") (Super Decl., Exh. F).  Although it had been advised that this Court denied the transfer motion, the District Court indicated that proceedings in this Court had not "advanced beyond an application to transfer venue from the Fifth Circuit to the Second Circuit."  Order Denying Motion to Dismiss at 3 (Super Decl., Exh. D).  Regardless, the

11

Environmental Petitioners are aware of no such authority. Respecting the third prong, although the District Court acknowledged its belief that the jurisdiction issue was a close call,[29] its conclusion is plainly not absurd – indeed, numerous courts (including this one) have ruled the same way under similar circumstances.[30] Moreover, to subject EPA to jurisdiction in the District Court would occasion no "manifest injustice," as the underlying claims would continue to be heard by a qualified, Article III decision-maker. There is no manifest injustice for an additional reason: the District Court's ruling was the consequence of *EPA's own tactical decision* to have the jurisdictional question decided there.[31] Having asked for *and* received one bite at the jurisdictional apple – whether sweet or bitter – within the Second Circuit, the agency is not entitled to another bite in a different circuit without a very good reason.

The application of law of the case here is especially appropriate because it will ensure that the jurisdictional question is resolved ultimately by a federal Court of Appeals that actually sits in direct review of the District Court, which this Court

---

exact status of proceedings in the Court could not have altered the District Court's conclusion that Environmental Petitioners' "claim is not within the scope of section 509(b)(1)(E) because it challenges not a 'limitation' but the absence of a 'limitation,'" *id.,* particularly in light of the fact that the presumption against the simultaneous review in two courts "does not relieve this Court of its obligation to determine its own jurisdiction." *Id.*

[29] Order Certifying Appeal at 2 (Super Decl., Exh. D).

[30] *See, e.g., Chemical Mfrs.*, 870 F.2d at 265-66; *Pennsylvania Dep't of Envtl. Resources v. EPA*, 618 F.2d 991, 995-96 (3d Cir. 1980); *Natural Resources Defense Council ("NRDC") v. EPA*, No. CV 04-8307-GHK(RCx), at 2 (C.D. Cal. Aug. 29, 2005) (Super. Decl., Exh. G).

[31] *Cf. Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989) (no "manifest injustice" where party invoking exception had chosen not to adduce favorable evidence earlier).

does not. As a general matter, the rulings of a federal court cannot be attacked collaterally by filing a challenge in a separate Court of Appeals – the proper course of action is to seek review through the ruling court's appeals process.[32] This is true even in the face of an allegation that a jurisdictional question was wrongly decided.[33] Here, the District Court has done everything in its power to ensure a timely resolution of the jurisdictional question by the Second Circuit: four days after issuing its ruling, it certified the question for interlocutory appeal *sua sponte*.[34] One would think that EPA or Industry would jump at the chance to have this question conclusively resolved, but both have chosen instead to sit on their appeal prerogatives, apparently in the hopes of fomenting a conflict with this Court.[35] This game of inter-circuit "chicken" is unseemly, to say the least.[36]

---

[32] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (allowing collateral attack would "seriously undercut[] the orderly process of the law").

[33] *See generally Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort ...").

[34] *See* Order Certifying Appeal at 2 (Super Decl., Exh. D) (finding that "immediate appeal" would "materially advance the ultimate termination of the litigation").

[35] EPA informed the District Court that "the short 10-day time frame does not provide [it] with sufficient opportunity to consider whether to file an application to the Second Circuit for interlocutory appeal, and to seek any necessary approvals for such an application," Oct. 12, 2007 letter from counsel for EPA to District Court at 1 (Super Decl., Exh. F), but the fact remains that EPA could ask for re-certification, *see Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1996), and, in fact, EPA has stated that it may "request that the Court re-certify the jurisdictional issue." *Id*. at 2. So may the Industry Coalition, who were subject to no such institutional constraints regarding decisions to appeal in the first place. Environmental Petitioners would gladly file a motion for interlocutory appeal with the Second Circuit, but they – unlike EPA and Intervenors – are not "aggrieved" by the District Court's order. *See generally Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980) ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it."). However, Environmental Petitioners have informed the District Court and the parties

13

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD STAY PROCEEDINGS RELATING TO MOVANTS' PETITIONS IN ITS EQUITABLE DISCRETION.

