UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RIVERKEEPER, INC., *et al.*

            Plaintiffs,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et ano.*,

            Defendants.

06 Civ. 12987 (PKC)
ECF case

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
# TO DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS

Charles C. Caldart (*pro hac vice*)
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, Washington 98102
Tel: 206-568-2853
Fax: 206-568-2858

Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, California  94133
Tel: 415-622-0086 x306
Fax: 415-622-0016

Counsel for Plaintiff Environment
Massachusetts

Reed W. Super (RS 3615)
Edward Lloyd (*pro hac vice*)
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
Environmental Law Clinic
Columbia University School of Law
435 West 116th Street
New York, New York 10027
Tel: 212-854-3365
Fax: 212-854-3554

P. Kent Correll (PC 2609)
300 Park Avenue, 17th Floor
New York, New York 10022
Tel: 212-475-3070
Fax: 212-475-2378

Counsel for Plaintiffs Riverkeeper, Inc., Natural Resources Defense Council, Waterkeeper Alliance, Inc., Soundkeeper, Inc., Delaware Riverkeeper Network, American Littoral Society, Raritan Baykeeper, Inc., d/b/a NY/NJ Baykeeper, Save the Bay—People for Narragansett Bay, Friends of Casco Bay, Santa Monica Baykeeper, Inc., and Surfrider Foundation

## **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT..................................................................................................................................3

I.     THERE IS NO "FIRST-FILED" RULE WHERE JURISDICTION IS EXCLUSIVE. ....................................................................................................................3

II.    THE MULTI-CIRCUIT "LOTTERY" AND THE FIFTH CIRCUIT'S DENIAL OF PLAINTIFFS' MOTION TO TRANSFER HAVE NO BEARING ON THE PROPRIETY OF THIS COURT'S PROCEEDING WITH THE CASE. ...............................................................................................................6

III.   GRANTING A STAY WOULD NOT SATISFY THE "*KAPPEL* FACTORS."........................................................................................................................9

CONCLUSION.............................................................................................................................14

Plaintiffs Riverkeeper, Inc., *et al.* ("Plaintiffs") respectfully submit this memorandum in opposition to Defendants' Motion for a Stay of Proceedings.

## INTRODUCTION

In its moving papers, the Environmental Protection Agency ("EPA") places great emphasis on preventing a "waste of judicial resources," averting "conflicting results" in decision-making among federal courts, and "avoid[ing] unnecessary and plainly duplicative briefing." Memorandum of Law in Support of Defendants' Motion for a Stay of Proceedings ("Stay Motion") at 10-11. While these concerns are laudable on their face, they have also been operative since the day Plaintiffs filed suit in this Court, and even more concretely since the day EPA chose to file its motion to dismiss for lack of jurisdiction. EPA (or Intervenors, for that matter) could have asked this Court for a stay *at any time* during this extensive span, but chose not to. The only thing that has changed, of course, is that this Court has issued a ruling on jurisdiction that EPA does not *like*, a decision that *resolves* the question EPA now asks this Court to relegate to the Fifth Circuit: which court has exclusive jurisdiction to hear Plaintiffs' claims? To the extent that EPA or Intervenors disagree with this ruling (and it appears that they do), this Court has already provided a vehicle for potential relief from its order: immediate interlocutory review by the Second Circuit. Yet EPA and Intervenors have declined the opportunity to take the matter to the only circuit court that can directly review this Court's ruling. Instead, EPA seeks to circumvent this Court's authority by referring the jurisdictional matter to the Fifth Circuit, whose decisions may not be binding upon this Court, and (despite EPA's suggestions to the contrary) has not yet spent any of its time or energy addressing the jurisdictional question or merits.

To the extent that concerns of judicial economy, federal court comity, and the

1

convenience of the litigants come into play here, they all support the conclusion that the Fifth Circuit should stay *its* proceedings, not this Court. Towards that end, Plaintiffs are today filing a motion for a partial stay of proceedings in that tribunal, asking that court for a stay relating to Plaintiffs' claims only.[1] *See* Motion of Riverkeeper, *et al.*, for a Partial Stay of Proceedings, *Conoco Phillips Co., et al. v. EPA*, U.S. Circuit Court of Appeals for the Fifth Circuit, dkt. no. 06-60662 (attached as Exhibit A to Declaration of Reed W. Super in Opposition to Defendants' Stay Motion ("Super Decl."), filed herewith).