In determining the propriety of a stay, courts consider the relative hardship to the parties,[37] the interest in sound judicial administration,[38] and the proposed length of the stay.[39]  Here, a stay will occasion no cognizable hardship to EPA or Intervenors, since their opposition to Environmental Petitioners' claims will still be analyzed by a competent court.[40]  Presumably, there will be no hardship to the Conoco petitioners, as their case will not be stayed.[41]  The efforts already expended by EPA and Intervenors in responding to arguments made by Environmental

---

that they will consent to re-certification, should EPA or the Industry Coalition request it.

[36]  Environmental Petitioners, on the other hand, have taken no action to prevent either court from deciding the jurisdictional question, but seek to forestall the prospect of competing rulings now that such a decision has been rendered.

[37]  *See GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *Itel Corp. v. M/S Victoria U*, 710 F.2d 199, 203 (5th Cir. 1983).

[38]  *See Landis*, 299 U.S. at 254.

[39]  *See GATX Aircraft*, 768 F.2d. at 716; *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

[40]  *See Itel Corp.*, 710 F.2d at 203 (stay proper where alternate tribunal "has the power to render an effective judgment on issues that are necessary to the disposition of the stayed action"). Indeed, the District Court is *better* situated institutionally than this Court to determine whether and what mandamus relief is appropriate, and how and when any decree should be enforced. *See NRDC v. EPA* at 4 (Super Decl. Exh. G).  All the Second Circuit will be deciding on interlocutory appeal is the propriety of jurisdiction (*vel non*) in the District Court:  if the Second Circuit affirms, then the District Court is the proper forum regardless; if the Second Circuit reverses, then *this* Court will hear the substance of Environmental Petitioners' claims.

[41]  Although any hardship to *amicus curiae* Entergy Corporation, a non-party, is not particularly compelling, *see Wedgeworth*, 706 F.2d. at 546 (absence of non-essential co-defendants held not to justify stay), Environmental Petitioners note that Entergy may petition the District Court or the Second Circuit for *amicus* status, should either of those courts find Entergy's participation helpful or warranted.

14

Petitioners will not have been in vain, as essentially the same arguments either have already been made to the District Court (*i.e.*, those relating to jurisdiction) or will be made there (*i.e.*, those relating to the merits).

Granting a stay will also promote judicial interests, regardless of how this Court would be inclined to rule on the jurisdictional question. A stay would eliminate the untoward possibility of a diametrically opposed decision on jurisdiction by this Court,[42] which may not even resolve the matter conclusively. Conversely, a stay in the District Court would *not* avoid the possibility of inconsistent rulings, as a direct inconsistency would arise if this Court were to find it had exclusive jurisdiction.

Environmental Petitioners have thus far been unable to locate any jurisprudence addressing the preclusive consequences where a lower court in one circuit makes a finding of exclusive jurisdiction, only to have a higher court in *another* circuit make a finding of exclusive jurisdiction *later*. If *res judicata* is inappropriate under such circumstances, then it is possible that the two tribunals could render conflicting decisions on the merits, potentially subjecting EPA to inconsistent obligations backed by the contempt power of different Article III courts. If the Fifth Circuit's decision *would* have a preclusive effect on the District Court, then *res judicata* would attach to whichever case happened to be concluded first, yielding bizarre results within the federal judicial scheme.[43] In either event,

---

[42] *Cf. Save Power*, 121 F.3d at 951 (transfer supported by "likelihood of conflict" and "inconsistent rulings" between sister courts).

[43] Despite the usefulness of a preclusive ruling on jurisdiction for the winner of such a race, the judicial system would be the ultimate loser, as the effect would be either for the Fifth

15

the integrity of the judicial process would be eroded.[44]  Should this Court instead
be inclined to agree with the District Court, a stay would spare it the burden of
sifting through each party's jurisdictional arguments.