Certainly, EPA provides no valid reason to stay *these* proceedings. The "first-filed" rule, upon which EPA relies, applies only to cases of *concurrent* jurisdiction among federal courts, and thus is not relevant here. Contrary to EPA's claims, the grant of a stay by this Court would neither prevent the untoward possibility of conflicting decisions on jurisdiction between federal courts, nor promote interests of judicial economy. And, the "*Kappel* factors" do not support EPA's motion for a stay; rather, they demonstrate that the case should go forward here, and in expeditious fashion.

---

[1] Although Plaintiffs believe that a stay of proceedings in the Fifth Circuit is appropriate and warranted, that result is not a necessary precursor to this Court's resolution of the instant motion.

2

**ARGUMENT**

As the Supreme Court has noted, the party seeking a stay bears "the burden of making out the justice and wisdom of a departure from the beaten track." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). As shown below, EPA has failed to meet its burden here.

**I.   THERE IS NO "FIRST-FILED" RULE WHERE JURISDICTION IS EXCLUSIVE.**

In arguing that these proceedings should be stayed under the "first-filed" rule, EPA neglects to mention that this rule applies only to cases of *concurrent* jurisdiction between federal courts. *See* Stay Motion at 9-11 (citing cases). The rule is essentially a *venue*-determination tool: where two courts have equivalent jurisdiction, it assigns priority to the court in which the action is first filed to decide whether to stay, dismiss, or transfer the action to a court in which an action is later filed. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989).[2] The rule has no application, however, to situations, such as the case at bar, in which one court has been assigned *exclusive* jurisdiction by statute. *See Petition of Home Ins. Co.*, 908 F. Supp. 180, 182-83 (S.D.N.Y. 1995) (first-filed rule inapplicable where "the only court capable of ordering arbitration in this dispute is this one"). Determinations regarding exclusive jurisdiction simply do not implicate the typical comity concerns animating the first-filed rule. *See Sutter Corp. v. P & P Indus.*, 125 F.3d 914, 917 (5th Cir. 1997) ("[C]oncerns about comity notwithstanding, ... the 'first to file rule' *must yield*, if [the relevant statute] establishes that the Texas district court is *exclusively* the appropriate court.") (emphasis added);[3] *cf. SST Global*

---

[2] The Fifth Circuit follows the same general rule. *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997).

[3] Although the specific issue in *Sutter Corp.* was exclusive venue, the court analogized this situation to exclusive jurisdiction: "If these so-called venue provisions are *mandatory* ..., then they may be seen as *jurisdictional*, in that they would deprive all other district courts of the power to decide these motions." 125 F.3d at 918 (emphasis added). Because the court

3

*Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 454-55, 463-464 (S.D.N.Y. 2003) (refusing to stay case or abstain from hearing state law claims, despite pendency of earlier-filed state court action and party's concerns about "comity, efficiency, and fairness," because federal court had exclusive jurisdiction over securities claim).[4] The fact that the Fifth Circuit, in general, occupies a higher position within the federal judicial system than this Court does not give it any presumptive priority to resolve this statutory question. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 295 (Bankr. D. Del. 2006) (refusing to abstain on comity grounds in face of parallel proceedings in Ninth Circuit Court of Appeals where bankruptcy court had exclusive jurisdiction over claims at issue – "this is not a case where two federal courts of equal rank are exercising coordinate or concurrent jurisdiction").

As EPA concedes, Plaintiffs' claims belong either in this Court under the Clean Water Act ("CWA") section 505 and the Administrative Procedure Act ("APA") or in a court of appeals under CWA section 509, but not in both. *See* Stay Motion at 12; *see also Sun Enters., Ltd. v. Train*, 532 F.2d 280, 287-88 (2d Cir. 1976). Accordingly, the "first-filed" rule does not obtain.