Lastly, the proposed stay is both finite and reasonable in duration, as
Environmental Petitioners will ask for its dissolution once the Second Circuit
resolves the jurisdictional issue on appeal, either on an interlocutory basis or after
the District Court renders a final judgment on the merits.  The duration of the stay
is likely to be less than delays allowed previously by this Court,[45] and is certainly
warranted in light of the procedural posture of the case.  To the extent that EPA or
the Industry Coalition allege to be prejudiced by delay, either could readily
expedite the stay's dissolution by asking the District Court to recertify the
jurisdictional question for interlocutory appeal and by arguing vigorously for the
acceptance of such appeal by the Second Circuit.

---

Circuit to sit as an appeals court to the Southern District of New York (if EPA "won") or for the
Second Circuit to nullify ongoing proceedings in the Fifth Circuit (if Environmental Petitioners
"won").  This Court has endorsed stay orders to prevent such results.  *See ACF Indus., Inc. v.
Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) ("A stay order would surely avoid an unwanted and
highly undesirable race by each party to obtain a decision from the particular district court
reacting most favorably to its position.").

[44]  *See, e.g., Christianson*, 486 U.S. at 818 (inconsistent rulings on jurisdiction in the
same case "undermine public confidence in our judiciary").

[45]  *See, e.g., Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 615 (5th Cir. 1989) (delay of
22 months in arbitration "seems inordinate," but still found to justify stay of federal court
proceedings where arbitration was "proceeding with dispatch and will be terminated very
shortly").

16

## III.    THERE IS NO "FIRST-FILED" RULE WHERE JURISDICTION IS EXCLUSIVE.

In its recent motion asking the District Court to stay its proceedings, EPA argues that the appellate petitions "were the first-filed actions and should be given priority" over the District Court complaint.[46] Although the suits challenging EPA's failure to promulgate categorical regulations governing Phase III existing facilities were filed in several appellate courts and then consolidated in this Court prior to the filing of the suit in the District Court, the "first-filed" rule does not support a stay in that case, or mitigate against a stay here. The "first-filed" rule simply has no application to situations in which one court has *exclusive* jurisdiction, such as the case at bar. Instead, the general rule that the court in which the case is first filed should decide whether to stay, dismiss, or transfer the action to a court in which an action is later filed applies only as between federal courts possessing *concurrent* jurisdiction.[47] This rule is essentially a venue-determination tool, much like the statutory lottery provision that brought Movants' petitions here in the first place:[48] it resolves disputes among courts having *equivalent* jurisdiction.[49]

---

[46] EPA Motion at Stay at 9 (Super Decl., Exh. E).

[47] *See Save Power*, 121 F.3d at 951. The Second Circuit follows the same general rule. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).

[48] *See* 28 U.S.C. § 2112(a); *Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C. Cir. 1981) ("[Section] 2112(a) is a mechanical device to determine which court will determine venue, not which court will ultimately hear the case.").

[49] *See U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, 2000 WL 48830, at *1 (S.D.N.Y. 2000) ("[T]he first filed action rule is not a jurisdictional bar.").

17

This Court addressed the exclusive jurisdiction situation in *Sutter Corp. v. P & P Industries*, a case involving duplicative suits brought to determine the legitimacy of arbitration proceedings conducted pursuant to the Federal Arbitration Act ("FAA").[50] The underlying contract suit was first filed in an Oklahoma district court and then sent to arbitration, which yielded a ruling adverse to the plaintiff. The plaintiff moved the Oklahoma court to vacate the arbitration ruling, while the defendant filed a separate action in a Texas district court to confirm the ruling. When the plaintiff then requested that the Texas court dismiss, transfer, or stay its proceedings in favor of the first-filed Oklahoma action, the Texas court refused on the ground that the FAA granted exclusive venue to challenge the arbitration in Texas.[51] On appeal, this Court invoked the first-filed rule, but noted that:

> *[C]oncerns about comity notwithstanding*, whether both the Oklahoma and Texas district courts could decide Sutter's motion to confirm, or just the Texas district court, is *controlled by statute*. Hence, the 'first to file rule' *must yield*, if [FAA] § 9 establishes that the Texas district court is *exclusively* the appropriate court to decide Sutter's motion to confirm, even though the same issues were first raised in the Oklahoma district court.[52]

This Court analogized the situation to exclusive jurisdiction: "If these so-called venue provisions are *mandatory* ..., then they may be seen as *jurisdictional*, in that they would deprive all other district courts of the power to decide these motions."[53]

---

[50]  125 F.3d 914 (5th Cir. 1997).