Moreover, the "paradigmatic first-filed dispute" is where "one party files first in one district and her adversary files in a different district" to gain some perceived advantage related to forum. *Raytheon Co. v. National Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 353 (S.D.N.Y. 2004). The present situation is a far cry from this "paradigmatic" party alignment. Plaintiffs filed essentially the same suit against EPA in both an appellate and a district court due to

---

concluded that the provisions were not mandatory (unlike the Clean Water Act jurisdictional provisions at issue here), it ultimately applied the first-filed rule.

[4] EPA cites to *SST Global* in its brief, *see* Stay Motion at 8, but fails to disclose or distinguish this holding.

4

uncertainty as to how their claims would be characterized: as an action challenging the "promulgation" of a "limitation" under CWA section 509, 33 U.S.C. § 509(a)(1)(E), or an action to compel the performance of an "act or duty under [the CWA] which is not discretionary" pursuant to CWA section 505, 33 U.S.C. § 1365(a)(2). In situations of jurisdictional ambiguity, "dual filing" is commonplace, as cautious lawyers strive to ensure that their clients' claims are heard by a court empowered to grant the relief they seek. *See, e.g., Natural Resources Defense Council v. Abraham*, 355 F.3d 179, 184 (2d Cir. 2004) (noting that petitioners filed petition in circuit court and suit in district court challenging a portion of the same agency actions); *Armco, Inc. v. EPA*, 869 F.2d 975, 981-82 (6th Cir. 1989) (acknowledging that "separate actions have already been filed in federal district courts").[5] This situation contrasts markedly with the typical first-filed scenario, in which the capacity of both courts to hear the dispute is unquestioned. Here, because both suits were brought by Plaintiffs, there is no reason for courts to reward the "winner" of the "race to the courthouse" – especially when the issue of *which court* properly has jurisdiction is critical.[6]

---

[5] Indeed, in challenging EPA's first section 316(b) regulations in 1976, the electric utilities first filed a petition in the Fourth Circuit and later filed suit in district court when they "became convinced that jurisdiction properly resided in the district court." *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446, 448 (4th Cir. 1977).

[6] EPA attempts on several occasions to impugn Plaintiffs' motives in filing suit before this tribunal, largely based on the timing of Plaintiffs' notice letter to the agency. *See* Stay Motion at 10, 13. Of course, it is axiomatic that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982). Moreover, since EPA stated in its Final Rule that its Phase III decision should be challenged in a circuit court (*see* 71 Fed. Reg. 35,006, 35,006/2 (June 16, 2006) (citing 40 C.F.R. § 23.2)), and since the time for filing a petition with a circuit court is severely constrained by the 10-day deadline established by 28 U.S.C. § 2112(a)(1), Plaintiffs can hardly be faulted for having filed in the circuit courts first. Plaintiffs did not fully appreciate until later that, in contrast to their challenges to Phases I and II of EPA's section 316(b) rulemaking, jurisdiction over EPA's *failure* to issue rules for Phase III facilities lay in the district court. Upon notifying EPA of their intent to sue in this Court, Plaintiffs were required by

Finally, even if the first-filed rule were applicable, this Court would nevertheless have equitable discretion to disregard the rule. As the Supreme Court has explained:

> Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952); *see also Regions Bank v. Wieder & Mastroianni*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) (citing *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)).

Numerous courts in this Circuit have recognized that it is proper for second-filed courts to proceed with a case when the jurisdiction of the first-filed court is more doubtful. *See Raytheon Co.*, 306 F. Supp. 2d at 354-55 & n.48 (first-filed rule disregarded where first-filed court likely lacked subject matter jurisdiction); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, 2000 WL 1010278, at *11 (S.D.N.Y. 2000) (same result where first-filed court likely lacked *in personam* jurisdiction); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 751 (S.D.N.Y. 1977) (same), *aff'd*, 573 F.2d 1288 (2d Cir. 1978).[7] Clearly, this Court harbored such doubts here.

## II. THE MULTI-CIRCUIT "LOTTERY" AND THE FIFTH CIRCUIT'S DENIAL OF PLAINTIFFS' MOTION TO TRANSFER HAVE NO BEARING ON THE PROPRIETY OF THIS COURT'S PROCEEDING WITH THE CASE.