[51]  *See id.* at 916-17.

[52]  *Id.* at 917 (emphasis added).

[53]  *Id.* at 918 (emphasis added).

18

Under such circumstances, this Court reasoned, the Texas court would have acted properly. Since the venue provisions were held to be merely permissive, however, the Texas court's refusal to stand down was held to be in error.[54]

In the instant case, jurisdiction is likewise "controlled by statute": Environmental Petitioners' claims belong either in the District Court under CWA section 505 and the APA or in this Court under CWA section 509, but not both.[55] The fact that this Court occupies a higher position within the federal judicial system than the District Court does not give it any presumptive priority to resolve this statutory question, as determinations regarding exclusive jurisdiction do not implicate the typical comity concerns animating the first-filed rule.[56] Neither the venue lottery nor this Court's denial of the earlier transfer motion resolved the question of where jurisdiction properly lay. By filing its motion to dismiss, EPA squarely asked the District Court to determine if it, and not this Court, had jurisdiction over Environmental Petitioners' claims. EPA may not *like* the answer it got, but it can hardly fault the District Court for making that decision.

---

[54] *See id.* at 920. The Southern District of New York reached a similar result in a case involving a motion to compel arbitration under FAA § 4. *See Petition of Home Ins. Co.*, 908 F. Supp. 180, 182-83 (S.D.N.Y. 1995) (first-filed rule inapplicable where "the only court capable of ordering arbitration in this dispute is this one").

[55] *See Chemical Mfrs.*, 870 F.2d at 265-66; *Sun Enters., Ltd. v. Train*, 532 F.2d 280, 287-88 (2d Cir. 1976); EPA Motion at Stay at 12 (Super Decl., Exh. E) .

[56] *See In re RNI Wind Down Corp.*, 348 B.R. 286, 295 (Bankr. D. Del. 2006) (refusing to abstain on comity grounds in face of parallel proceedings in Ninth Circuit Court of Appeals where bankruptcy court had exclusive jurisdiction over claims at issue – "this is not a case where two federal courts of equal rank are exercising coordinate or concurrent jurisdiction") (citing *West Gulf*, 751 F.2d at 728).

19

Even if the first-filed rule were applicable, the District Court was

empowered to disregard the rule in the sound exercise of its equitable discretion.

As the Supreme Court has said of such determinations:

> Wise judicial administration, giving regard to conservation of judicial
> resources and comprehensive disposition of litigation, does not
> counsel rigid mechanical solution of such problems. The factors
> relevant to wise administration here are equitable in nature.
> Necessarily, an ample degree of discretion, appropriate for disciplined
> and experienced judges, must be left to the lower courts.[57]

Numerous cases in this Circuit and the Second Circuit have found it proper for

second-filed courts to proceed with the case when they entertained doubts about

the jurisdiction of the first-filed court.[58]  Clearly, the District Court harbored such

doubts here.  Furthermore, the first-filed rule has less applicability where, as here,

both actions were instituted by the same parties.[59]

## CONCLUSION

For the foregoing reasons, Environmental Petitioners respectfully submit

that this Court should stay all further proceedings relating to their petitions pending

resolution of the jurisdictional question by the Second Circuit.

---

[57] *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952).

[58] *See Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (first-filed rule disregarded by second-filed court where venue may have been exclusive); *Raytheon Co. v. National Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 354-55 (S.D.N.Y. 2004) (same result where first-filed court likely lacked subject matter jurisdiction); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, 2000 WL 1010278, at *11 (S.D.N.Y. 2000) (same result where first-filed court likely lacked *in personam* jurisdiction).

[59] *See Raytheon*, 306 F. Supp. 2d at 354 ("Raytheon essentially mooted the concept of deferring to *plaintiff's choice* of forum as it is the plaintiff in *both* actions.") (emphasis in original).