EPA argues that a stay is appropriate because the Fifth Circuit was "chosen to review challenges to the Phase III Rule" in the appellate venue lottery, and that interlocutory appeal to

---

statute to wait 60 days before filing suit, *see* 33 U.S.C. § 1365(b)(2), which accounts for the bulk of the delay between the filing of the district court and appellate court actions.

[7] The Fifth Circuit has reached the same conclusion under similar circumstances. *See Harris County, Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (first-filed rule disregarded by second-filed court where venue may have been exclusive).

the Second Circuit is improper because the Fifth Circuit already denied Plaintiffs' request that their appellate petitions be transferred there. Stay Motion at 12-13 (citing 28 U.S.C. § 2112(a)). This argument reflects a fundamental conflation of venue with subject matter jurisdiction. As EPA notes, when the Judicial Panel for Multi-District Litigation ("the Panel") "determin[es] *venue*" under section 2112(a), it "*randomly* selects a single court from among the circuits in which petitions were filed." Stay Motion at 3 n.4 (emphasis added). The ministerial nature of this process can hardly be overstated: EPA files a *pro forma* notice with the Panel, and the Panel literally pulls the name of a circuit court of appeals "from a drum." Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Rule 17.1(a) ("Random Selection"). The present random selection process replaced a former "first-filed" rule for multiple appeals of the same agency order because it was deemed to be more even-handed,[8] but it, like its predecessor, provides no ultimate judicial determination either of jurisdiction or venue. In this sense, the section 2112(a) process is the appellate analogue to the "first-filed" rule among federal courts of concurrent jurisdiction. *Compare Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 1200, 1205 (D.C. Cir. 1981) ("[Section 2112(a)] is a mechanical device to determine which court will determine venue, not which court ultimately will hear the case."), *with U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, 2000 WL 48830, at *1 (S.D.N.Y. 2000) ("[T]he first filed action rule is not a jurisdictional bar."). After the lottery, the circuit court to which the case has been assigned still possesses both inherent power and express statutory authority to transfer proceedings "in the interest of justice and sound judicial administration." *AT&T Co. v. FCC*,

---

[8] The statute was amended to add the lottery process in 1988. *See* Pub. L. 85-791, § 2, 72 Stat. 941 (1958), *amended by* Pub. L. 89-773, § 5(a)-(b), 80 Stat. 1323 (1966), *as excerpted in* 28 U.S.C.A. § 2112, 1988 Amend. (West 2006).

519 F.2d 322, 325 (2d Cir. 1975); 28 U.S.C. § 2112(a)(5) (authorizing transfers "for the convenience of the parties in the interest of justice").[9]

The further fact that the Fifth Circuit has refused such a discretionary transfer here, without opinion, is similarly irrelevant. There is no indication that the Fifth Circuit ever considered the jurisdictional issue in declining to transfer the case. In any event, the parties are briefing the jurisdictional issue along with the merits in the Fifth Circuit, and this briefing will not be referred to a merits panel until December 2007 at the earliest. *See* Stay Motion at 5-6. Hence, the only court to have considered the jurisdictional question in this case – *i.e.*, *this* Court – has ruled that it has jurisdiction. Any review of this decision by the Second Circuit *on direct appeal* would not, as EPA puts it, "circumvent" the venue lottery or the Fifth Circuit's transfer denial, Stay Motion at 13, as neither of those events had any bearing on *original jurisdiction* to begin with.

EPA's reliance on the fact that "there is no pending matter before the Second Circuit," Stay Motion at 13, is disingenuous: there is no "pending matter" there because EPA (and Intervenors) have strategically decided (so far) not to accept this Court's invitation to seek interlocutory review, despite this Court's finding that such appeal might "materially advance the ultimate termination of the litigation." Order Certifying Jurisdictional Issue for Interlocutory Appeal, Sept. 28, 2007, at 2-3.[10] This game of inter-circuit "chicken" is unseemly, to say the least.