20

Respectfully submitted this 31st day of October, 2007.

Charles C. Caldart
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, WA  98102
*Counsel for Petitioner Environment*
*Massachusetts*

MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.

by:    Reed W. Super
       Edward Lloyd
       Environmental Law Clinic
       Columbia University School of Law
       435 West 116th Street
       New York, NY  10027
       Tel:  212-854-3365
       Fax:  212-854-3554

       P. Kent Correll
       LAW OFFICE OF P. KENT CORRELL
       300 Park Avenue, 17th Floor
       New York, NY  10022
       Tel:  212-475-3070
       Fax:  212-475-2378

*Counsel for Petitioners Riverkeeper, Inc., Natural*
*Resources Defense Council, Waterkeeper Alliance,*
*Inc., Soundkeeper, Inc., Delaware Riverkeeper*
*Network, American Littoral Society, Raritan*
*Baykeeper, Inc. d/b/a NY/NJ Baykeeper, Save the*
*Bay—People for Narragansett Bay, Friends of Casco*
*Bay, and Santa Monica Baykeeper, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October 2007, I caused to be served by Federal Express and electronic mail a true and correct copy of the foregoing **MOTION OF RIVERKEEPER, INC. *ET AL*. FOR A PARTIAL STAY OF PROCEEDINGS** on:

Jessica O'Donnell
Rochelle l. Russell
Environment & Natural Resources Div.
Environmental Defense Section
U.S. Department of Justice
601 D Street, N.W., Suite 8000
Washington, DC  20004
Jessica.O'Donnell@usdoj.gov
*Counsel for Respondent EPA*

David T. Ballard
Fredric P. Andes
Barnes & Thornburgh LLP
One North Wacker Drive, Suite 4400
Chicago, IL  60606-2833
David.Ballard@BTLaw.com
fandes@btlaw.com
*Counsel for Intervenor American Petroleum Institute*

Elise N. Zoli
Kevin P. Martin
William J. Trach
Goodwin Procter LLP
Exchange Place
Boston, MA  02109
ezoli@goodwinprocter.com
*Counsel for Amicus Curiae Entergy Corporation*

Jackson Battle
Brown McCarroll, LLP
111 Congress Avenue, Suite 1400
Austin, TX  78701
JBattle@mailbmc.com
*Counsel for Petitioners ConocoPhillips, et al.*

Russell S. Frye
3050 K. Street NW, Suite 400
Washington, DC  20007-5108
rfrye@fryelaw.com
*Counsel for Intervenor Cooling Water Intake Structure Coalition*

Chuck D. Barlow
Entergy Services, Inc.
308 E. Pearl Street
Jackson, MS  39201
cbarlow@entergy.com
*Counsel for Amicus Curiae Entergy Corporation*

Reed Super

B

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

F I L E D

DEC 1 4 2004

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SURFRIDER FOUNDATION, | Nos. 04-73782, 04-74255, 04-74265, 04-74343, 04-74344, 04-74546, 04-74686, 04-74983 |
| Petitioner, | |
| v. | ORDER |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Respondent. | |

Before:  GOODWIN, ALARCÓN and TROTT, Circuit Judges

The motion for leave to file an oversized memorandum in reply supporting the motion to transfer is granted.  The Clerk shall file the reply memorandum received October 28, 2004.

Pursuant to an order of the Judicial Panel on Multidistrict Litigation, these petitions for review have been consolidated in this court under 28 U.S.C. § 2112(a).  Petitioners Riverkeeper, Inc., and Surfrider Foundation move to transfer these consolidated petitions for review to the United States Court of Appeals for the Second Circuit.  In the interest of justice, and in our discretion, the motion is granted.  See 28 U.S.C. § 2112(a)(5).

A certified copy of this order, together with this court's original case files for each of these eight consolidated petitions for review, the court's docket sheets,

04-73782, 04-74255, 04-74265, 04-74343,
04-74344, 04-74546, 04-74686, 04-74983

and all pending motions, shall be transmitted to the United States Court of Appeals

for the Second Circuit via certified mail.

**PETITIONS FOR REVIEW TRANSFERRED.**