---

[9] This is precisely what happened during the earlier challenge to Phase II of EPA's section 316(b) rulemaking: the Panel initially consolidated the petitions in the Ninth Circuit via the random selection process, and that court transferred them to the Second Circuit pursuant to 28 U.S.C. § 2112(a)(5). *See* Super Decl. ¶ 3, Exh. B.

[10] EPA has informed this Court that "the short 10-day time frame [did] not provide [it] with sufficient opportunity to consider whether to file an application to the Second Circuit for interlocutory appeal, and to seek any necessary approvals for such an application" (Letter from

8

### III. GRANTING A STAY WOULD NOT SATISFY THE "*KAPPEL* FACTORS."

The so-called "*Kappel* factors," which EPA cites as a source of guidance for courts evaluating whether to issue a stay, do not favor EPA's motion. Stay Motion at 8 (citing *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). These factors are:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel*, 914 F. Supp. at 1058.

Regarding the first factor, Plaintiffs wish to proceed expeditiously with this litigation, and submit that holding in abeyance the proceedings of the only court to thus far establish jurisdiction over this case will not result in a speedy resolution. EPA argues that staying the proceedings in this Court will save the plaintiffs "the burden and cost of litigating the very same issues that are already being briefed in the Fifth Circuit." Stay Motion at 13. However, since these are the "very same issues," it will not be particularly onerous to brief them again in this Court. And, if this case were stayed, and the Fifth Circuit then agreed with this Court on the jurisdictional question, the delay would have served no purpose other than to forestall the relief Plaintiffs seek.

---

Wendy Waszmer, Esq. to this Court, October 12, 2007), but the fact remains that EPA could ask for re-certification, *see Marisol A. by Forbes v. Giuliani*, 104 F.3d 524, 528 (2d Cir. 1996), and, in fact, EPA has stated that it may "request that the Court re-certify the jurisdictional issue." *Id.* at 2. So may Intervenors, who were subject to no such institutional constraints regarding decisions to appeal in the first place. Plaintiffs would gladly file a motion for interlocutory appeal with the Second Circuit, but they – unlike EPA and Intervenors – are not "aggrieved" by this Court's order. *See generally Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980) ("A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it."). And as Plaintiffs have informed this Court, they will consent to re-certification, should EPA or the Intervenors request it.

9

Similarly, regarding the second factor, neither EPA nor Intervenor CWIS Coalition will be burdened by going forward with litigation in this Court, since their merits briefs (on "the very same issues") in the Fifth Circuit can readily be converted for use in this proceeding. EPA's further complaint that it "has already filed a 167-page index to an administrative record" in the Fifth Circuit, Stay Motion at 10, is inconsequential, since EPA can simply file a second copy of that previously-prepared index in this Court. Moreover, any hardship to EPA is largely of its own making: *it* chose to ask this Court to resolve the jurisdictional question in advance of, and separate from, the merits, rather than to ask this Court to stay proceedings prior to rendering a binding decision on jurisdiction. Having thus rolled the dice with this Court – and lost – any claim of hardship by EPA (or Intervenors, who just as readily could have asked for a stay) should be given little weight.[11]

Regarding the third factor, the interests of *both* courts weigh in favor of proceeding with the case in this Court and staying the case in the Fifth Circuit. With respect to judicial economy, EPA misleadingly implies that the proceedings have advanced further in the Fifth Circuit than in this Court. *See* Stay Motion at 10 ("The parties have already filed voluminous briefs that address ... jurisdiction ... as well as the merits."). To the contrary, the litigation is more advanced in *this* Court, which has already fully considered and decided the jurisdictional issue. Although the parties have filed briefs in the other tribunal, no merits panel has yet been assigned and thus no Fifth Circuit judge (or his or her staff) has even begun reading the briefs. Absent a stay in the Fifth Circuit, a merits panel will not be assigned until early December 2007 at the earliest, when briefs are due to be submitted in "final form." *See generally* Stay Motion at 6 & n.7. Accordingly, that court can yet conserve its resources by granting Plaintiffs' motion to stay its

---

[11] Plaintiffs took no action to keep either court from deciding the jurisdictional question.

own proceedings. No court has yet considered the merits, and only this Court has spent its valuable time and energy – approximately six months' worth – on adjudicating the issue of jurisdiction. Facing a decision from this Court with which it disagrees, EPA *now* wants all this effort to be for naught. And, as EPA neglected to move for a stay *before* this court resolved the jurisdictional issue, its arguments about the efficient use of judicial resources ring hollow. It is certainly easier for the parties to file essentially the same brief in two courts than it is for two different sets of judges and their clerks to familiarize themselves with the complexities of the case.

EPA further argues that the Fifth Circuit proceedings "will settle a controlling issue of law – whether a federal Court of Appeals has exclusive jurisdiction to review Plaintiffs' challenge," and posits that this "may resolve the current action in its entirety." Stay Motion at 11. This is not necessarily so. In the first place, as explained in more fully in Plaintiffs' motion to stay the Fifth Circuit proceedings at 10-13 (Super Decl., Exh. A), there are substantial grounds for the Fifth Circuit to treat this Court's jurisdictional ruling as the "law of the case," in order to "maintain consistency and avoid needless reconsideration of matters once decided." *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993) (citation omitted).[12] If so, then staying this case will not help "settle a controlling issue of law" – only appeal to the

---

[12] This doctrine applies equally to later decisions of a single court in a single lawsuit as to later decisions of a different court in a related lawsuit, *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); *In re PCH Assocs.*, 949 F.2d 585, 592 (2nd Cir. 1991), and as readily to jurisdictional determinations as to other issues, *see Christianson*, 486 U.S. at 816 n.5; *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272-73 (5th Cir. 1999). Absent the discovery of new law or facts, this Court's jurisdictional decision will be respected as the law of the case unless the Fifth Circuit finds that decision to be "clearly erroneous" *and* to occasion a "manifest injustice." *Royal Ins.*, 3 F.3d at 880. Plaintiffs submit that such a finding is improbable. *See United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997) ("[A judge] should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently.").

Second Circuit will. Even if the Fifth Circuit does not stay its hand, it is still unclear whether a jurisdictional ruling by that tribunal *would* "settle" the question: if the Fifth Circuit finds that it *has* jurisdiction, the parties may be faced with an irreconcilable conflict between courts in different circuits, since the Fifth Circuit does not have the authority to review this Court's rulings. Plaintiffs have been unable to locate at this time any jurisprudence addressing the situation where a lower court in one circuit makes a finding of exclusive jurisdiction, only to have a higher court in *another* circuit make a finding of exclusive jurisdiction *later* in the same case.[13] If *res judicata* is inappropriate under such circumstances, then it is possible that the two tribunals could render conflicting decisions on the merits, potentially subjecting EPA to inconsistent obligations backed by the contempt power of different Article III courts. If the Fifth Circuit's decision *would* have a preclusive effect on this Court, then *res judicata* would attach to whichever case happened to be concluded first, yielding bizarre results within the federal judicial scheme.[14] In either event, the integrity of the judicial process would be eroded. *See, e.g., Christianson*, 486 U.S. at 818 (inconsistent rulings on jurisdiction in the same case "undermine public confidence in our judiciary").

At present, only the Fifth Circuit, by staying *its* proceedings, has the power to avoid either of these untoward possibilities: staying the proceedings in this Court would *not* avoid that possibility because such a stay would still leave the Fifth Circuit free to find it has exclusive

---

[13] Generally speaking, the rulings of a federal court cannot be attacked collaterally in a separate circuit. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (allowing collateral attack would "seriously undercut[] the orderly process of the law").

[14] Despite the usefulness of a preclusive ruling on jurisdiction for the winner of such a race, the judicial system would be the ultimate loser, as the effect would be either for the Fifth Circuit to sit as an appeals court to the Southern District of New York (if EPA "won") or for the Second Circuit to nullify ongoing proceedings in the Fifth Circuit (if Environmental Petitioners "won").

jurisdiction (assuming *arguendo* that "law of the case" is not followed there), in direct contravention of this Court's findings. Clearly, the preferable course is the one already suggested by this Court: interlocutory appeal in the Second Circuit, such that this Court's jurisdictional ruling may be reviewed by an appellate court that sits in direct review of it. *See generally Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort …").

The cases cited by EPA for the proposition that a stay is appropriate "when a higher court is close to settling an important issue of law bearing on the action" are not applicable here. Stay Motion at 11 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 2001 WL 204212, at *2 (S.D.N.Y. 2001)). All but one of these cases involved a situation where the "higher" court sat in direct review of the court being asked to stay proceedings, as the Second Circuit does (and the Fifth Circuit does not) over this Court. *See Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (Supreme Court); *Wing Shing Prods. (BVI) Ltd. v. Simatelex Mfry. Co.*, 2005 WL 912184, at *2 (S.D.N.Y. 2005) (Federal Circuit in patent action); *In re Literary Works*, 2001 WL 204212, at *2 (Supreme Court). The court in the remaining case – *Goldstein v. Time Warner N.Y. City Cable Group*, 3 F. Supp. 2d 423, 438-39 (S.D.N.Y. 1998) – deferred to the District of Columbia Circuit on a common issue based on factors not present here: (1) that the parties before it had not yet provided briefing on the issue; and (2) that the plaintiffs before the other tribunal were seeking more "realistic" relief. Furthermore, *none* of these cases involved a situation, like this one, where the court considering a stay had *already ruled* on the question to be considered by the higher court.

Finally, regarding the fourth and fifth *Kappel* factors, the interests of persons who are not parties to the litigation, particularly the interests of the general public, weigh in favor of proceeding in this Court. There should be no hardship to the ConocoPhillips petitioners in the Fifth Circuit, as their claims are severable from those of Plaintiffs and may easily proceed in that Court.[15] The public has a clear interest in the speedy redress of environmental problems, and as this Court noted in entering the 1995 consent decree requiring EPA to take final action with respect to the issuance of regulations implementing CWA section 316(b): "*any* added delays that forestall resolution of these environmental issues … risks great prejudice to the parties and the general public." *Cronin v. Browner*, 898 F. Supp. 1052, 1063-64 (S.D.N.Y. 1995) (emphasis added) (quoting *Orange Envt., Inc. v. County of Orange*, 817 F. Supp. 1051, 1061 n.4 (S.D.N.Y. 1993)); *see also Cronin v. Browner*, 90 F. Supp. 2d 364, 373 (S.D.N.Y. 2000) (public interest in prompt issuance of regulations implementing CWA section 316(b) "is particularly strong").

In sum, the *Kappel* factors plainly indicate that this Court should proceed to hear Petitioners' claims.

## CONCLUSION

For the reasons stated above, Environmental Petitioners respectfully request that this Court deny EPA's motion for a stay of proceedings.

---

[15] EPA claims that not staying this case will result in "piecemeal litigation that could result in conflicting results" with respect to ConocoPhillips' petition, which will remain in the Fifth Circuit. Stay Motion at 10-11. Of course, the fact that the Phase III litigation will proceed in "piecemeal" fashion is the result of a deliberate bifurcation of federal court jurisdiction by Congress. *See* Order Denying Motion to Dismiss, Sept. 24, 2007, at 3 ("Not all actions of the EPA under the Act are reviewable under section 509(b)(1)(E).") (citing *Bethlehem Steel Corp. v. EPA*, 538 F.2d 513, 517 (2d Cir. 1976)).

Dated: October 31, 2007

Respectfully submitted,

*[signature]*

Charles C. Caldart (*pro hac vice*)
National Environmental Law Center
3240 Eastlake Ave East, Suite 100
Seattle, Washington 98102

Joseph J. Mann (*pro hac vice*)
National Environmental Law Center
369 Broadway Street, Suite 200
San Francisco, California 94133

Reed W. Super (RS 3615)
Edward Lloyd (*pro hac vice*)
Morningside Heights Legal Services, Inc.
Environmental Law Clinic, Columbia Univ. School of Law
435 West 116th Street
New York, New York 10027

P. Kent Correll (PC 2609)
300 Park Avenue, 17th Floor
New York, New York 10022